No. 03-15-00451-CV

IN THE

THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/27/2015 10:49:03 AM
JEFFREY D. KYLE
Clerk

ANGELA BROOKS-BROWN,
Appellant,

v.

USAA TEXAS LLOYD'S COMPANY,
Appellee.

Appealed from the 146TH Judicial District Court of
Bell County, Texas

_____

APPELLANT'S BRIEF

_____

Danny Ray Scott
State Bar No. 24010920
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405
danny@scottlawyers.com

Attorney for Appellant

No. 03-15-00451-CV

IN THE

THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

ANGELA BROOKS-BROWN,
Appellant,

v.

USAA TEXAS LLOYD'S COMPANY,
Appellee.

**IDENTITIES OF PARTIES AND COUNSEL**

Appellant:                          Angela Brooks-Brown

Appellee:                           USAA Texas Lloyd's Company

Counsel for Appellant:              Danny Ray Scott
                                    State Bar No. 24010920
                                    350 Pine Street, Suite 300
                                    Beaumont, Texas 77701
                                    409.833.5400
                                    409.833.5405
                                    danny@scottlawyers.com

Counsel for Appellee:               Lisa A. Songy
                                    State Bar No. 00793122
                                    2811 McKinney Avenue, Suite 250 W
                                    Dallas, Texas 75204
                                    214.665.0100
                                    214.665.0199

ii

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ....................................................ii

TABLE OF CONTENTS ............................................................................iii

INDEX OF AUTHORITES ........................................................................iv

STATEMENT OF THE CASE...................................................................... 1

ISSUES PRESENTED FOR REVIEW ........................................................... 2

STATEMENT OF FACTS............................................................................ 3

SUMMARY OF THE ARGUMENT................................................................ 6

ARGUMENT ........................................................................................... 8

CONCLUSION & PRAYER....................................................................... 11

CERTIFICATION ................................................................................... 14

CERTIFICATE OF COMPLIANCE ............................................................ 14

CERTIFICATE OF SERVICE ................................................................... 15

# INDEX OF AUTHORITES

**CASES**

*Dolenz v. Continental Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981). ...................................................................................................... 8

*Tel. Equip. Network, In. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.} 2002, no pet.) ..................................................... 10

*TMC Worldwide L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ...................................................................................... 9, 10

*Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1998). ......................... 8

## STATEMENT OF THE CASE

*Nature of the case.* Appellant, Angela Brooks-Brown, originally sued Appellee, USAA Texas Lloyd's Company, for breach of contract, breach of the duty of good faith and fair dealing, fraud, violations of the Texas Deceptive Trade Practice Act and violations of the Texas Insurance Code. Appellant subsequently amended her petition to include only the breach of contract claim. Appellee filed a general denial. Appellant will be referred to as "Appellant" or "Plaintiff." Appellee will be referred to as "Appellee," "Defendant" or "USAA."

*Course of the proceedings.* Appellant demanded appraisal of her insurance claim pursuant to the provisions of the insurance policy. Appellant subsequently filed a nonsuit of her claims without prejudice. After filing the nonsuit, and Appellant asked a judge in Jefferson County, Texas (the "Jefferson County Lawsuit" or "Jefferson County action") to appoint an umpire in the appraisal proceeding. Appellee then asked the Bell County trial court to appoint an umpire and filed an application for temporary injunction asking the Bell County court to enjoin Appellant

from proceeding on her Petition to Appoint Umpire in Appraisal Proceeding that she filed in Jefferson County. Appellant then filed a plea in abatement asking the Bell County Court to abate the Bell County proceeding and to allow the Jefferson County court to appoint an umpire in the appraisal proceeding.

*Trial court disposition.* The trial court denied Appellant's plea in abatement, granted Appellee's motion for appointment of umpire and granted Appellee's application for temporary injunction.

## ISSUES PRESENTED FOR REVIEW

1. The trial court erred when it denied Plaintiff's Plea in Abatement to Defendant's Motion for Appointment of Umpire for Insurance Appraisal Proceeding.

2. The trial court erred when it granted Defendant USAA Texas Lloyd's Company's Application for Temporary Injunction.

3. The trial court's order granting Defendant USAA Texas Lloyd's Company's Motion for Appointment of Umpire for Insurance Appraisal Proceeding is void.

2

## STATEMENT OF FACTS

Appellant purchased homeowner insurance policy number 0242343 40 74 90A from Appellee. (CR 272). The insurance policy insured Appellant's property located at ██████████████████████████ and provided coverage for damage caused by wind and hail. (CR 582). On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage. (CR 272). Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof. (CR 272). Plaintiff's property also sustained exterior damage to the cornice and siding, dryer vent, windows, fence, garage door and a/c unit. (CR 273). After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm. (CR 272).

Plaintiff submitted claims to USAA against the Policy for damage caused to the property as a result of the fire and the wind and hail. (CR 272). Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy.

(CR 272). USAA assigned claim number 024234074-3 to Plaintiff's fire claim and claim number 024234074-4 to Plaintiff's wind and hail claim. (CR 273).

Appellant sued Appellee for breach of contract in Bell County, Texas. (CR 275). Appellant's petition did not ask the Bell County court to appoint an appraisal umpire. Appellant presented documentation of damages to the property caused by fire and hail, the value of which substantially exceed the amount USAA originally paid Appellant for the damage caused by the hailstorm (CR 20-24, 84-99). Appellant demanded appraisal of the loss. (CR 432). The parties appointed appraisers and the appraisers did not come to an agreement as to the amount of loss. (CR 434, 436). Furthermore, the appraisers did not agree upon the appointment of an umpire to determine the amount of loss.

The insurance policy at issue contained the following provision:
"If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from

the other. The two appraisers will choose an umpire. **If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located**. (CR 605). The appraisers will separately set the amount of the loss. (CR 605). If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. (CR 605). If they fail to agree, they will submit their differences to the umpire. (CR 605). A decision agreed to by any two will set the amount of loss. (CR 605)."

Appellant nonsuited her claims in Bell County, Texas and filed a petition in Jefferson County, Texas. (CR 418, 640). The Jefferson County petition only asked that court to appoint an umpire in the appraisal proceeding. (CR 640). The Jefferson County petition did not include any of the causes of action or allegations asserted in the previously filed and nonsuited Bell County petition.

Appellee then asked the Bell County trial court to appoint an umpire and filed an application for temporary injunction asking the Bell County

court to enjoin Appellant from proceeding on her Petition to Appoint Umpire in Appraisal Proceeding that she filed in Jefferson County. (CR 420, 569). Appellant then filed a plea in abatement asking the Bell County Court to abate the Bell County proceeding and to allow the Jefferson County court to appoint an umpire in the appraisal proceeding. (CR 687). The trial court denied Appellant's plea in abatement, granted Appellee's motion for appointment of umpire and granted Appellee's application for temporary injunction. (CR 927, 948).

## SUMMARY OF THE ARGUMENT

Appellant's first argument challenges the trial court's denial of Appellant's plea in abatement. Appellee unilaterally drafted an insurance contract that gave the parties the right to ask any judge in the state of Texas to appoint an appraisal umpire. (CR 605). Appellant first asked the Jefferson County court to appoint an umpire and the Jefferson County action was therefore already pending when the Appellee asked the Bell County court to appoint an appraisal umpire. (CR 640) The Bell County court was therefore required to abate Appellee's request to have the Bell

County court appoint an umpire and to allow the Jefferson County action to proceed.

Appellant's second argument challenges the trial court's grant of Appellee's Application for Temporary Injunction. To be entitled to injunctive relief, the applicant must plead a cause of action recognized by Texas courts. Because Appellee did not plead a viable cause of action, the trial court had no authority to enjoin Appellant from proceeding in the Jefferson County action.

Appellant's third argument challenges the trial court's grant of Appellee's Motion for Appointment of Umpire for Insurance Appraisal Proceeding. Because Appellant first asked the Jefferson County court to appoint an umpire and that request was pending prior to Appellee's filing of its request for the Bell County court to do the same, the trial court should have abated the Bell County action and should not have appointed an umpire.

## ARGUMENT

Issue 1: The trial court erred when it denied Plaintiff's Plea in Abatement to Defendant's Motion for Appointment of Umpire for Insurance Appraisal Proceeding.

### ARGUMENT & AUTHORITIES

When an inherent interrelationship of the subject matter exists in two pending lawsuits, a plea in abatement in the second action must be granted. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1998). In reviewing a trial court's ruling on a plea in abatement, an appeals court must consider whether an identity exists between the issues in the two causes. *Dolenz v. Continental Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981).

The insurance policy that USAA sold to appellant provided that either party could ask any judge in the State of Texas to appoint an appraisal umpire. (CR 605). The insured property is located in the state of Texas. (CR 582). The Jefferson County Lawsuit only asked the Jefferson County court to appoint an umpire. (CR 640). After appellant filed her lawsuit in

Jefferson County for the appointment of an appraisal umpire, USAA filed a motion in Bell County asking that court to appoint an appraisal umpire. (CR 420). USAA never filed a lawsuit in Bell County and USAA did not have any pending requests for affirmative relief in Bell County when Appellant filed the Jefferson County lawsuit. Because the second motion to appoint an appraisal umpire shared an inherent relationship with the subject matter of the Jefferson County Lawsuit, the Bell County court was required to abate the Bell County lawsuit while the Jefferson County lawsuit was pending.

Issue 2: The trial court erred when it granted Defendant USAA Texas Lloyd's Company's Application for Temporary Injunction.

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *TMC Worldwide L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id*. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of

action against the defendant, (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id. .*) A probable right to recovery to the relief sought is shown by alleging a cause of action and presenting evidence that tends to sustain it. *Tel. Equip. Network, In. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.} 2002, no pet.).

In seeking its temporary injunction against Appellant, USAA never filed a lawsuit against Appellant seeking any type of affirmative relief and did not assert a cause of action against Appellant. Therefore, USAA failed to satisfy the first and second elements for temporary injunctive relief. The trial court was therefore required to deny USAA's application and it abused its discretion by failing to do so.

Issue 3: The trial court's order granting Defendant USAA Texas Lloyd's Company's Motion for Appointment of Umpire for Insurance Appraisal Proceeding is void.

The trial court erred in denying Appellant's plea in abatement. The granting of Appellant's plea in abatement would have halted the Bell

County umpire proceeding and would have allowed the Jefferson County Lawsuit to address the umpire appointment. The trial court's error in denying Appellant's plea in abatement therefore renders the Bell County umpire appointment void.

## CONCLUSION & PRAYER

The Jefferson County Lawsuit and the Bell County Lawsuit each asked those respective courts to appoint an umpire in the appraisal proceeding governing Appellant's insurance claim. The Jefferson County Lawsuit requested that court to appoint an umpire prior to USAA requesting the same in the Bell County Lawsuit. Therefore, the trial court was required to grant Appellant's plea in abatement and refrain from appointing an umpire for the appraisal proceeding.

In seeking it temporary injunction, USAA never alleged a cause of action against Appellant and therefore never proved its probable right to recovery to any relief sought. Because USAA failed to satisfy two essential elements to obtaining temporary injunctive relief, the trial court erred in granting the application.

11

For these reasons, Appellant asks this Court to reverse the trial court's denial of Appellant's plea in abatement, reverse the trial court's grant of USAA's application for temporary injunction and remand this proceeding for further action consistent with this Court's ruling. In addition, Appellant asks this court to render the trial court's order appointing an umpire in the appraisal proceeding void.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile:   (409) 833-5405


__/s/ Danny Ray_____
Danny Ray Scott
State Bar No. 24010920
Email:  danny@scottlawyers.com
SEAN M. PATTERSON
State Bar No. 24073546
Email: sean@scottlawyers.com
VIRGINIA IZAGUIRRE
State Bar No. 24083230
Email: virginia@scottlawyers.com

*Attorneys for Appellant*

**CERTIFICATION**

I certify that I have reviewed the petition and have concluded that every factual statement made in the petition is supported by competent evidence included in the appendix or the record.

/s/Danny Ray Scott
Danny Ray Scott

**CERTIFICATE OF COMPLIANCE**

I certify that this document was produced on a computer using Microsoft Word and contains 2,397 words, as determined by the computer software's word-count function, excluding sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(l).

/s/ *Danny Ray*
Danny Ray Scott

## CERTIFICATE OF SERVICE

I certify that on October 19, 2015, I served a copy of *Appellant's Brief* on the parties listed below by electronic service and that the electronic transmission was reported as complete. My email address is danny@scottlawyers.com.

Lisa A. Songy
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Ave., Suite 250 West
Dallas, Texas 75204
E-mail Address: lisas@tbmmlaw.com

/s/ *Danny Ray*
_____
Danny Ray Scott

No. 03-15-00451-CV

IN THE

THIRD COURT OF APPEALS

AT AUSTIN, TEXAS


ANGELA BROOKS-BROWN,

Appellant,

v.

USAA TEXAS LLOYD'S COMPANY,
Appellee.

Appealed from the 146TH Judicial District Court of
Bell County, Texas

## APPENDIX TO APPELLANT'S BRIEF

Appellant, Angela Brooks-Brown, submits the following documents in support of her appellant's brief.

## LIST OF DOCUMENTS

1. Plaintiff's Third Amended Original Petition, dated May 19, 2015.

2. Defendant USAA Texas Lloyd's Company's Answer and Jury Demand, dated October 2, 2014.

3. Plaintiff's Original Petition for Appointment of Appraisal Umpire, dated June 8, 2015.

4. Defendant USAA Texas Lloyd's Company's Motion for Appointment of Umpire for Insurance Appraisal Proceeding, dated June 9, 2015.

5. Defendant USAA Texas Lloyd's Company's Verified Application for Temporary Injunction Against Plaintiff, dated June 26, 2015.

6. Plaintiff's Plea in Abatement to Defendant's Motion for Appointment of Umpire for Insurance Appraisal Proceeding, dated July 9, 2015.

7. Plaintiff's Response to Defendant's Verified Application for Temporary Injunction Against Plaintiff, dated July 9, 2015.

8. Order on Defendant USAA Texas Lloyd's Company's Motion for Appointment of Umpire for Insurance Appraisal Proceeding, dated July 10, 2015.

9. Order Granting Defendant USAA Texas Lloyd's Company's Verified Application for Temporary Injunction Against Plaintiff, dated June 15, 2015.

10. Order on Plaintiff's Plea in Abatement to Defendant's Motion for Appointment of Umpire for Insurance Appraisal Proceeding, dated July 27, 2015.

STATE OF TEXAS        §

JEFFERSON COUNTY     §

## VERIFICATION

Before me, the undersigned notary, on this day personally appeared Danny Ray Scott, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1. "My name is Danny Ray Scott. I am over 18 years of age, of sound mind, and capable of making this verification. The facts in this verification are within my personal knowledge and are true and correct.

2. "I am the attorney for appellant. All the documents included with the appellant's brief are true copies."

Danny Ray Scott

Sworn to and subscribed before me by Danny Ray Scott on October _22_, 2015.

Notary Public in and for
the State of Texas

My commission expires:



CELIA SCOTT
Notary Public, State of Texas
My Commission Expires
January 03, 2016

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile:   (409) 833-5405


__*/s/ Danny Ray Scott*_____
Danny Ray Scott
State Bar No. 24010920
Email:  danny@scottlawyers.com
SEAN M. PATTERSON
State Bar No. 24073546
Email: sean@scottlawyers.com
VIRGINIA IZAGUIRRE
State Bar No. 24083230
Email: virginia@scottlawyers.com

*Attorneys for Plaintiff*

CAUSE NO. 272,693-B

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | 146th JUDICIAL DISTRICT |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | BELL COUNTY, TEXAS |

## PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ANGELA BROOKS-BROWN (herein after referred to as "Plaintiff"), complaining of Defendant, USAA TEXAS LLOYD'S COMPANY, (hereinafter referred to as "USAA") and hereby respectfully shows unto the Court and Jury as follows:

### DISCOVERY CONTROL PLAN

1. Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff asks the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### PARTIES

2. Plaintiff, ANGELA BROOKS-BROWN, is an individual and resident of Bell County and citizen of the state of Texas.

3. Defendant, USAA TEXAS LLOYD'S COMPANY, hereinafter "USAA," is a domestic insurance carrier, incorporated and engaging in the business of insurance in the State of Texas. Defendant USAA has been served and is properly before the court.

4.     This Court has Jurisdiction over this case in that the amount in controversy exceeds the minimum jurisdictional limits of this Court.

5.     Venue is mandatory and proper in Bell County, Texas, because all or a substantial part of the events giving rise to the lawsuit occurred in this county (see Tex. Civ. Prac. & Rem. Code § 15.002).

## CONDITIONS PRECEDENT

6.     All conditions precedent to recovery have been performed, waived, or have occurred.

## FACTS

7.     Plaintiff is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A, issued by the Defendant (hereinafter referred to as the "Policy").

8.     Plaintiff owned the insured property that is specifically located at ███████████ ███████████ (hereinafter referred to as the "Property").

9.     Defendant or its agent sold the Policy, insuring the property, to Plaintiff.

10.    On or about April 4, 2014, Plaintiff's property sustained fire damage, specifically to the fence. Plaintiff filed a claim with her insurance company, USAA for the damages to her property caused by the fire.

11.    On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage.  Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof.  Plaintiff's property also sustained exterior damage to the cornice and siding, dryer vent, windows, fence,

garage door and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

12.     Plaintiff submitted claims to USAA against the Policy for damage caused to the property as a result of the fire and the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy.  USAA assigned claim number 024234074-3 to Plaintiff's fire claim and claim number 024234074-4 to Plaintiff's wind and hail claim.

13.     On or about April 15, 2014, Gene Swanson ("SWANSON"), on behalf of USAA, inspected the property in question pursuant to Plaintiff's fire claim.  The fire caused significant damage to the fence, which required that it be removed and replaced. SWANSON did not conduct a thorough inspection and only allowed the minimum cost to repair the fence. As a result of SWANSON's unreasonable and brief investigation, Plaintiff was wrongly denied the full cost to replace the fence.

14.     On or about May 16, 2014, Steen Schumacher ("SCHUMACHER"), on behalf of USAA, inspected the property in question pursuant to Plaintiff's wind and hail claim. The storm caused significant damage to the roof, including pitting and loss of granules to the shingles. The hail pitting damage bruised the shingles, while removing and crushing the granules. Wind damage uplifted and detached shingles, which would not allow the shingles to reseal to prevent water intrusion.

15.     The storm caused extensive damage to the exterior of the property.  Specifically, it caused damage to the cornice and siding, dryer vent, windows, fence, garage door, and a/c unit. SCHUMACHER did not conduct a thorough exterior inspection and only allowed the

minimum cost to repair the windows and seal and paint the garage door opening and trim. As a result of SCHUMACHER's unreasonable exterior investigation, Plaintiff was wrongly denied the full cost to repair the damage to the exterior of the property. SCHUMACHER also denied Plaintiff the full cost for construction cleanup, debris removal, a job permit, and temporary utilities, although all of the cost was covered under the Policy.

16. Despite documenting extensive damage to the roof, SCHUMACHER failed to conduct a reasonable exterior inspection of the Property. SCHUMACHER failed to give Plaintiff an allowance for obvious damage caused by the storm to the fence, garage door, a/c unit, dryer vent, cornice and siding. SCHUMACHER conducted an insufficient inspection and prematurely closed Plaintiff's claim. At the time if the investigation, premature closing of claims was part of a pattern and practice of claims handling by USAA.

17. USAA failed to properly adjust the claims and Defendant has denied at least a portion of the claims without an adequate investigation, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, USAA underpaid portions of Plaintiff's claims by not providing full coverage for the damages sustained by Plaintiff, as well as under-scoping the damages during its investigation.

18. To date, USAA continues to delay in the payment for the damages to the Property. As such, Plaintiff's claim(s) still remain unpaid and Plaintiff still has not been able to properly repair the Property.

19. Defendant failed to perform its contractual duty to adequately compensate Plaintiff under terms of the policy. Specifically, Defendant failed and refused to pay any of the proceeds of the Policy, although due demand was made for proceeds to be paid in an amount

sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

### COUNT ONE: BREACH OF CONTRACT

20. Plaintiff incorporates paragraphs 10-19 herein.

21. At the time of the April 4, 2014 and May 12, 2014 incidents, Plaintiff had in place a policy issued by USAA. The premiums were current. All conditions precedent to recovery were made. Defendant wrongfully failed to comply with the terms of the contract. Defendant is, therefore, in breach of the contract of insurance issued to Plaintiff.

22. Defendant's conduct constitutes a breach of contract resulting in damages to the Plaintiff.

### DAMAGES

23. The exact amount of Plaintiff's damages are unknown. Based on the information currently available to Plaintiffs, Plaintiff seeks only monetary relief of $ 100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. Plaintiff reserves the right to decrease or increase this amount as further information becomes available.

### JURY DEMAND

24. Plaintiff previously requested a trial by jury and paid the jury fee.

### PRAYER

25. For these reasons, Plaintiff asks that she have judgment against Defendant for her economic damages and all other relief to which Plaintiff may show herself entitled.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone:  (409) 833-5400
Facsimile:  (409) 833-5405


_____/s/Danny Ray Scott_____
Danny Ray Scott
State Bar No. 24010920
danny@scottlawyers.com
Virginia Izaguirre
State Bar No. 24083230
virginia@scottlawyers.com
Sean M. Patterson
State Bar No. 24073546
sean@scottlawyers.com

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following counsel of record in compliance with the Texas Rules of Civil Procedure on this the 19th day of May, 2014.

**Via Facsimile: (214) 665-0199**
Lisa A. Songy
TOLLEFSON  BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Ave., Suite 250 West
Dallas, Texas 75204
Telephone:  (214) 665-0107
Email:  lisas@tbmmlaw.com


/s/ *Danny Ray Scott*

_____
DANNY RAY SCOTT

**CAUSE NO. 272,693-B**

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | BELL COUNTY, TEXAS |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | |
| | § | |
| **Defendant** | § | |
| | § | 146TH JUDICIAL DISTRICT |

---

**DEFENDANT USAA TEXAS LLOYD'S COMPANY'S
ANSWER AND JURY DEMAND**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, USAA TEXAS LLOYD'S COMPANY ("USAA") files this Answer and Jury

Demand as follows:

## I.

### GENERAL DENIAL

Pursuant to TEXAS RULE OF CIVIL PROCEDURE 92, USAA generally denies the allegations

contained in Plaintiff's Original Petition and demands strict proof by a preponderance of the

evidence of all Plaintiff's allegations.

## II.

### DEFENSES

### Policy Defenses

Some or all of Plaintiff's claims are excluded or limited by applicable policy terms,

conditions, and exclusions of the policy issued to Plaintiff by USAA and in effect on May 12, 2014,

USAA will more specifically identify which particular policy terms, condition and exclusions

exclude or limit some or all of Plaintiff's claims within a reasonable time after Plaintiff discloses what specific damage Plaintiff alleges USAA failed to cover.

## Payment

Plaintiff's claims have been fully adjusted and appropriate payment tendered.

## Limit of Liability

Plaintiff's damages, if any, must be limited by the amount set forth in the policy limitations provisions of the applicable policy.

## Failure of Conditions Precedent to Coverage

Pursuant to Rule 54 of the TEXAS RULES OF CIVIL PROCEDURE, USAA specifically denies that Plaintiff satisfied one or more conditions precedent to recovery. Plaintiff failed to cooperate in the investigation and settlement of the claim as required by the applicable policy. Cooperation as required by the contract is a condition precedent to USAA's obligations under the contract. Therefore, USAA is excused from performing under the contract. Accordingly, Plaintiff has no cause of action against USAA for which relief can be granted. Additionally, and in the alternative, USAA has fully performed any obligations owed to Plaintiff.

## Offset and/or Credit

Plaintiff's damages, if any, must be offset by the amount of applicable policy deductibles. Further, any award to Plaintiff must be offset by all prior payments tendered by USAA regarding the claims that form the basis of Plaintiff's lawsuit and by all payments and credits otherwise available.

## Due Process

To the extent that Plaintiff prays for exemplary damages, USAA invokes its rights under the due process clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution. USAA affirmatively pleads

that Plaintiff's pleading of exemplary damages is violative of the due process clauses of the Fifth and Fourteenth Amendments inasmuch as exemplary damages can be assessed:

1. In an amount left to the discretion of the jury and judge;

2. In assessing such penalty or exemplary awards, Plaintiff need only prove the theory of gross negligence on a "clear and convincing evidence" standard and not "beyond a reasonable doubt" standard as should be required in assessing a punishment award;

3. The assessment of such a punishment and/or exemplary award is not based upon a clearly defined statutory enactment setting forth a specific means requirement and/or the prerequisites of criminal fine and in effect, allow the assessment of such awards even though there are no special standards, limits or other statutory requirements set forth that define the means and scope and limit of such awards. Therefore, the awards are unduly vague and do not meet with requirements of due process; and

4. In essence, USAA is subject to all of the hazards and risks of what amounts to a fine, and in fact, such awards often exceed normal, criminal fines, but USAA receives none of the basic rights accorded to a criminal USAA when being subjected to possible criminal penalties.

### Equal Protection

To the extent Plaintiff prays for punitive, exemplary, or otherwise enhanced damages, such request should be denied because it violates the equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and the provisions of the Eighth Amendment to the Constitution of the United States.

### Punitive Damage Limitation

With respect to Plaintiff's claims for damages, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) $100,000, pursuant to the statutory mandates of Chapter 41 of the TEXAS CIVIL PRACTICES AND REMEDIES CODE. USAA reserves the right to seek a bifurcation of any punitive damage issues at the trial of this case as permitted by Chapter 41 of the TEXAS CIVIL PRACTICES AND REMEDIES CODE.

**Damages Limitation**

By way of affirmative defense, if such be necessary, Plaintiff has specifically pled that her damages do not exceed $74,500 inclusive of damages of any kind, penalties, costs, expenses, prejudgment interest and attorney's fees. Thus, pursuant to TEXAS RULE OF CIVIL PROCEDURE 169(b), Plaintiff's damages are limited as set forth by the statute.

**Liability Not "Reasonably Clear"**

Under Texas law, an insured bringing an action against its insurer for an alleged breach of a duty of good faith and fair dealing must carry the burden of proof to establish that the insurer unreasonably denied or delayed payment of an insurance claim when the insurer's liability had become reasonably clear. At all times material to this lawsuit, USAA's liability was not "reasonably clear."

**Lack of Written Notice to Trigger the Prompt Payment Statute**

Plaintiff's claims under Section 542 of the TEXAS INSURANCE CODE ("Prompt Payment of Claims") are barred, in whole or in part, because Plaintiff did not provide a written notice of claim reasonably apprising USAA of the facts relating to the claim or delayed in providing such notice.

**III.**

**JURY DEMAND**

USAA requests a jury in this case. The jury fee has been paid.

**PRAYER**

USAA, Defendant, respectfully prays that Angela Brooks-Brown, Plaintiff, take nothing by reason of her suit herein, and that USAA recover its costs.

Respectfully submitted,

/ s / **Lisa A. Songy**
Lisa A. Songy
State Bar No. 00793122
lsongy@shannongracey.com
Crystal L. Vogt
State Bar No. 24048768
cvogt@shannongracey.com
SHANNON, GRACEY, RATLIFF & MILLER LLP
Bank of America Plaza
901 Main Street, Suite 4600
Dallas, Texas  75202
Telephone 214.245.3090
Facsimile 214.245.3097
**ATTORNEYS FOR DEFENDANT USAA
TEXAS LLOYD'S COMPANY**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of has been served upon counsel of record via facsimile on this 2nd day of October, 2014.

Danny Ray Scott
danny@scottlawyers.com
Virginia Izaguirre
virginia@scottlawyers.com
Sean M. Patterson
sean@scottlawyers.com
Scott Law Offices
350 Pine Street, Suite 300
Beaumont, Texas  77701
*Facsimile 409.833.5405*

/ s / **Lisa A. Songy**
Lisa A. Songy

**FILED FOR RECORD**
**Carolyn L. Guidry**
**6/8/2015 12:00:00 AM**
**COUNTY CLERK**
**JEFFERSON COUNTY**
**0127771**

CAUSE NO. **0127771** _____

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| v. | § | AT LAW NO. 1 |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | JEFFERSON COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION FOR APPOINTMENT OF APPRAISAL UMPIRE**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ANGELA BROOKS-BROWN (herein after referred to as "Plaintiff"), complaining of Defendant, USAA TEXAS LLOYD'S COMPANY, (hereinafter referred to as "USAA") and hereby respectfully show unto the Court as follows:

### DISCOVERY CONTROL PLAN

1. Plaintiff intends for discovery to be conducted under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

### PARTIES

2. Plaintiff, ANGELA BROOKS-BROWN, is an individual and resident of Bell County and citizen of the state of Texas.

3. Defendant, USAA TEXAS LLOYD'S COMPANY, hereinafter "USAA," is a domestic insurance carrier, incorporated and engaging in the business of insurance in the State of Texas, and may be served with process by serving its President, Laura M. Bishop, 9800 Fredericksburg Road, San Antonio, Texas 78288.

### VENUE

4. Venue is proper in Jefferson County, Texas, because the insurance contract

hj

drafted by the defendant grants the parties the right to petition a judge of a court of record in the state where the "residence premises" is located to appoint an appraisal umpire.

<strong>FACTS</strong>

5. Plaintiff is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A, issued by the Defendant (hereinafter referred to as the "Policy").

6. Plaintiff owned the insured property that is specifically located at ███████ ██████████ (hereinafter referred to as the "Property").

7. Defendant or its agent sold the Policy, insuring the property, to Plaintiff.

8. On or about April 4, 2014, Plaintiff's property sustained fire damage, specifically to the fence. Plaintiff filed a claim with her insurance company, USAA for the damages to her property caused by the fire.

9. On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage. Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof. Plaintiff's property also sustained exterior damage to the cornice and siding, dryer vent, windows, fence, garage door and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

10. Plaintiff submitted claims to USAA against the Policy for damage caused to the property as a result of the fire and the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy. USAA assigned claim number 024234074-3 to Plaintiff's fire claim and claim number 024234074-4 to Plaintiff's wind and hail claim.

11. On March 5, 2015, plaintiff communicated to defendant that plaintiff disagreed with defendant's determination of the amount of loss with respect to plaintiff's insurance claim. Plaintiff also communicated to defendant that plaintiff wished to invoke the insurance policy's appraisal clause.

12. The insurance policy's appraisal clause states the following: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

13. The requisite period of time has expired and the appraisers have not agreed upon an umpire. Plaintiff therefore requests that this Court select an umpire in accordance with and as allowed by the policy's provisions.

**PRAYER**

14. For these reasons, Plaintiff asks that this Court appoint an umpire for the insurance appraisal. Plaintiff also asks the Court to issue orders as necessary to validate any decision the umpire makes and to issue any orders necessary to conclude this matter at the appropriate time.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405


    */s/Danny Ray Scott*
_____
Danny Ray Scott
State Bar No. 24010920
danny@scottlawyers.com
Virginia Izaguirre
State Bar No. 24083230
virginia@scottlawyers.com
Sean M. Patterson
State Bar No. 24073546
sean@scottlawyers.com

*Attorneys for Plaintiff*

# CIVIL CASE INFORMATION SHEET

FILED FOR RECORD
Carolyn L. Guidry
6/8/2015 12:00:00 AM
COUNTY CLERK
JEFFERSON COUNTY
0127771

CAUSE NUMBER *(FOR CLERK USE ONLY):* **0127771** _____  COURT *(FOR CLERK USE ONLY):* _____

STYLED **ANGELA BROOKS-BROWN V. USAA TEXAS LLOYDS COMPANY**

(e g , John Smith v  All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

## 1. Contact information for person completing case information sheet:

Name:
Danny Ray Scott

Email:
danny@scottlawyers.com

Address:
350 Pine Street, Suite 300

Telephone:
(409) 833-5400

City/State/Zip:
Beaumont, Texas 77701

Fax:
(409) 833-5405

Signature:

/s/  Danny Ray Scott

State Bar No:
24010920

### Names of parties in case:

Plaintiff(s)/Petitioner(s):

Angela Brooks-Brown
_____

Defendant(s)/Respondent(s):

USAA Texas Lloyds Company
_____

[Attach additional page as necessary to list all parties]

### Person or entity completing sheet is:
- ☒ Attorney for Plaintiff/Petitioner
- ☐ *Pro Se* Plaintiff/Petitioner
- ☐ Title IV-D Agency
- ☐ Other: _____

**Additional Parties in Child Support Case:**

Custodial Parent:
_____

Non-Custodial Parent:
_____

Presumed Father:
_____

## 2. Indicate case type, or identify the most important issue in the case *(select only 1):*

### Civil

**Contract**

*Debt/Contract*
- ☐ Consumer/DTPA
- ☐ Debt/Contract
- ☐ Fraud/Misrepresentation
- ☐ Other Debt/Contract:
  _____

*Foreclosure*
- ☐ Home Equity—Expedited
- ☐ Other Foreclosure
- ☐ Franchise
- ☒ Insurance
- ☐ Landlord/Tenant
- ☐ Non-Competition
- ☐ Partnership
- ☐ Other Contract:
  _____

**Injury or Damage**
- ☐ Assault/Battery
- ☐ Construction
- ☐ Defamation

*Malpractice*
- ☐ Accounting
- ☐ Legal
- ☐ Medical
- ☐ Other Professional Liability: _____
- ☐ Motor Vehicle Accident
- ☐ Premises

*Product Liability*
- ☐ Asbestos/Silica
- ☐ Other Product Liability List Product: _____

- ☐ Other Injury or Damage:
  _____

**Real Property**
- ☐ Eminent Domain/ Condemnation
- ☐ Partition
- ☐ Quiet Title
- ☐ Trespass to Try Title
- ☐ Other Property:
  _____

**Related to Criminal Matters**
- ☐ Expunction
- ☐ Judgment Nisi
- ☐ Non-Disclosure
- ☐ Seizure/Forfeiture
- ☐ Writ of Habeas Corpus— Pre-indictment
- ☐ Other: _____

**Employment**
- ☐ Discrimination
- ☐ Retaliation
- ☐ Termination
- ☐ Workers' Compensation
- ☐ Other Employment:
  _____

**Other Civil**
- ☐ Administrative Appeal
- ☐ Antitrust/Unfair Competition
- ☐ Code Violations
- ☐ Foreign Judgment
- ☐ Intellectual Property
- ☐ Lawyer Discipline
- ☐ Perpetuate Testimony
- ☐ Securities/Stock
- ☐ Tortious Interference
- ☒ Other: Appoint Appraisal Umpire (Insurance)

### Family Law

**Marriage Relationship**
- ☐ Annulment
- ☐ Declare Marriage Void

*Divorce*
- ☐ With Children
- ☐ No Children

**Other Family Law**
- ☐ Enforce Foreign Judgment
- ☐ Habeas Corpus
- ☐ Name Change
- ☐ Protective Order
- ☐ Removal of Disabilities of Minority
- ☐ Other: _____

**Post-judgment Actions (non-Title IV-D)**
- ☐ Enforcement
- ☐ Modification—Custody
- ☐ Modification—Other

**Title IV-D**
- ☐ Enforcement/Modification
- ☐ Paternity
- ☐ Reciprocals (UIFSA)
- ☐ Support Order

**Parent-Child Relationship**
- ☐ Adoption/Adoption with Termination
- ☐ Child Protection
- ☐ Child Support
- ☐ Custody or Visitation
- ☐ Gestational Parenting
- ☐ Grandparent Access
- ☐ Paternity/Parentage
- ☐ Termination of Parental Rights
- ☐ Other Parent-Child:
  _____

**Tax**
- ☐ Tax Appraisal
- ☐ Tax Delinquency
- ☐ Other Tax

### Probate & Mental Health

*Probate/Wills/Intestate Administration*
- ☐ Dependent Administration
- ☐ Independent Administration
- ☐ Other Estate Proceedings

- ☐ Guardianship—Adult
- ☐ Guardianship—Minor
- ☐ Mental Health
- ☐ Other: _____

## 3. Indicate procedure or remedy, if applicable *(may select more than 1):*
- ☐ Appeal from Municipal or Justice Court
- ☐ Arbitration-related
- ☐ Attachment
- ☐ Bill of Review
- ☐ Certiorari
- ☐ Class Action
- ☐ Declaratory Judgment
- ☐ Garnishment
- ☐ Interpleader
- ☐ License
- ☐ Mandamus
- ☐ Post-judgment
- ☒ Prejudgment Remedy
- ☐ Protective Order
- ☐ Receiver
- ☐ Sequestration
- ☐ Temporary Restraining Order/Injunction
- ☐ Turnover

## 4. Indicate damages sought *(do no select if it is a family law case):*
- ☒ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys fees
- ☐ Less than $100,000 and non-monetary relief
- ☐ Over $100,000 but not more than $200,000
- ☐ Over $200,000 but not more than $1,000,000
- ☐ Over $1,000,000

Rev 2/13

hj

CAUSE NO. 272,693-B

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | BELL COUNTY, TEXAS |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | |
| | § | |
| Defendant | § | |
| | § | 146TH JUDICIAL DISTRICT |

---

**DEFENDANT USAA TEXAS LLOYD'S COMPANY'S MOTION FOR APPOINTMENT OF UMPIRE FOR INSURANCE APPRAISAL PROCEEDING**

---

Comes Now, Defendant USAA Texas Lloyd's Company ("USAA Texas Lloyd's"), and respectfully files this Motion for Appointment of Umpire for Insurance Appraisal Proceeding and in support, respectfully shows the following:

## I.
## BACKGROUND

**A. Plaintiff's Request for Appraisal.**

This is a residential property insurance dispute involving Angela Brooks-Brown ("Plaintiff"). Plaintiff is the property owner of a home located at ██████████ ████ (the "Property"). The Property is alleged to have been damaged by a wind and hail storm (which occurred on or about May 12, 2014), as well as a fire (which occurred on or about April 4, 2014). *See* Pltf's Original Pet. ¶¶ 10, 11.

Plaintiff is the policy holder insured pursuant to the terms of USAA Texas Lloyd's homeowner insurance policy number LLYD 02423 40 74 90A (the "Policy"), which was in effect on the date of losses. *See* Policy Declaration Page and Appraisal Provision, Ex. A.

---

On or about March 5, 2015, Plaintiff invoked her right to an appraisal pursuant to Section I "Conditions," Paragraph 8 of the Policy (the "Appraisal Provision"). *See* Mar. 5, 2015 letter from Pltf's counsel, Ex. B. Plaintiff then designated Darrell Quinney to serve as her appraiser on or about April 20, 2015. *See* Apr. 20, 2015 letter from Pltf's counsel, Ex. C. Mr. Quinney's company, Loss Solutions, provided the estimate which forms the basis of Plaintiff's alleged damages in this lawsuit and has been retained by Plaintiff as a testifying expert. As such, USAA Texas Lloyd's objected to Mr. Quinney serving as an appraiser. [1] *See* Apr. 23, 2015 letter from USAA Texas Lloyd's counsel, Ex. D. Nonetheless, in compliance with the Policy, USAA Texas Lloyd's designated Mark West as its appraiser. *See id*.

The appraisers met, inspected the property, and exchanged estimates, but have been unable to agree upon a scope and pricing with respect to the conditions observed. Both appraisers inspected the property but they have fundamental disagreements on what constitutes storm damage and fire damage, as well as the costs to repair same. Thus, an umpire is necessary to resolve the differences. USAA Texas Lloyd's now seeks the appointment of a competent and impartial umpire to complete the appraisal process which was initiated by Plaintiff.

**B. The Policy's Appraisal Provision and Umpire Requirement.**

While the parties have chosen their respective appraisers, no umpire has been selected pursuant to the Policy. Specifically, the relevant portion of the Appraisal Provision provides:

> Appraisal. If [Plaintiff] and [USAA Texas Lloyd's] fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days of receiving a written request from the other. The two appraisers will choose an umpire. **If they cannot agree upon an umpire within 15 days, [Plaintiff] or [USAA Texas Lloyd's] may request that the choice be made by a judge**

---

[1] USAA Texas Lloyd's reserves it right to challenge whether Mr. Quinney is impartial and competent to serve as an appraiser, as required by the Policy.

**of a court of the record in the state where the "residence premises" is located**.

***

*See* Ex. A. (emphasis added).

USAA Texas Lloyd's appraiser, Mr. West, reached out to Plaintiff's appraiser numerous times to discuss the issue. Mr. West has nominated the following umpires[2]:

- Ret. Judge Carolyn Marks Johnson;

- Ret. Judge Don Wittig;

- Ret. Judge Rick Morris;

- Mr. Cecil Parker, I.A.; and

- Mr. Jim Beneke, S.P.P.A.

*See* Apr. 13, 2015 email from Mr. West, Ex. E. Each of Mr. West's proposed umpires is competent to handle the matter involved. *See, e.g., Curriculum vitae* of Ret. Judge Morris, Ex. F; biography of Ret. Judge Wittig, Ex. G; biography Mr. Beneke, Ex. H. However, to date, no umpire has been agreed upon by Mr. West and Mr. Quinney. As such, USAA Texas Lloyd's now requests that the Court appoint an umpire pursuant to the Policy.

**II.**
**ARGUMENT AND AUTHORITIES**

**A. A Court-Appointed Umpire is Proper under the Policy and Texas law.**

In order for the parties to complete the appraisal process as outlined in the Policy, a court-appointed umpire is required. The procedures established in the Appraisal Provision are enforceable and favored under Texas law. *See In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 406-07 (Tex. 2011) (orig. proceeding). Pursuant to the Appraisal Provision,

---

[2] Mr. West and Mr. Quinney have been designated as appraisers in multiple lawsuits filed by Plaintiff's counsel in Bell County, Texas. Mr. West proposed these umpires to Mr. Quinney in all USAA matters in Bell County.

USAA Texas Lloyd's and Plaintiff's appraisers were required to agree upon and select an umpire by May 8, 2015—i.e., 15 days after the last appraiser was designated, which was on April 23, 2015. *See* Ex. A. Despite USAA Texas Lloyd's appraiser's efforts to reach an agreement with Plaintiff's appraiser, the umpire selection process has ended at an impasse. Plaintiff's appraiser, Mr. Quinney, rejected every umpire proposed by Mr. West. Therefore, under the unambiguous language of the Policy, USAA Texas Lloyd's may now request judicial intervention for the selection of an umpire. *See* Ex. A ("If [the appraisers] cannot agree upon an umpire within 15 days, [Plaintiff] or [USAA] may request that the choice be made by a judge…"). As such, USAA Texas Lloyd's now seeks to exercise its right under the Policy to have the Court appoint an umpire and commence the appraisal process.

Additionally, USAA Texas Lloyd's requests that the Court appoint one of the following umpires:

- Ret. Judge Carolyn Marks Johnson;

- Ret. Judge Don Wittig;

- Ret. Judge Rick Morris;

- Mr. Cecil Parker, I.A.; and

- Mr. Jim Beneke P.A.

These individuals were previously nominated by Mr. West and are highly qualified. *See, e.g.,* Ex. E-H.

**III.**
**CONCLUSION**

As shown above, USAA Texas Lloyd's is entitled to a court-appointed umpire to commence the appraisal process. The appointment of an umpire is supported by the Policy and

Texas law.  USAA Texas Lloyd's therefore, respectfully requests that the Court grant this Motion and appoint either Judge Carolyn Marks Johnson, Judge Don Wittig, Judge Rick Morris, Mr. Cecil Parker, I.A., or Mr. Jim Beneke, S.P.P.A. as umpire, as well as all other relief the Court deems just and equitable.

Respectfully submitted,

/s/ *Lisa A. Songy*
Lisa A. Songy
State Bar No. 00793122
LisaS@tbmmlaw.com
Donnie M. Apodaca, II
State Bar No. 24082632
DonnieA@tbmmlaw.com

TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas  75204
(214) 665-0100 Telephone
(214) 665-0199 Facsimile
**ATTORNEYS FOR DEFENDANT USAA TEXAS LLOYD'S COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of has been served upon counsel of record via electronic service and facsimile on this 9th day of June, 2015.

***Attorneys for Plaintiff***
Danny Ray Scott
danny@scottlawyers.com
Virginia Izaguirre
virginia@scottlawyers.com
Sean M. Patterson
sean@scottlawyers.com
Scott Law Offices
350 Pine Street, Suite 300
Beaumont, Texas  77701
***Facsimile 409.833.5405***

/ s / *Lisa A. Songy*
Lisa A. Songy

# EXHIBIT A

STATE OF TEXAS

Before me, the undersigned notary public for the State of Texas, on this day personally appeared Mary Ann Rice, Administrative Support Manager and custodian of records of USAA Texas Lloyd's Company, and after being by me duly sworn and upon her oath says that an exact duplicate of the USAA Texas Lloyd's Company, 02423 40 74 90A, including any applicable endorsements and forms, issued to ANGELA BROOKS, effective on May 12, 2014, has been prepared under her direction and is attached hereto.

_____
Mary Ann Rice,
Administrative Support Manager

Subscribed and sworn to before me by said Mary Ann Rice, Administrative Support Manager, this ____ day of October, 2014 at San Antonio, Texas, to certify which witness my hand and seal at office.

DIANA G ARREDONDO
My Commission Expires
August 10, 2016

_____
Diana G Arredondo
Notary Public
State of Texas
My commission expires on August 10, 2016

0901119c9008fad1



**USAA TEXAS LLOYD'S COMPANY**

**9800 Fredericksburg Road · San Antonio, Texas 78288**

AMENDED DECLARATIONS PAGE - EFFECTIVE 10/09/13

| Named Insured and Residence Premises | Policy Number |
|---|---|
| ANGELA BROOKS | LLYD 02423 40 74 90A |

Policy Period From: 10/09/13    To: 10/09/14
(12:01 A.M. standard time at location of the residence premises)

| SECTION I - COVERAGES AND AMOUNTS OF INSURANCE | |
|---|---|
| COVERAGE A - DWELLING PROTECTION | $184,000 |
| COVERAGE B - OTHER STRUCTURES PROTECTION | $46,000 |
| COVERAGE C - PERSONAL PROPERTY PROTECTION | $138,000 |
| COVERAGE D - LOSS OF USE PROTECTION (UP TO 12 MONTHS) | $36,800 |

| SECTION II - COVERAGES AND LIMITS OF LIABILITY | |
|---|---|
| Personal Liability – Each Occurrence | $300,000 |
| Medical Payments to Others | $5,000 |

**DEDUCTIBLES (Applies to SECTION I Coverages ONLY)**

We cover only that part of the loss over the deductible stated.

| WIND AND HAIL | $3,680 | (2%) |
|---|---|---|
| ALL OTHER PERILS | $1,840 | (1%) |

| POLICY PREMIUM for Section I and Section II Coverages Above | $814.50 |
|---|---|

**CREDITS AND DISCOUNTS** (Included in policy premium above.)     $760.10 CR
Details on the following page. (If applicable)

**OTHER COVERAGES AND ENDORSEMENTS**

Forms and Endorsements are printed on the following page.

**STATE SURCHARGES AND TAXES** (Shown below if applicable)

SURCHARGES ARE PRINTED ON THE FOLLOWING PAGE.     $1.79

**TOTAL POLICY PREMIUM**
Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes
$816.29

THIS IS NOT A BILL.

**FIRST MORTGAGEE:**
JPMORGAN CHASE BANK NA          LOAN NR     1679555013
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 47020
ATLANTA, GA 30362-0020

In witness whereof, this policy is signed on 10/07/13

Steven Alan Bennett, Secretary

Kevin Bergner, President

**REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.**

HO-D1 (07-08)     ATTACH THIS DECLARATION TO PREVIOUS POLICY     87028-0708

0901119c9008fad1

USAA Confidential



USAA TEXAS LLOYD'S COMPANY
AMENDED DECLARATIONS PAGE – EFFECTIVE          10/09/13

**Policy Number**               **Policy Term:**  10/09/13      10/09/14
LLYD  02423 40 74    90A                          Inception     Expiration

POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

REMAIN IN EFFECT (Refer to prior Policy Packet(s) for documents not attached.):

    QR3TXLLD    (07-08) QUICK REFERENCE-SPECIAL FORM
    HO-3RTX     (07-08) HOMEOWNERS SPECIAL FORM
    HO-ACPTX    (07-12) AMENDMENT TO CONTRACT PROVISIONS
    HO-SLS3TX   (07-12) SPECIAL LOSS SETTLEMENT
    HO-TX       (05-10) TEXAS SPECIAL PROVISIONS
    HO-125TX    (07-08) HOME PROTECTOR
    HO-208TX    (07-12) WATER BACKUP OR SUMP PUMP OVERFLOW
    HO-728TX    (07-12) REPLACEMENT COST COVERAGE

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:

    AUTO AND HOME COMBINATION DISCOUNT              $90.50 CR
    CLAIMS FREE DISCOUNT                            $90.50 CR
    HOME AGE DISCOUNT                              $552.04 CR
    PROTECTIVE DEVICE CREDIT                        $27.06 CR

SPECIFICALLY LISTED BELOW ARE SURCHARGES.

    TX VOLUNTEER FIRE FUND ASSESSMENT                          $1.79

REASON(S) FOR CHANGE:

MISCELLANEOUS POLICY CHANGES

HO-D2 (07-08)              10/07/13

87029-0708

USAA Confidential

0901119c9008fad1

i. **Microbial Organisms**, including but not limited to mold, mold spores, fungus, bacterium or parasitic microoganisms.

j. **"Collapse"**, other than as provided in ADDITIONAL COVERAGES, **"Collapse"**.

k. **Diminution in value**, meaning any reduction in value that would remain after damaged property is repaired or replaced.

l. **Wet rot, dry rot, or deterioration**.

m. **Settling, cracking, shrinking, bulging** or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail, or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event

excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, negligent, inadequate or defective**;

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or maintenance.

This limitation applies to loss or damage to any property on or off the **"residence premises"**.

## SECTION I - CONDITIONS

1. **Insurable Interest and Amount of Insurance.**

   Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

   b. For more than the applicable amount of insurance

   whichever is less.

Each time there is a loss to any building insured under Coverage A - Dwelling Protection or Coverage B - Other Structures Protection, the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to that amount of insurance shown on the Declarations page.

A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This provision shall not apply to personal property.

0901119c9008fad1

USAA Confidential

(a) To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

(b) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property whichever is less.

6. **Loss or Damage to a Pair or Set**. In case of loss or damage to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between "**actual cash value**" of the property before and after the loss.

7. **Matching of Undamaged Property**. In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

   a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

   b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

8. **Appraisal**. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each

party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "**residence premises**" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expense of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the "**actual cash value**", replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

USAA Confidential

# EXHIBIT B



**SCOTT**
LAW OFFICES

o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

March 5, 2015

*Via Facsimile: (214) 665-0199*
Ms. Lisa A. Songy
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney, Suite 250
Dallas, Texas 75204

     Re:    Cause No. 272,693-B; *Angela Brooks-Brown v. USAA Texas Lloyds Company*; In the
             146th Judicial District Court, Bell County, Texas

Dear Ms. Songy:

This letter is sent to advise you that the plaintiff in the referenced action hereby invokes the appraisal provision for the property pertaining to the above referenced case, Policy Number LLYD 02423 40 74 90A, Pursuant to Section I Conditions, Appraisal:

"If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

We hereby request that you provide the identity of and contact information for defendant's appraiser no later than March 26, 2015.

We look forward to hearing from you.

Sincerely,

DANNY RAY SCOTT

# EXHIBIT C



o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, Tx 77701-2431
scottlawyers.com

April 20, 2015

*Via Facsimile:  214-665-0199*
Lisa A. Songy
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204

Re:     Angela Brooks-Brown v. USAA Texas Lloyd's Company; Cause No. 272,693-B; In the
        146th Judicial District Court; Bell County, Texas

Dear Ms. Songy:

This letter is sent to advise you that the Plaintiff has appointed Darrell Quinney of Loss
Solutions as her appraiser for the property pertaining to the above referenced matter.

Mr. Quinney's phone number is 979-234-2400, and his email is dq@loss-solution.com.

Should you have any questions or require additional information, please do not hesitate to
contact our office at 409.833.5400.

Sincerely,

Jo Ann Haynes, Paralegal to
DANNY RAY SCOTT

# EXHIBIT D

# Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Facsimile:   214.665.0199
Telephone:  214.665.0100

Lisa A. Songy                                                                Direct: 214.665.0107
Admitted in Texas and California                                             lisas@tbmmlaw.com

April 23, 2015

***Via Facsimile (409) 833-5405***
Mr. Danny Ray Scott
Scott Law Offices
350 Pine Street, Suite 300
Beaumont, Texas  77701

> Re:   *Angela Brooks-Brown v. USAA Texas Lloyd's Company*, Cause No. 272,693-B, In the 146th Judicial District Court of Bell County, Texas

Dear Mr. Scott:

I am in receipt of your paralegal's letter naming Darrell Quinney as Ms. Brooks-Brown's appraiser in this matter.  We object to your firm's use Mr. Quinney as an appraisal in this matter as you have identified him as an expert witness in this matter and in fact sought to quash a deposition on written questions to Mr. Quinney because he was your expert.  Therefore, you have already identified Mr. Quinney as an advocate for your client and he does not meet the impartiality test of the policy in terms of being a competent and impartial appraisal.  Further, we have questions regarding Mr. Quinney's competency.  Thus, we will object to any appraisal award which Mr. Quinney is a part of as not being proper under the policy.

However, in compliance with the policy, USAA hereby designates Mark West as its appraiser in this matter.  Mr. West can be reached at (713) 824-2773.

Further USAA does not waive any other right it may have to challenge any appraisal award in this matter.  If you have any questions, please feel free to contact me.

Very truly yours,

Lisa A. Songy

LAS/cv
2015.001/ltr to Danny R. Scott

cc:    Ms. Jo Ann Haynes – Paralegal to Danny Ray Scott

# EXHIBIT E

**From:** Mark West
**Sent:** Monday, April 13, 2015 4:20 PM
**To:** 'dq@loss-solutions.com'
**Cc:** Shirley Willrich (shirley@westfireinc.com)
**Subject:** USAA and Moore and Marte

Darrell,
Thanks for speaking with me last week. Below is a list of possible umpires for the two processes we have together in Killeen, for your review and consideration. Additionally I have April, 16th or 17th available to meet with you at the losses if your schedule permits.
1 Judge C. M. Johnson 713-523-5000
2. Judge Don Wittig 956-266-8675
3. Judge Rick Morris 254-718-3388
4. Mr. Cecil Parker I.A. 361-537-8860
5. Mr. Jim Beneke P.A. 512-422-7787

Thanks for your time in this matter
Mark

# EXHIBIT F

# RICK  MORRIS

Senior District Judge
Mediator and Arbitrator

P.O. Box 1163
Salado, Texas 76571
Cell: (254) 718-3388
Phone:  (254) 947-1023

www.judgerickmorris.com

Rick.Morris@JudgeRickMorris.com

## JUDICIAL EXPERIENCE

**Judicial Judge**, 146th Judicial District of Texas                                    1989 – 2013
Elected six times without opposition.  The 146th District Court is a court of general jurisdiction. Docket consists of one-half of all civil cases, 25% of all domestic relations cases, assistance with criminal cases, as needed, and the entire Texas Department of Protective and Regulatory Services, Child Protective Services docket. Presided over civil cases involving personal injury, legal and medical malpractice, commercial, banking, employment, consumer, real estate, contract, governmental, products liability, DTPA, all aspects of family law and criminal law.

## LEGAL EXPERIENCE

**Assistant United States Attorney**                              March, 1989 - May, 1989
U.S. Department of Justice, United States Attorney's Office, Gulf Coast Drug Task Force, Southern District of Texas.

**Private Practice of Law,** Killeen Texas                        May, 1975 - February, 1989
Engaged in private practice of law in Killeen, Texas; general civil practice, with emphasis in later years on real estate, construction, corporate, banking and general civil litigation.  Earlier years of practice included the above, as well as criminal law and domestic relations.

**Licensed to practice law in the State of Texas**                              May, 1975
Admitted to practice in Federal Court, Western District of Texas.

## EDUCATION

*Juris Doctorate Degree,*  Baylor University School of Law, Waco, Texas          May 1975
Dean's Honor List - Summer and Fall 1974

*Bachelor of Business Administration*, University of Texas, Austin, Texas     December 1972
Major: Finance
Dean's Honor List - Summer 1972

Killeen High School, Killeen, Texas                                              1969

## PROFESSIONAL AFFILIATIONS, HONORS AND SERVICES

- State Bar of Texas
- Judicial Section, State Bar of Texas
- Arbitrator – JWA Arbitrations (Judicial Workplace Arbitrations, Inc.)
- Alternative Dispute Resolution Section; Family Law Section; Litigation Section; Consumer and Commercial Law Section
- Local Administrative District Judge, 1995 – 2012 - Bell County District Courts
- Judge, Bell County Drug Court; 2009 to present
- President, Bell County Bar Association, 2009-2010; President–Elect: 2008-2009; Secretary-Treasurer: 2007-2008; Board of Directors: 2003-2007
- Bell County Public Sector Lawyer of the Year - 2012
- Bell County Public Sector Lawyer of the Year - 2007
- Director, Judicial Section, State Bar of Texas, 2008-2011
- Director, Texas Center for the Judiciary, Inc., 1994-1997
- Texas College of Judicial Studies Graduate – 2004
- Basic Mediation Certification:  University of Texas School of Law – Center for Public Policy Dispute Resolution-2012
- Advanced Family Mediation Training – Alternative Dispute Resolution, Worklife Institute-2012
- Drug Court Judicial Training, The National Drug Court Institute, National Judicial College, Reno, NV
- Bell-Lampasas Counties Community Justice Council – 1995 to 2012
- Bell County Juvenile Board – 1989 to 2012
- The College of the State Bar of Texas
- Pre-Trial Judge for 3rd, 6th and 7th Administrative Judicial Regions, 1999-2000, Benlate cases
- Texas Supreme Court Advisory Committee on Child Support and Visitation Guidelines (1992-1993)
- Bell-Lampasas-Mills Counties Bar Association (President, 1982; President-Elect, 1981; Secretary-Treasurer 1979-1980) Board of Directors 2004-2008;
- District 8-C Grievance Committee of the State Bar of Texas  (1982-1989)
- Texas Bar Foundation
- Commission Director, Greater Killeen Chamber of Commerce (1984-1987); Vice-President (1987)
- Selective Service Commission (1987-1989)

## SPEECHES AND ARTICLES

- An Evening with the Judges, 1999 – "What judges look for in Motions & Briefs"; "Common Mistakes of Lawyers"
- Fall Bench Bar Conference, 2002 – "Court's Charge Update"
- Fall Bench Bar Conference, 2007 – "Civil Legislation Update"
- Law Office 101, 2008 – "Practice in the District Courts"
- Spring Bench Bar – 2009; "DWOP's, Motions to Withdraw and Discovery Control Plans"

## PERSONAL INFORMATION

Born:     September 20, 1950, Killeen, Texas
Married:  July 16, 1971
Spouse:   Karen Boydstun Morris;
          University of Mary-Hardin Baylor graduate; teacher, Harker Heights High School
          Two children and four grandchildren
Hobbies:  Fly Fishing and Golf

# EXHIBIT G

WELCOME    APPOINTMENTS    LEO C. SALZMAN    DON WITTIG

CHARL E WILLETTE    FEE SCHEDULE    DIRECTIONS    CONTACT US



## Law Office of Leo C. Salzman

## Don Wittig



### *LEGAL EXPERIENCE*

- 37 years trial and appellate experience as advocate and judge including:
- 3 years as Justice, 14th Court of Appeals
- 11 years as Judge, 125th District Court
- 23 years as trial lawyer including 3 years in United States Marine Corps

### *LEGAL EDUCATION*

- United States Naval Academy, 1960, 1961
- B A , with Honors, St  Mary's University, 1963
- J D , The School of Law, St  Mary's University, 1965
- United States Naval Justice School, with Honors
- Post Graduate Studies:   Economics (33 hours); Theology (12 hours); Judicial Studies
  (15 hours); and Advanced studies in Mediation and Arbitration

### *PROFESSIONAL ACTIVITIES*

- A B A  Certified Mediator/Arbitrator, 2001 to present
- Senior Appellate Justice, over five years combined service on 14th, 13th, 12th, 10th,
  9th, 8th, and 3rd Courts of Appeals
- Senior State District Judge, eleven years service on 125th District Court
- Twenty two years trial practice
- First State District Judge in Texas to be Double Board Certified
- Former Deputy Chief Prosecutor, First Marine Division, RVN

### *HONORS*

- Joe C  Bettencourt Award, Best All Around Student
- Associate Editor, The Paduan
- Editor in-Chief, St  Mary's University School of Law, Barrister News
- Author of over 500 Texas Appellate Opinions

- Author and Speaker on Multiple CLE Presentations
- Author:   One Hundred and Two Ways to Survive Big City Life
- Pi Gamma Mu, National Honor Society in Government
- Omicron Dela Epsilon, National Honor Society in Economics
- Who's Who in American Law
- Navy Achievement Medal with Combat "V"

CONTENT COPYRIGHT 2015. LEO C. SALZMAN. ALL RIGHTS RESERVED.



# EXHIBIT H

**Find An Adjuster**

Enter ZIP Code                          **800.992.7771**

Home > Professional Profiles > Jim Beneke, SPPA



## Jim Beneke, SPPA
*President at Beneke/Adjusters International*

**Beneke/Adjusters International**
1717 West 6th Street #220
Austin, TX 78703-5083

| | |
|---|---|
| **Phone:** | 512.328.1851 |
| **Cell:** | 512.422.7787 |
| **Toll-Free:** | 800.578.1851 |
| **Fax:** | 512.276.6673 |
| **Email:** | Email Jim |

*Connect with Jim on LinkedIn*

• B.J. Journalism, University of Texas at Austin

## Professional Profile

Jim Beneke is a strong and effective advocate for commercial property owners in the aftermath of a devastating property loss. A third-generation public adjuster, he has a reputation for honesty and integrity in negotiating a fair and proper insurance settlement for his clients.

Jim's grandfather founded A.C. Beneke & Company in New York in 1927. With the 1965 launch of The Beneke Company in Dallas, Jim's dad R.G. Beneke introduced public adjusting to Texas and the Southwest. Twenty years later, The Beneke Company was an integral part in creating and organizing Adjusters International, a corporation of the nation's leading public adjusting firms that serve clients around the world. In 1990, Jim brought Beneke/Adjusters International to Austin where he still serves clients nationwide and keeps a close eye on the University of Texas Longhorns.

Jim's 36 years of experience, combined with this rich family tradition, shapes his knowledge and deep appreciation for the history and growth of the public adjusting profession. He has maintained long-term relationships with clients, insurance company representatives and their experts, and others he has worked with over the years. These relationships often benefit clients that are experiencing significant property loss for the first time.

But it's not all about what he has done in the past. Through continuing education and involvement with professional organizations and government and regulatory agencies, Jim is also well-versed on trends, laws, and other influences that shape today's public adjusting industry. In 2003, he led the Texas Association of Public Insurance Adjusters' (TAPIA) successful legislative effort resulting in Texas' first public adjuster licensing law. He worked closely with the National Association of Public Insurance Adjusters (NAPIA) and the National Association of Insurance Commissioners (NAIC) on the creation of a model licensing act for public adjusters. Completed in October of 2005, the model act is now the law in fifteen states and is the basis of legislation in the few remaining states that do not license public adjusters.

## Professional Distinctions

Jim is past president and lifetime board member of NAPIA, as well as a founding member and past president of the Texas Association of Public Insurance Adjusters (TAPIA). Jim was honored as NAPIA's Person of the Year in 2003, for his role in the passage of the public adjuster's licensing law in Texas.

In September 2012, the Texas Commissioner of Insurance appointed Jim to the newly created Adjuster Advisory Board in Texas. He is one of two public adjusters selected to serve. The nine-member board will review and report on issues affecting the function, operation, and administration of claims procedures across Texas.

23

## Public Adjuster Licensing

- Arizona
- California
- Colorado
- Florida
- Indiana
- Iowa
- Kansas
- Louisiana
- Mississippi
- Nebraska
- New York
- Ohio
- Oklahoma
- Texas

| ANGELA BROOKS-BROWN, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | BELL COUNTY, TEXAS |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | |
| | § | |
| Defendant. | § | 146TH JUDICIAL DISTRICT |

## DEFENDANT USAA TEXAS LLOYD'S COMPANY'S
## VERIFIED APPLICATION FOR TEMPORARY INJUNCTION AGAINST PLAINTIFF

Comes Now, Defendant USAA Texas Lloyd's Company ("USAA Texas Lloyd's"), and files this, its Verified Application for Temporary Injunction against Plaintiff Angela Brooks-Brown ("Brooks-Brown"), and respectfully shows the Court as follows:

### A. PARTIES

1. Plaintiff is Angela Brooks-Brown. Brooks-Brown is a resident of Bell County, Texas and a citizen of the State of Texas. Brooks-Brown has appeared in this matter through her counsel of record.

2. Defendant is USAA Texas Lloyd's Company. Defendant has appeared in this matter through its counsel of record.

### B. JURISDICTION & VENUE

3. Jurisdiction exists and venue is proper because:

   a. Brooks-Brown filed the underlying lawsuit in this Court;

b. No order of dismissal has been signed by this Court;

c. The Court's plenary power has not expired;

d. Prior to a final judgment, a trial court, in the exercise of its plenary power, can issue an anti-suit injunction;

e. The Court has dominant jurisdiction for the appointment of an umpire;

f. The property in question (located at 707 Aries Ave., Killeen, Texas 76542) is in Bell County, Texas (the "Property");

g. A substantial part of the events or omissions giving rise to this claim occurred in Bell County, Texas; and

h. The appraisal at issue is occurring in Bell County, Texas.

## C. FACTS

4. On or about September 11, 2014, Brooks-Brown filed the underlying insurance lawsuit seeking damages from USAA Texas Lloyd's.

5. Brooks-Brown's lawsuit generally alleges the following:

a. Brooks-Brown is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A (the "Policy");

b. Brooks-Brown owned the insured property that is specifically located at ███████ ████████████████ ;

c. On or about April 4, 2014, the Property sustained fire damage. Brooks-Brown filed a claim with USAA Texas Lloyd's related to this fire;

d. On or about May 12, 2014, the Property sustained windstorm and hail damage. Brooks-Brown filed a claim with USAA Texas Lloyd's related to this occurrence;

e. Brooks-Brown's property damage is covered by the Policy; and

f. USAA Texas Lloyd's has not properly calculated the amount owed Plaintiff under the Policy.

6. The Policy at issue has an appraisal clause, which provides, in part, as follows:

> **8. Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each
>
> party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> a. Pay its own appraiser; and
>
> b. Bear the other expense of the appraisal and umpire equally.
>
> Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

*See* Plaintiff's Insurance Policy, Ex. A.

7. On or about March 5, 2015, Brooks-Brown invoked her right to an appraisal pursuant to Section I "Conditions," Paragraph 8 of the Policy. *See* Ex. B.

8. Brooks-Brown then designated Darrell Quinney to serve as her appraiser on or about April 20, 2015. Mr. Quinney's company, Loss Solutions, provided the estimate which forms the basis of Brooks-Brown's alleged damages in this lawsuit and has been retained by Brooks-Brown as a testifying expert. As such, USAA Texas Lloyd's objected to Mr. Quinney serving as an appraiser. *See* Ex. C.

9. Nonetheless, in compliance with the Policy, USAA Texas Lloyd's designated Mark West as its appraiser. *See* Ex. D.

10. The appraisers met, inspected the property, and exchanged estimates, but have been

unable to agree upon a scope and pricing with respect to the conditions observed. Further, the appraisers exchanged names of potential umpires but have been unable to agree on an umpire to resolve their differing opinions regarding the scope and pricing for repairs to the property.

11. On or about June 9, 2015, pursuant to the Policy, USAA Texas Lloyd's filed a Motion for Appointment of Umpire for Insurance Appraisal Proceeding.

12. Brooks-Brown filed a Notice of Non-Suit without Prejudice in the above-referenced lawsuit on June 8, 2015.

13. Brooks-Brown then filed a new lawsuit in Jefferson County regarding the same parties and subject matter as this lawsuit. *See* Ex. E.

14. Jefferson County is not a proper venue under the Texas venue provisions or the Policy.

15. Upon information and belief, this Court has not signed a dismissal order.

16. Upon information and belief, this Court's plenary power has not expired.

17. USAA Texas Lloyd's attaches an affidavit as Exhibit F that proves the allegations in this application for injunctive relief and incorporates it by reference.

## D. APPLICATION FOR TEMPORARY INJUNCTION

18. USAA Texas Lloyd's application for a temporary injunction is authorized by Texas law.

19. USAA Texas Lloyd's asks the court to enjoin Brooks-Brown and Brooks-Brown's counsel from seeking the appointment of an umpire from any other court and from proceeding any further with an umpire appointed by another court.

20. The appraisal will set the amount of damages subject to the terms and conditions of the policy after this Court appoints an umpire.

21. If USAA Texas Lloyd's application is not granted, harm is imminent because USAA Texas Lloyd's will have to appear and respond in a mirror lawsuit and there is the risk of two umpires being appointed in two different courts (one of which is not a proper venue).

22. The harm that will result if the temporary injunction is not issued is irreparable.

23. Additionally, by filing her Jefferson County Lawsuit and seeking relief which is outside of the terms of the Policy, Brooks-Brown has breached the Policy.

24. This anti-suit injunction is appropriate for the following reasons:

   a. the Jefferson County court is a threat to this Court's jurisdiction and final judgments;

   b. public policy (and the Texas venue statutes) requires that umpires be appointed by judges sitting in the same county as the insured property;

   c. To prevent a multiplicity of court appointed umpires and court proceedings; and

   d. To protect USAA Texas Lloyd's from Brooks-Brown's vexatious and harassing litigation.

25. Additionally, this Court has dominant jurisdiction because appraisal was first invoked in this lawsuit in Bell County, Texas, and appraisal has been proceeding within the confines of this lawsuit.

26. USAA Texas Lloyd's has no adequate remedy at law.

27. USAA Texas Lloyd's is willing to post bond.

## E. REQUEST FOR TEMPORARY INJUNCTION

28.     USAA Texas Lloyd's asks this Court to set its application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against Brooks-Brown.

29.     USAA Texas Lloyd's has joined all indispensable parties under Texas Rule of Civil Procedure 39.

## F. PRAYER

30. For these reasons, USAA Texas Lloyd's asks that Brooks-Brown be cited to appear and answer and, on final trial, that USAA Texas Lloyd's be awarded a judgment against Brooks-Brown for a temporary injunction and all other relief to which USAA Texas Lloyd's is entitled.

Respectfully submitted,

 /s/ *Lisa A. Songy*
Lisa A. Songy
State Bar No. 00793122
LisaS@tbmmlaw.com
Donnie M. Apodaca, II
State Bar No. 24082632
DonnieA@tbmmlaw.com

TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas  75204
(214) 665-0100 Telephone
(214) 665-0199 Facsimile
**ATTORNEYS FOR DEFENDANT USAA TEXAS LLOYD'S COMPANY**

## VERIFICATION

STATE OF TEXAS   §
COUNTY OF BEXAR §

BEFORE ME, the undersigned authority, on this day personally appeared GENE SWANSON on behalf of USAA Texas Lloyd's, who, being by me first duly sworn, deposed and said that s/he has is authorized to verify the factual allegations in Paragraphs 4, 5 and 6 in the foregoing application for temporary injunction, and the s/he has read the factual allegations in the foregoing application for temporary injunction, and each and every fact and matter therein stated is within his/her personal knowledge  or the information has been provided by the company and is true and correct.

_____
GENE SWANSON

Subscribed and sworn to before me on ___June 26th___, 2015.

_____
Notary Public in and for
The State of Texas

AMANDA EDWARDS
Notary Public
STATE OF TEXAS
My Comm. Exp. October 26, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of has been served upon counsel of record via electronic service and facsimile on this 26th day of June, 2015.

***Attorneys for Plaintiff***
Danny Ray Scott
danny@scottlawyers.com
Virginia Izaguirre
virginia@scottlawyers.com
Sean M. Patterson
sean@scottlawyers.com
Scott Law Offices
350 Pine Street, Suite 300
Beaumont, Texas  77701
***Facsimile 409.833.5405***

/ s / ***Lisa A. Songy***
 Lisa A. Songy

# EXHIBIT A

STATE OF TEXAS

Before me, the undersigned notary public for the State of Texas, on this day personally appeared Mary Ann Rice, Administrative Support Manager and custodian of records of USAA Texas Lloyd's Company, and after being by me duly sworn and upon her oath says that an exact duplicate of the USAA Texas Lloyd's Company, 02423 40 74 90A, including any applicable endorsements and forms, issued to ANGELA BROOKS, effective on May 12, 2014, has been prepared under her direction and is attached hereto.

_____
Mary Ann Rice,
Administrative Support Manager

Subscribed and sworn to before me by said Mary Ann Rice, Administrative Support Manager, this ____ day of October, 2014 at San Antonio, Texas, to certify which witness my hand and seal at office.

DIANA G ARREDONDO
My Commission Expires
August 10, 2016

_____
Diana G Arredondo
Notary Public
State of Texas
My commission expires on August 10, 2016

0901119c9008fad1

USAA Confidential



# HOMEOWNERS POLICY PACKET

EFFECTIVE: 10-09-13 TO: 10-09-14


MISS ANGELA D BROOKS-BROWN

LLYD    02423 40 74    90A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

1) Go to usaa.com to view policy coverages and home features.

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls: Policy Service (800) 531-8111. Claims (800) 531-8222.
HOCS1                                                                    49709-0406

0901119c9008fad1

USAA Confidential

THIS PAGE INTENTIONALLY LEFT BLANK

USAA Confidential

0901119c9008fad1



# USAA TEXAS LLOYD'S COMPANY

**9800 Fredericksburg Road · San Antonio, Texas 78288**

AMENDED DECLARATIONS PAGE - EFFECTIVE 10/09/13

| Named Insured and Residence Premises | Policy Number |
|---|---|
| ANGELA BROOKS | LLYD 02423 40 74 90A |

Policy Period From: 10/09/13    To: 10/09/14
(12:01 A.M. standard time at location of the residence premises)

### SECTION I - COVERAGES AND AMOUNTS OF INSURANCE

| | |
|---|---|
| COVERAGE A - DWELLING PROTECTION | $184,000 |
| COVERAGE B - OTHER STRUCTURES PROTECTION | $46,000 |
| COVERAGE C - PERSONAL PROPERTY PROTECTION | $138,000 |
| COVERAGE D - LOSS OF USE PROTECTION (UP TO 12 MONTHS) | $36,800 |

### SECTION II - COVERAGES AND LIMITS OF LIABILITY

| | |
|---|---|
| Personal Liability – Each Occurrence | $300,000 |
| Medical Payments to Others | $5,000 |

### DEDUCTIBLES (Applies to SECTION I Coverages ONLY)

We cover only that part of the loss over the deductible stated.

| | | |
|---|---|---|
| WIND AND HAIL | $3,680 | (2%) |
| ALL OTHER PERILS | $1,840 | (1%) |

**POLICY PREMIUM for Section I and Section II Coverages Above**    $814.50

**CREDITS AND DISCOUNTS** (Included in policy premium above.)    $760.10 CR
Details on the following page. (If applicable)

### OTHER COVERAGES AND ENDORSEMENTS

Forms and Endorsements are printed on the following page.

### STATE SURCHARGES AND TAXES (Shown below if applicable)

SURCHARGES ARE PRINTED ON THE FOLLOWING PAGE.    $1.79

### TOTAL POLICY PREMIUM

Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes
$816.29

THIS IS NOT A BILL.

**FIRST MORTGAGEE:**
JPMORGAN CHASE BANK NA                    LOAN NR    1679555013
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 47020
ATLANTA, GA 30362-0020

In witness whereof, this policy is signed on 10/07/13

*Steven Alan Bennett*, Secretary        *Kevin Bergner*, President

**REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.**

HO-D1 (07-08)    ATTACH THIS DECLARATION TO PREVIOUS POLICY    87028-0708

0901119c9008fad1

USAA Confidential



USAA TEXAS LLOYD'S COMPANY
AMENDED DECLARATIONS PAGE – EFFECTIVE 10/09/13

| | **Policy Number** | **Policy Term:** | 10/09/13 | 10/09/14 |
|---|---|---|---|---|
| LLYD | 02423 40 74 90A | | **Inception** | **Expiration** |

POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

REMAIN IN EFFECT (Refer to prior Policy Packet(s) for documents not attached.):

| | | |
|---|---|---|
| QR3TXLLD | (07-08) | QUICK REFERENCE-SPECIAL FORM |
| HO-3RTX | (07-08) | HOMEOWNERS SPECIAL FORM |
| HO-ACPTX | (07-12) | AMENDMENT TO CONTRACT PROVISIONS |
| HO-SLS3TX | (07-12) | SPECIAL LOSS SETTLEMENT |
| HO-TX | (05-10) | TEXAS SPECIAL PROVISIONS |
| HO-125TX | (07-08) | HOME PROTECTOR |
| HO-208TX | (07-12) | WATER BACKUP OR SUMP PUMP OVERFLOW |
| HO-728TX | (07-12) | REPLACEMENT COST COVERAGE |

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:

| | |
|---|---|
| AUTO AND HOME COMBINATION DISCOUNT | $90.50 CR |
| CLAIMS FREE DISCOUNT | $90.50 CR |
| HOME AGE DISCOUNT | $552.04 CR |
| PROTECTIVE DEVICE CREDIT | $27.06 CR |

SPECIFICALLY LISTED BELOW ARE SURCHARGES.

TX VOLUNTEER FIRE FUND ASSESSMENT $1.79

REASON(S) FOR CHANGE:

MISCELLANEOUS POLICY CHANGES

HO-D2 (07-08) 10/07/13

07029-0708

USAA Confidential

0901119c9008fad1



USAA
9800 Fredericksburg Road
San Antonio, Texas 78288

# SPECIAL FORM - HOMEOWNERS POLICY.

## **READ YOUR POLICY CAREFULLY**

This policy is a legal contract between you, the policyholder, and us, the insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract. This contract consists of the Declarations page, the policy, and any applicable endorsements.

**Your policy provides the coverages and amounts of insurance shown in the Declarations with a premium.**

This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

**IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

## QUICK REFERENCE

| | Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **DEDUCTIBLE** | 3 |
| **SECTION I** | |
| **PROPERTY WE COVER** | 3 |
| Dwelling Protection | |
| Other Structures Protection | |
| Personal Property Protection | |
| Special Amounts | |
| Property We Do Not Cover | |
| Loss of Use Protection | |
| **ADDITIONAL COVERAGES** | 7 |
| Debris Removal | |
| Reasonable Repairs | |
| Trees, Shrubs, Plants | |
| Fire Department Charge | |
| Property Removed | |
| Credit Card and Identity Fraud | |
| Loss Assessment | |
| Collapse | |
| Lock Replacement | |
| Refrigerated Products | |
| Land | |
| Glass or Safety Glazing | |
| Landlord's Furnishings | |
| Building Ordinance or Law | |

| | Page |
|---|---|
| Temporary Living Expense | |
| Military Uniforms | |
| War | |
| Electronic Media | |
| **LOSSES WE COVER** | 13 |
| Dwelling and Other Structures | |
| Personal Property | |
| **LOSSES WE DO NOT COVER** | 15 |
| **CONDITIONS** | 18 |
| **SECTION II** | |
| **LIABILITY COVERAGES** | 24 |
| Personal Liability | |
| Medical Payments | |
| **EXCLUSIONS** | 25 |
| **ADDITIONAL COVERAGES** | 28 |
| Claims Expenses | |
| First Aid Expenses | |
| Damage to Property of Others | |
| Loss Assessment | |
| **CONDITIONS** | 30 |
| **SECTIONS I and II** | |
| **CONDITIONS** | 31 |

0901119c9008fad1

USAA Confidential

## AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface and quotation marks when used.

1. **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained partial loss, or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost.

2. **"Aircraft"** means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

   **"Bodily injury"** does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

4. **"Business"** means any full or part-time activity arising out of or related to any trade, profession or occupation of any **"insured"**.

5. **"Business day"** means a day other than Saturday, Sunday or holiday recognized by the State of Texas.

6. **"Collapse"** means:

   a. A sudden falling or caving in;

   b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered unless it is the direct result of **"collapse"**.

7. **"Damages"** means compensatory damages the **"insured"** is legally obligated to pay as a result of **"bodily injury"** or **"property damage"** covered by this insurance, but does not include punitive, exemplary or multiple damages.

8. **"Hovercraft"** means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

9. **"Insured"** means:

   a. The **"member"**;

   b. Spouse when a resident of the same household; and

   c. Residents of your household who are:

      (1) Your relatives; or

0901119c9008fad1

USAA Confidential

(2) Other person under the age of 21 and in the care of any prson named above.

Under SECTION II, **"insured"** also means:

d. With respect to animals, **"watercraft"** or **"personal watercraft"** to which this policy applies, any person or organization legally responsible for these animals, **"watercraft"** or **"personal watercraft"** which are owned by you or any person included in 9.a., 9.b. or 9.c. above. A person or organization using or having custody of these animals, **"watercraft"** or **"personal watercraft"** without consent of the owner is not an **"insured"**.

e. With respect to any vehicle or conveyance to which this policy applies:

(1) **"Residence employees"** while engaged in your employ or that of any person included in 9.a., 9.b. or 9.c. above; or

(2) Other persons using the vehicle on an "insured location" with your consent.

10. **"Insured location"** means:

a. The **"residence premises"**;

b. Any premises used by you in connection within 10.a. above;

c. Any part of a premises:

(1) Not owned by any **"insured"**; and

(2) Where any **"insured"** is temporarily residing;

d. Vacant land, other than farm land owned by or rented to any **"insured"**;

e. Land owned by or rented to any **"insured"** on which a one or two family dwelling is being built as a residence for any **"insured"**;

f. Individual or family cemetery plots or burial vaults of any **"insured"**; or

g. Any part of a premises occasionally rented to an **"insured"** for other than **"business"** use.

11. **"Member"** means the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership number is shown in the Declarations of this policy.

12. **"Motor vehicle(s)"** means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.

13. **"Named peril(s)"** means one or more of the perils listed under LOSSES WE COVER – PERSONAL PROPERTY PROTECTION.

14. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. **"Bodily injury"**; or

b. **"Property damage"**.

15. **"Personal watercraft"** means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

16. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. **"Professional services"** means any type of service to the public that requires members rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the service and includes, but is not limited to services rendered by dentists, naturopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists, podiatrists, optometrists, nurses, nurse-midwives, veterinarians, pharmacists, architects,

USAA Confidential

landscape architects, engineers, accountants, land surveyors, psychologists, attorneys-at-law, therapists, counselors and social workers.

18. **"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

19. **"Residence employee"** means an employee of any **"insured"** whose primary duties are related to the maintenance or use of the **"residence premises"**, including household or domestic service.

20. **"Residence premises"** means:

a. The one family dwelling, other structures, and grounds; or

b. That part of any other building;

Where you reside and which is shown as the **"residence premises"** in the Declarations.

**"Residence premises"** also means a two family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

21. **"Sudden and accidental"** means an abrupt, fortuitous event which is unintended from the perspective of a reasonable person.

22. **"War"** means war whether declared or undeclared; civil war; insurrection; rebellion; revolution; any warlike act by friendly or enemy forces, destruction or seizure for a military purpose.

23. **"Watercraft"** means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the applicable amount of insurance that applies, we will pay only that part of the total of all loss payable under SECTION I – PROPERTY WE COVER that exceeds the deductible amount shown in the Declarations.

## SECTION I PROPERTY WE COVER

**COVERAGE A - Dwelling Protection**

We cover:

1. The dwelling on the **"residence premises"** shown in the Declarations, including structures attached to the dwelling;

2. Materials and supplies located on or next to the **"residence premises"** used to construct, alter or repair the dwelling or other structures on the **"residence premises"**; and

3. Custom or permanently installed window treatments and permanently installed carpeting.

Except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

**COVERAGE B - Other Structures Protection**

We cover:

1. Other structures on the **"residence premises"**:

a. We cover other structures on the **"residence premises"**:

(1) Set apart from the dwelling by clear space; and

(2) Sidewalks, driveways and fences; and

HO-3RTX (07-08)

USAA Confidential

(3) Structures connected to the dwelling by only a fence, utility line, or similar connection.

b. We do not cover:

(1) Land, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Land, including land on which the other structures are located;

(2) Structures used in whole or part for "**business**" unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

(a) Duties of any "**insured's**" employment by another; and

(b) Performed solely by an "**insured**".

2. Other Structures away from the "**residence premises**".

a. We cover other structures owned by you and located away from the "**residence premises**", if used by you in connection with the "**residence premises**".

b. We do not cover:

(1) Other structures located away from the "**residence premises**":

(a) Being used as a dwelling; or

(b) Capable of being used as a dwelling; or

(c) Used in whole or part for "**business**"; or

(2) Land, including land on which the other structure is located.

The amount of insurance for all structures will not be more than the amount of insurance shown in the Declarations for Other Structures Protection.

**COVERAGE C - Personal Property Protection**

We cover:

Tangible personal property owned or used by any "**insured**" while it is anywhere in the world. After a loss and at your request, we will cover the loss of personal property owned by:

1. Others while the property is on the part of the "**residence premises**" occupied by any "**insured**";

2. A guest or a "**residence employee**", while the property is in any residence occupied by any "**insured**".

The amount of insurance for personal property usually located at any "**insured's**" residence, other than the "**residence premises**" is limited to 10% of the amount of insurance for Personal Property Protection, or $1,000, whichever is greater.

Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Amounts of Insurance**. The special amounts set out below do not increase the Personal Property Protection amount of insurance. The special amount for each numbered category below is the total amount for each loss for all property in that category.

1. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards and gift certificates including electronic gift certificates.

2. $1,000 for securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

This limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

0901119c9008fad1

USAA Confidential

3. $1,500 for **"watercraft"** or **"personal watercraft"**, including their trailers, furnishings, equipment and outboard motors.

4. $1,500 for trailers not used with **"watercraft"** or **"personal watercraft"**.

5. $10,000 for loss by theft of jewelry, watches, precious and semi-precious stones, fur garments, including any garment containing fur, which represents its principal value.

6. $2,500 on stamps, trading cards and comic books, including any of these that are part of a collection.

7. $10,000 for loss by theft of firearms.

8. $10,000 for loss by theft of silverware, silver-platedware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This category includes but is not limited to flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. (a) $10,000 for tangible **"business"** property at your residence.

   (b) $1,000 for tangible **"business"** property away from your residence.

10. $3,000 on motorized golf carts and their equipment and accessories. But if, at the time of loss, there is any other insurance covering physical loss to golf carts, then this policy does not apply.

11. $3,000 for motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads. However, this limit does not apply to vehicles not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence, or

   b. Designed for assisting the handicapped.

**Property We Do Not Cover.**

1. Personal property separately described and specifically insured in this or other insurance.

2. Animals, birds or fish.

3. **"Motor vehicle(s)"**. This includes but is not limited to:

   a. Equipment, accessories, and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wires, discs or other media, for use with any such device or instrument, while in or upon the **"motor vehicle"**.

   We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence; or

   b. Designed for assisting the handicapped.

   We also cover:

   a. Motorized golf carts and their equipment and accessories; and

   b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hours and for use off public roads

   subject to the provisions under Special Amounts of Insurance.

4. **"Aircraft"** and parts.

5. **"Hovercraft"** and parts.

6. Personal property of roomers, roommates, boarders, or other tenants. This does not apply to property of roomers, roommates, boarders or tenants who qualify as **"insureds"**.

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

7. Personal property in an apartment regularly rented or held for rental to others by any "insured", except as provided in ADDITIONAL COVERAGES, Landlord's Furnishings.

8. Personal property rented or held for rental to others off the "residence premises".

9. "Business" data, records, recordings, images and photographs including such data stored in:

    a. Books of account, drawings or other paper records; or,

    b. Electronic storage media.

    However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

10. Personal data, records, recordings, images, and photographs, regardless of storage media. This includes songs, movies and other audio or video media which you purchase and download onto a computer or portable electronic media player, other than as provided in ADDITIONAL COVERAGES, Electronic Media. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

11. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage.

## COVERAGE D – Loss Of Use Protection

The amount of insurance for Loss of Use shown on the Declarations is the total limit for the coverages that follow.

1. **Additional Living Expense.** If a loss covered under Section - I - LOSSES WE COVER makes that part of the "residence premises" where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

   However, if a loss covered under Section I - LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

2. **Fair Rental Value.** If a loss covered under Section I - LOSSES WE COVER makes that part of the "residence premises" rented to others or held for rental by you uninhabitable, we cover the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

3. **Prohibited Use.** If a loss covered under Section I - LOSSES WE COVER results in an order from a civil authority prohibiting you from use of the "residence premises" as a result of direct damage to neighboring premises by a loss covered under Section I - LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks. A neighboring premise is defined as a premises that is adjacent to the "residence premises".

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

0901119c9008fad1
USAA Confidential

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to the coverage afforded under 1., 2., and 3. above.

## ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if loss to the damaged property is covered under SECTION I - LOSSES WE COVER; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the amount of insurance that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the amount of insurance for the damaged property, an additional 5% of that amount of insurance will be available to cover debris removal expense.

   b. We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the **"residence premises"** of:

      (1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

      (2) A neighbor's tree(s) felled by a loss under **"named peril(s)"**.

   provided the tree(s)

      (3) Damage(s) a covered structure; or

      (4) Does not damage a covered structure, but:

   (a) Blocks a driveway on the **"residence premises"** which prevents a **"motor vehicle"** that is registered for use on public roads or property, from entering or leaving the **"residence premises"**; or

   (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

   The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

   This coverage reduces the amount of insurance that applies to the covered property.

   The policy deductible applies.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable loss under Section I - LOSSES WE COVER, we will pay the reasonable expense incurred by you, for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable loss under SECTION I - LOSSES WE COVER. This coverage reduces the amount of insurance that applies to the covered property and does not relieve you of your duties in case of a loss to covered property, as set forth in SECTION I - CONDITIONS 3.d.

   The policy deductible applies.

0901119c9008fad1

USAA Confidential

3. **Trees, Shrubs and Other Plants**.

We cover trees, shrubs, plants, lawns, or landscaping on the **"residence premises"**; for loss caused by the following Losses We Cover: Fire or Lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **"residence premises"**, Vandalism or malicious mischief or Theft.

We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **"business"** purposes.

This coverage is additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

4. **Fire Department Service Charge**. We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under SECTION I – LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

5. **Property Removed**. We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under SECTION I – LOSSES WE COVER and for no more than 30 days after the property has been removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

This coverage reduces the amount of insurance that applies to the property being removed.

The policy deductible applies.

6. **Credit Card Coverage and Identity Fraud Expense Coverage**.

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from **Credit Card Coverage** and **Identity Fraud Expense Coverage**.

For the purposes of **Credit Card Coverage** and **Identity Fraud Expense Coverage**, a series of acts committed by any one person in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

a. **Credit Card Coverage** also includes, fund transfer cards, forgery and counterfeit money. Under **Credit Card Coverage**, we pay for all loss and defense costs resulting from:

(1) The legal obligation of any **"insured"** to pay because of the theft or unauthorized use of credit cards issued to or registered in any **"insured's"** name;

(2) Loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any **"insured's"** name;

(3) Loss to any **"insured"** caused by forgery or alteration of any **"insured's"** check or negotiable instrument written on an **"insured's"** bank account. This does not include loss by the acceptance of a forged, altered or counterfeit check, or other negotiable instrument, by an **"insured"**.

(4) Loss to any **"insured"** through acceptance in good faith of counterfeit United States or Canadian paper currency.

For losses covered by this additional insurance we will provide defense as follows:

0901119c9008fad1                    USAA Confidential

(1) We may investigate and settle any claim or suit as we deem to be appropriate. Any duty to defend a claim or suit ends when the amount we pay or tender for the loss equals the applicable amount of insurance.

(2) If a suit is brought against any **"insured"** as a result of theft or unauthorized use of a credit card or fund transfer card, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense any **"insured"** against any suit for the enforcement of payment under the forgery coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to **Credit Card Coverage.**

b. Under **Identity Fraud Expense Coverage**, we pay for **"expenses"** and defense costs incurred by any **"insured"** as the direct result of **"identity fraud"**.

With respect to the provisions of this coverage only, the following definitions are added:

**"Identity Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **"insured"** with the intent to commit, or aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**"Expenses"** means:

(1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchants, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

(4) Loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information resulting from **"identity fraud"**;

(5) Reasonable attorney fees incurred, with our prior consent, for:

(a) Defense of lawsuits brought against the **"insured"** by merchants or their collection agencies; and

(b) The removal of any criminal or civil judgments wrongly entered against an **"insured"**.

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual **"identity fraud"**.

(7) Research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies resulting from **"identity fraud"**.

This coverage is additional insurance and does not reduce the amount of insurance.

A $100 deductible applies to **Identity Fraud Expense Coverage.**

The following exclusions apply to **Credit Card Coverage** and **Identity Fraud Expense Coverage:**

(1) We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household or any **"insured"**;

0901119c9008fad1

USAA Confidential

(b) By a person who has been entrusted with the card(s) or device(s);

(c) If any "insured" has not complied with all terms and conditions under which the cards or devices are issued.

(2) We do not cover loss arising out of "business" pursuits, dishonesty, fraud, or criminal activity of any "insured".

7. **Loss Assessment**. We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property, owned by all members collectively, caused by a loss under Section I - LOSSES WE COVER for **DWELLING PROTECTION COVERAGE** AND **OTHER STRUCTURES PROTECTION COVERAGE**, subject to all provisions of the policy.

This coverage does not apply to assessments made as a result of damage caused by:

a. Earthquake; or

b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

The limit of $10,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

This coverage is not limited by the expiration of this policy.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

8. **"Collapse"**. For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving **"collapse"** of a building or any part of a building only when the **"collapse"** is caused by one or more of the following:

a. **"Named peril(s)"** apply to covered buildings and personal property for loss insured by this additional coverage.

b. Decay that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

c. Insect or vermin damage that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the **"collapse"** occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the **"collapse"** of a building.

This coverage reduces the amount of insurance that applies to the damaged covered property.

The policy deductible applies.

9. **Lock Replacement**. When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

0901119c9008fad1                    USAA Confidential

a. Change the combination in the lock hardware of the doors, or

b. Change the lock hardware of the doors.

The most we will pay for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products.** We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on your **"residence premises"**, as a consequence of power failure or mechanical breakdown. The $500 limit is the most we will pay in any one loss regardless of the number of freezers or refrigerators.

The Power Failure exclusion under Section I - LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION does not apply to Refrigerated Products.

This coverage does not increase the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

11. **Land.** If a loss covered under Section I - LOSSES WE COVER damages a building on the **"residence premises"** insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

This coverage is an additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

12. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material caused by a loss under Section I - LOSSES WE COVER, which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building storm door or storm window.

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

This coverage reduces the amount of insurance that applies to the damaged property.

The policy deductible applies.

13. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, your carpeting and other household furnishings located in an apartment on the **"residence premises"** regularly rented or held for rental to others by any **"insured"**, for loss caused by **"named peril(s)"**, other than theft.

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage reduces the Personal Property Protection amount of insurance.

The policy deductible applies.

14. **Building Ordinance or Law.** For loss caused by a loss under Section I - LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

The limit for this coverage will not be more than 5% of the Coverage A - Dwelling Protection amount of insurance.

HO-3RTX (07-08)                                            Page 11 of 34

0901119c9008fad1                    USAA Confidential

If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

The policy deductible applies.

15. **Temporary Living Expenses**. We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the "**residence premises**" is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the "**residence premises**" because an earthquake, volcanic eruption or landslide has occurred.

This coverage is additional insurance and does not reduce the Loss Of Use Protection amount of insurance.

No deductible applies to this coverage.

16. **Military Uniforms and Equipment**. We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss caused by "**named peril(s)**" while you are on active or active reserve duty.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

17. **War**. To the extent that coverage for "**war**" is provided here, item 1.f. under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY**

**PROTECTION** and the "**war**" exclusion in any endorsement attached to this policy do not apply.

We will pay up to $10,000 for:

a. Direct loss or damage to your personal property caused by "**war**"; or

b. Abandonment as a consequence of "**war**" subject to these conditions.

subject to the following conditions:

This coverage applies only:

a. To any "**insured**" who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

b. To loss that occurs anywhere outside the Continental United States, Alaska and Hawaii.

In addition to compliance with the other provisions of **Your Duties After Loss**, you must:

a. Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

b. Send us, within 90 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

The **Loss Settlement** clause in this policy is changed for loss by "**war**" only to read:

"**War**" loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

0901119c9008fad1                    USAA Confidential

Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

We will adjust all losses with you. We will pay you unless some other person is named in this policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

18. **Electronic Media**, meaning songs, movies and other audio or video media, which you purchased and downloaded onto a computer or portable electronic media player. We will pay up to $250 for a loss covered under **"named peril(s)"**, provided that you maintain records to document the actual purchase of this media. This coverage does not include personal data or records.

This coverage is additional insurance and does not reduce the Personal Property Protection amount of insurance.

The policy deductible applies.

# SECTION I - LOSSES WE COVER

## COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE B - OTHER STRUCTURES PROTECTION COVERAGE

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER - Coverages A and B unless excluded in Section I - LOSSES WE DO NOT COVER.

COVERAGE C - PERSONAL PROPERTY PROTECTION

We insure against **"sudden and accidental"**, direct physical loss to tangible property described in PROPERTY WE COVER - Coverage C caused by a peril listed below unless the loss is excluded in **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.**

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to the **"watercraft"**, **"personal watercraft"**, and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning damage caused by or resulting from an impact with a **"motor vehicle"**. This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7. **Smoke**, meaning **"sudden and accidental"** damage from smoke.

HO-3RTX (07-08)

USAA Confidential

This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief**.

9. **Theft**, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

   a. Committed by any "**insured**" or any other person regularly residing on any part of the "**insured location**" for a period in excess of thirty consecutive days, if other permanent residency is established or claimed elsewhere;

   b. In or to a dwelling under construction, or materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. From that part of a "**residence premises**" rented by any "**insured**" to a person who does not qualify as an "**insured**".

This peril does not include loss caused by theft that occurs away from the "**residence premises**" of:

   a. Property while at any other residence owned by, rented to, or occupied by any "**insured**" unless the "**insured**" has stayed at the temporary residence at any time during the 60 days immediately before the loss;

   b. "**Watercraft**", or "**personal watercraft**" including their furnishings, equipment and outboard motors; or

   c. Trailers and campers.

10. **Falling objects**.

This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet**, which causes damage to property contained in a building.

12. **Discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. A plumbing system does not include a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump.

This peril does not include loss:

   a. To the system or appliance from which the water or steam escaped; or

   b. Caused by or resulting from freezing except as provided in the peril of Freezing below; or

   c. On the "**residence premises**" caused by discharge or overflow which occurs off the "residence premises".

13. **Tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "**residence premises**" if you have failed to:

   a. Maintain heat in the building; or

   b. Shut off the water supply and drain the system and appliances of water.

15. **Damage from artificially generated electrical current**.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

# SECTION I - LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

1.  Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

    (i) The cause of the excluded event or damage that; or

    (ii) Other causes of the loss that; or

    (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

    (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

    produce the loss.

    a.  Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have:

        (1) Maintained heat in the building; or

        (2) Shut off the water supply and drained the system and appliances of water;

    b.  Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

        (1) Swimming pool, hot tub, or spa, including their filtration and circulation system; or

        (2) Fence, pavement, patio; or

        (3) Foundation, retaining wall or bulkhead; or

        (4) Pier, wharf or dock.

    c.  Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

    d.  Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

    e.  Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

    f.  Wear and tear, marring, deterioration;

    g.  Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

    h.  Smog, rust, electrolysis or other corrosion;

    i.  Smoke from agricultural smudging or industrial operations;

    j.  Discharge, dispersal, seepage, migration, release or escape of **"pollutants"** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by **"named peril(s)"** of this policy.

    k.  Birds, rodents, insects;

0901119c9008fad1

USAA Confidential

l. Animals owned or kept by any "**insured**".

m. Vermin meaning animals, other than (m.) above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

n. Nesting, infestation, discharge or release of waste products or secretions, by any birds, rodents, insects, vermin, or animals owned or kept by an "**insured**".

o. Pressure from, or presence or intrusion of, tree, shrub or plant roots.

2. If items 1.f. through 1.o. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

3. If any item in 1. above directly causes a "**named peril(s)**" to occur, the resulting damage produced by the "**named peril(s)**" is covered unless otherwise excluded or excepted elsewhere in this policy.

## LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:

   (i) The cause of the excluded event or damage that; or

   (ii) Other causes of the loss that; or

   (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

   (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

   produce the loss.

   a. **Ordinance or Law**, meaning the increased cost of demolition repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

   b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

      (1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

      (2) Landslide; mudslide or mudflow;

      (3) Subsidence, sinkhole, erosion or movement resulting from improper compaction, site selection or any other external forces;

      (4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;

   unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of building, storm door or storm window results and then we will pay only for the resulting loss.

   c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

      (1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

HO-3RTX (07-08)

USAA Confidential

(2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device; or

(3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

(4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure;

unless direct loss by fire, explosion or theft results from water damage and then we will pay only for the resulting loss.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **"residence premises"** except as provided in ADDITIONAL COVERAGES, Refrigerated Products.

If damage caused by a loss insured under Section I - LOSSES WE COVER results on the **"residence premises"**, we will pay only for that damage.

e. **Neglect,** by or failure of any **"insured"** to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f. **"War"** and any consequence of **"war"**, except as provided in ADDITIONAL COVERAGES, War. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** meaning

(1) Any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

(2) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Section I - LOSSES WE COVER.

(3) This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss,** meaning loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

This exclusion does not apply to an **"insured"** who has not cooperated in or contributed to the creation of an intentional loss, if that **"insured"** has:

(1) Filed a police report, and

(2) Cooperated with law enforcement investigation or prosecution

relating to any other **"insured"**, causing the intentional loss.:

Payment to an **"insured"**, under this exception to exclusion **1.h.** will be limited to the insurable interest of the **"insured"** in such property, less any payments made to a mortgagee or other party with a legal secured interest in the property and subject to the other terms and conditions of this policy.

As a condition of payment for intentional loss caused by another **"insured"** under this exception to exclusion **1.h.,** we may require an assignment of rights of recovery to the extent payment is made by us.

0901119c9008fad1

USAA Confidential

i. **Microbial Organisms**, including but not limited to mold, mold spores, fungus, bacterium or parasitic microoganisms.

j. **"Collapse"**, other than as provided in ADDITIONAL COVERAGES, **"Collapse"**.

k. **Diminution in value**, meaning any reduction in value that would remain after damaged property is repaired or replaced.

l. **Wet rot, dry rot, or deterioration**.

m. **Settling, cracking, shrinking, bulging** or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

   a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail, or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

   b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

   c. **Faulty, negligent, inadequate or defective**;

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or maintenance.

   This limitation applies to loss or damage to any property on or off the **"residence premises"**.

## SECTION I - CONDITIONS

1. **Insurable Interest and Amount of Insurance**.

   Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

   b. For more than the applicable amount of insurance

   whichever is less.

   Each time there is a loss to any building insured under Coverage A - Dwelling Protection or Coverage B - Other Structures Protection, the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to that amount of insurance shown on the Declarations page.

   A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This provision shall not apply to personal property.

0901119c9008fad1                    USAA Confidential

2. **Residential Community Property Clause**.

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

3. **Your Duties After Loss**. In case of a loss to which this insurance may apply you must see that the following are done:

   a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

   b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

   c. Notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage;

   d. (1) Protect the property from further damage;

      (2) Make reasonable and necessary repairs to protect the property; and

      (3) Keep an accurate record of repair expenses;

   e. Cooperate with us in the investigation of a claim;

   f. At our request prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

   g. As often as we reasonably require:

      (1) Show the damaged property;

      (2) Provide us with records and documents we request and permit us to make copies; and

      (3) Submit to and sign, while not in the presence of any other **"insured"**:

         (a) Statements; and

         (b) Examinations under oath; and

      (4) Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so.

   h. Send to us, within 91 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

      (1) The time and cause of loss;

      (2) The interest of the **"insured"** and all others in the property involved and all liens on the property;

      (3) Other insurance which may cover the loss;

      (4) Changes in title or occupancy of the property during the term of the policy;

      (5) Specifications of damaged buildings and detailed repair estimate;

      (6) The inventory of claimed personal property described in 2.f. above;

      (7) Receipts for Additional Living Expenses and Temporary Living Expenses incurred and records that support the Fair Rental Value loss; and

      (8) Evidence or affidavit stating the amount and cause of loss that supports a claim under ADDITIONAL COVERAGES, Credit Card Coverage, and receipts, bills or other records that support your claim for expenses under Identity Fraud Expense Coverage.

0901119c9008fad1          USAA Confidential

4. **Our Duties After Loss:**

   a.  Within 15 days after we receive your written notice of claim, we must:

      (1) Acknowledge receipt of the claim. If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment.

      (2) Begin any investigation of the claim.

      (3) Specify the information you must provide in accordance with **Your Duties After Loss** (item 3. above).

         We may request more information, if during the investigation of the claim such additional information is necessary.

   b.  After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

      (1) Within 15 "**business days**"; or

      (2) Within 30 days if we have reason to believe the loss resulted from arson.

   c.  If we do not approve payment of your claim or require more time for processing your claim, we must:

      (1) Give the reasons for denying your claim, or

      (2) Give the reasons we require more time to process your claim. But we must either approve or deny your claim within 45 days after requesting more time.

5. **Loss Settlement.** We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage. Subject to the amount of insurance covered losses are settled as follows:

   a.  For the following property:

      (1) Personal property; and

      (2) Awnings, outdoor antennas, satellite dishes, and outdoor equipment, whether or not attached to the buildings; and

      (3) Structures that are not buildings; and

      (4) All covered structures whether or not they are buildings, if located away from the "**residence premises**".

     We will pay the lesser of:

      (1) The "**actual cash value**"; or

      (2) Our cost to replace the property with property of like kind, quality, age and condition; or

      (3) Our cost to repair or our cost to restore the property to the condition it was in just before the loss.

   b.  All items under Dwelling Protection and buildings on the "**residence premises**" under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

      (1) When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

      (2) When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the "**actual cash value**", not to exceed our cost to repair or our cost to replace the damaged part of the property.

0901119c9008fad1               USAA Confidential

(a) To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

(b) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property whichever is less.

6. **Loss or Damage to a Pair or Set** In case of loss or damage to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between **"actual cash value"** of the property before and after the loss.

7. **Matching of Undamaged Property**. In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

8. **Appraisal**. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expense of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

0901119c9008fad1                    USAA Confidential

9. **Other Insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

If a loss covered by this policy, other than a loss covered by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage or golf cart coverage, is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance.

This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

10. **Suit Against Us.** No action can be brought against us unless you have:

    a.  Given us notice of the loss;

    b.  Complied with all other policy provisions; and

    c.  Started action

    within two years and one day after the cause of action accrues.

11. **Our Option.** If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

If we notify you that we will pay your claim, we must pay with 5 **"business days"** after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 **"business days"** after the date you perform the act.

13. **Abandonment.** You may not abandon property to us for any reason.

14. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a.  We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the Declarations page as interests appear.

    b.  The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

    c.  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

        (1) At our request pays any premiums due under this policy, if you have failed to do so.

        (2) Submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

        (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

        All of the terms of this policy will then apply directly to the mortgagee.

        Failure of the mortgagee to comply with c. (1), c.(2) or c.(3) above shall void this policy as to the interest of the mortgagee.

0901119c9008fad1

USAA Confidential

d. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with terms of this policy.

  (1) The mortgagee's rights under the mortgagee will be transferred to us to the extent of the amount we pay.

  (2) The mortgagee's rights to recover the full amount of the mortgagee's claim will not be impaired.

At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

e. If this policy is canceled, we will give the mortgagee specifically named on the Declarations page written notice of cancellation.

If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice.

The date of cancellation cannot be before the 10th day after the date we mail the notice.

We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

f. If the property described under Coverage A - Dwelling is foreclosed under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so

credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

g. If we elect not to renew this policy, the mortgagee specifically named on the Declarations page will be given 30 days written notice of the nonrenewal.

15. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

16. **Salvage and Recovered Property.**

a. We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement Condition. At our option, property that we have paid for or replaced becomes our property.

b. If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

17. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements which, if known by us, would have caused us not to:

  (1) Issue the policy;

  (2) Issue the policy in as large an amount;

  (3) Provide coverage for the hazard resulting in the loss; or

USAA Confidential

(4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim, we may deny coverage or declare the entire policy void as to the interest of all "insureds" and refund the unearned premium as of the date of the conduct described in a., b., or c. above. Any unearned premium refund will be offset by any amounts paid to any "insured" under the policy after the date of the conduct described in a., b., or c. above.

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

18. **Duties to Determine and Maintain Policy Limits.** It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

19. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

20. **Catastrophe Claims.** If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the **Your Duties After Loss, Our Duties After Loss** and **Loss Payment** provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a. Is declared a disaster under the Texas Disaster Act of 1975; or

b. Is determined to be a catastrophe by the Texas Department of Insurance.

21. **Adjustment to Building Cost.** The amount of insurance for Section I, Dwelling Protection, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

Section I, Other Structures Protection, Personal Property and Loss of Use, will also be adjusted. The rules then in use by us will determine the new amounts for these coverages.

These amounts will not be reduced without your consent.

You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

# SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against any "insured" for "damages" because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the "damages" for which the "insured" is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for "damages" resulting from the "occurrence" equals our limit of liability. This coverage does not provide defense to any "insured" for criminal prosecution or proceedings.

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

**COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral expenses. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1. To a person on the **"insured location"** with the permission of any **"insured"**; or

2. To a person off the **"insured location"**, if the **"bodily injury"**:

   a. Arises out of a condition on the **"insured location"** or the ways immediately adjoining;

   b. Is caused by the activities of any **"insured"**;

   c. Is caused by a **"residence employee"** in the course of the **"residence employee's"** employment by any **"insured"**; or

   d. Is caused by an animal owned by or in the care of any **insured**.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

   a. Which is reasonably expected or intended by any **"insured"** even if the resulting **"bodily injury"** or **"property damage"**:

      (1) Is of a different kind, quality or degree than initially expected or intended; or

      (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this exclusion does not apply to an **"insured"** who did not cooperate in or contribute to the creation of the loss if that **"insured"** has:

   (1) Filed a police report; and

   (2) Cooperated with law enforcement investigation or prosecution relating to any other **"insured"** causing the intentional loss.

   This exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

   b. (1) Arising out of or in connection with a **"business"** engaged in by any **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

      (2) Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"**.

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

         (c) In part, as an office, school, studio or private garage.

   c. Arising out of the rendering or failure to render **"professional services"**;

USAA Confidential

d. Arising out of a premises:

(1) Owned by any **"insured"**; or

(2) Rented to any **"insured"**; or

(3) Rented to others by any **"insured"**;

that is not an **"insured location"**;

e. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**; or

(2) The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"motor vehicle"** excluded in paragraph (1) or (2) above.

This exclusion does not apply to the permissive use, loading or unloading of:

(1) A trailer not towed by or carried on a **"motor vehicle"**;

(2) A **"motor vehicle"** designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an **"insured"**; or

(b) Owned by any **"insured"** provided the **"occurrence"** takes place on any **"insured location"**; or

(c) Owned by any **"insured"** and designed or modified to operate at speeds not to exceed 15 miles per hour.

(3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **"occurrence"**, is within the legal boundaries of:

(a) A golfing facility and is parked or stored there, or being used by any **"insured"** to:

(i) Play the game of golf or for other recreational or leisure activity allowed by the facility; or

(ii) Travel to and from an area where **"motor vehicles"** or golf carts are parked or stored; or

(iii) Cross public roads at designated points to access other parts of the golfing facility.

(b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an **"insured's"** residence.

(4) A **"motor vehicle"** not subject to motor vehicle registration which is:

(a) Used to service any **"insured's"** residence; or

(b) Designed for assisting the handicapped; or

(c) In dead storage on an **"insured location"**.

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any **"insured"** to any person of; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

a **"watercraft"** or **"personal watercraft"**.

This exclusion does not apply to any **"watercraft"** owned or borrowed by, or rented to any **"insured"**:

0901119c9008fad1　　　　USAA Confidential

(1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower; or

(2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any **"personal watercraft"** or **"watercraft"** that is being stored.

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of: or

(2) The entrustment by any **"insured"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

an **"aircraft"** or **"hovercraft"**.

h. Caused directly or indirectly by **"war"** including any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. Arising out of the transmission of a communicable disease by any **"insured"** through sexual contact.

j. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k. Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

l. Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

m. Arising out of any actual, alleged or threatened:

(1) Sexual misconduct; or

(2) Sexual harassment; or

(3) Sexual molestation.

n. Arising out of any actual, alleged or threatened physical or mental abuse. For purposes of this policy abuse means an act that is committed with the intent to cause harm.

Exclusions d., e., f., and g. do not apply to **"bodily injury"** to a **"residence employee"** arising out of and in the course of the **"residence employee's"** employment by any **"insured"**.

2. **Coverage E – Personal Liability** does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II – ADDITIONAL COVERAGES, Loss Assessment.

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of any **"insured location"**; or

(b) Where the liability of others is assumed by any **"insured"** prior to an **"occurrence"**.

unless excluded in (1) above or elsewhere in this policy;

b. **"Property damage"** to property owned by the **"insured"**.

0901119c9008fad1                    USAA Confidential

c. "**Property damage**" to property rented to, occupied or used by or in the care of any "**insured**". This exclusion does not apply to "**property damage**" caused by fire, smoke or explosion.

d. "**Bodily injury**" to any person eligible to receive any benefits:

(1) Voluntarily provided; or

(2) Required to be provided, whether or not actually provided;

by any "**insured**" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law.

e. "**Bodily injury**" or "**property damage**" for which any "**insured**" under this policy.

(1) Is also an "**insured**" under a nuclear energy liability policy; or

(2) Would be an "**insured**" under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada; or any of their successors'.

f. "**Bodily injury**" to you or any "**insured**" within the meaning of part a., b., or c. of "**insured**" as defined.

g. "**Property damage**" arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of "**pollutants**" however caused and whenever occurring unless resulting from the peril of fire. Any loss cost or expense arising out of any:

(1) Request, demand or order that any "**insured**" or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of "**pollutants**"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assess the effects of "**pollutants**".

3. **Coverage F - Medical Payments to Others** does not apply to "**bodily injury**":

a. To a "**residence employee**" if the "**bodily injury**":

(1) Occurs off the "**insured location**"; and

(2) Does not arise out of or in the course of the "**residence employee's** employment by an "**insured**".

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

under any:

(1) Workers' compensation law; or

(2) Non-occupational disability law; or

(3) Occupational disease law.

c. From any:

(1) Nuclear reaction; or

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these.

0901119c9008fad1

USAA Confidential

d. To any person, other than a **"residence employee"** of any **"insured"**, regularly residing on any part of the **"insured location"** or residing on any part of the **"insured location"** for a period in excess of thirty consecutive days prior to the date of loss, unless other permanent residency is established or claimed elsewhere.

# SECTION II - ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against any **"insured"** in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by any **"insured"** at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. Prejudgment interest awarded against the **"insured"** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any **"insured"** for **"bodily injury"** covered under this policy. We will not pay for first aid to you or any other **"insured"**.

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per **"occurrence"** for **"property damage"** to property of others caused by any **"insured"**.

   We will not pay for **"property damage"**:

   a. To the extent of any amount recoverable under SECTION I of this policy;

   b. Caused intentionally by any **"insured"** who is 13 years of age or older.

      However, this exclusion does not apply to an **"insured"** who did not cooperate in or contribute to the creation of the loss if that **"insured"** has:

      (1) Filed a police report; and

      (2) Cooperated with law enforcement investigation or prosecution relating to any other **"insured"** causing the intentional loss.

   c. To property owned by any **"insured"**;

   d. To property owned by or rented to a tenant of any **"insured"** or a resident in your household; or

   e. Arising out of:

0901119c9008fad1

USAA Confidential

(1) A "**business**" engaged in by any "**insured**";

(2) Any act or omission in connection with a premises owned, rented or controlled by any "**insured**", other than the "**insured location**"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of "**aircraft**", "**hovercraft**", "**watercraft**", "**personal watercraft**" or "**motor vehicle**". This exclusion e.(3) does not apply to a "**motor vehicle**" that:

    (a) Is designed for recreational use off public roads,

    (b) Is not owned by any "**insured**"; and

    (c) At the time and place of the "**occurrence**", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

4. **Loss Assessment**. We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, when the assessment is made as a result of:

    a. "**Bodily injury**" or "**property damage**" caused by an "**occurrence**" not excluded under SECTION II of this policy; or

    b. Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

        (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

        (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "**residence premises**".

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

a. One "**occurrence**", including continuous or repeated exposure to substantially the same general harmful conditions; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E - Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

This coverage is not limited by the expiration of this policy.

## SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage E limit is shown in the Declarations. This is our limit for all damages from each "**occurrence**" regardless of the number of "**insureds**", claims made or persons injured. All "**bodily injury**" and "**property damage**" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "**occurrence**".

The Coverage F limit is shown in the Declarations. This is our limit for all medical expenses payable for "**bodily injury**" to one person as the result of one accident.

HO-3RTX (07-08)

Page 30 of 34

0901119c9008fad1

USAA Confidential

2. **Severability of Insurance.** This insurance applies separately to each **"insured"**. This condition does not increase our limit of liability for any one **"occurrence"**.

3. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

   a. Concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements which if known by us, would have caused us not to:

      (1) Issue the policy;

      (2) Issue the policy in as large an amount;

      (3) Provide coverage for the hazard resulting in the loss; or

      (4) Issue the policy for the same amount of premium or at the same rate

   relating to the issuance of this policy or in the presentation of a claim we may deny coverage as to the interest of all **"insureds"**.

   We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

4. **Duties After Loss.** In case of an accident or **"occurrence"**, the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and **"insured"**;

      (2) Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

      (3) Names and addresses of any claimants and witnesses.

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   c. Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence"**.

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

      (3) With the conduct of suits and attend hearings and trials;

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. Under Damage to Property of Others, if we request, submit to us within 60 days after notice of the loss, a sworn statement of loss and show the damaged property, if in the **"insured's"** control.

   f. The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

5. **Duties of an Injured Person – Coverage F – Medical Payments to Others.** The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

0901119c9008fad1

USAA Confidential

6. **Payment of Claim - Coverage F - Medical Payment to Others**. Payment under this coverage is not an admission of liability by any **"insured"** or us.

7. **Suit Against Us**. No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against any **"insured"**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **"insured"** has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured**. Bankruptcy or insolvency of any **"insured"** will not relieve us of our obligations under this policy.

9. **Other Insurance - Coverage E - Personal Liability**. This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

10. **Notice of Settlement of Liability Claim**. We will notify the **"insured"** in writing of any initial offer to compromise or settle a claim against the **"insured"** under the liability section of this policy. We will give the **"insured"** notice within 10 days after the date the offer is made.

    We will notify the **"insured"** in writing of any settlement of a claim against the **"insured"** under the liability section of this policy. We will give the **"insured"** notice within 30 days after the date of the settlement.

## SECTIONS I AND II - CONDITIONS

1. **Policy Period**. This policy applies only to loss in SECTION I or **"bodily injury"** or **"property damage"** in SECTION II, which occurs during the policy period.

2. **Liberalization Clause**. If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a. A subsequent edition of this policy; or

   b. An amendatory endorsement.

3. **Waiver or Change of Policy Provisions**. A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation**.

   a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

   b. If this policy has been in effect for less than 60 days and is not a renewal policy we may cancel this policy if:

      (1) We identify a condition that:

          (a) Creates an increased risk of hazard;

          (b) Was not disclosed in the application for insurance coverage and

          (c) Is not the subject of a prior claim; or

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

(2) Before the effective date of the policy, we have not accepted a copy of a required inspection report that:

    (a) Was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

    (b) Is dated not earlier than the 90th day before the effective date of the policy.

An inspection report is deemed accepted, unless we reject it before the 11th day after the date we receive it.

c. We may also cancel this policy at any time for any of the following reasons

    (1) You do not pay the premium or any portion of the premium when due.

    (2) The Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

    (3) You submit a fraudulent claim.

    (4) There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

d. The effective date of cancellation cannot be before the 10th day after we mail the notice if we cancel for any of the reasons in c. or the 30th day after we mail notice if we cancel for any other reason. Our notice of cancellation must state the reason for cancellation.

This cancellation notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

e. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

f. We may not cancel this policy solely because you are an elected official.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by letting you and any mortgagee named on the Declarations page, know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, or mailed to you by postal mail at your last known address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

If we fail to give you proper notice of our decision not to renew, you may require us to renew this policy.

a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

b. We may not refuse to renew this policy because you are an elected official.

0901119c9008fad1

USAA Confidential

c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided above. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

6. **Subrogation**. Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights or recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a. Sign and deliver all related papers;

b. Cooperate with us in a reasonable manner; and

c. Do nothing after a loss to prejudice such rights.

7. **Spouse Access**. The **"member"** and we agree that the **"member"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"member"** and may conduct the same transactions as the **"member"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"member"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the resident spouse to access policy information or conduct transactions on this policy.

8. **Assignment**. Assignment of this policy will not be valid unless we give our written consent.

9. **Death**. If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. For the purpose of this condition **"insured"** includes:

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"residence premises"**; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material Insurance Services Office, with its permission.

0901119c9008fad1                                    USAA Confidential

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Amendment to Contract Provisions

Texas

(Applies to HO-3RTX & HO-6RTX unless otherwise noted)

### DEFINITIONS

5.  "Collapse" is deleted and replaced by the following:

5.  "Collapse" means:

    a.  A sudden falling or caving in; or

    b.  A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

### SECTION I

### SECTION I - PROPERTY WE COVER

### COVERAGE C - Personal Property Protection

**Under Property We Do Not Cover:**

Item 1. is deleted.

Item 3. is deleted and replaced by the following:

3.  "Motor vehicle(s)". This includes but is not limited to the following while in or upon a "motor vehicle".

    a.  Equipment, accessories, and parts; or

    b.  Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a "motor vehicle". We do not cover antennas, tapes, wire, discs or other media, for use with any such device or instrument.

    We do cover "motor vehicle(s)" or all other motorized land conveyances not subject to motor vehicle registration which are:

a.  Used solely to service any residence; or

b.  Designed for assisting the handicapped.

Subject to the provisions under Special Amounts of Insurance we also cover:

a.  Motorized golf carts and their equipment and accessories; and

b.  Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads.

The following is added to **Property We Do Not Cover:**

Controlled substances included on Schedule I as defined by 21 United States Code Section 812, and as changed, updated, and republished by 21 Code of Federal Regulations Part 1308 at the time of loss. This exclusion applies whether or not state law allows use of the substance.

**Under COVERAGE D - Loss of Use Protection:**

The lead-in paragraph is deleted and replaced by the following:

The SECTION I - LOSSES WE DO NOT COVER apply to the coverage provided under Loss of Use below. The amount of insurance for Loss of Use shown in the Declarations is the total limit for the coverages that follow.

Item 3. **Prohibited Use** is deleted and replaced by the following:

USAA Confidential

3. **Prohibited Use.** If a loss covered under SECTION I - LOSSES WE COVER results in an order from a civil authority prohibiting you from the use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under SECTION I - LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks.

## ADDITIONAL COVERAGES

The lead-in paragraph is deleted and replaced by the following:

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following. The SECTION I - LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated.

HO-3RTX only:

Under **12. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO-6RTX only:

Under **11. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

This coverage does not include loss on the **"residence premises"** if the building containing the **"residence premises"** has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO-3RTX only:

Under **17. War**, item b. is deleted and replaced by the following:

b. Abandonment as a consequence of **"war"**;

## SECTION I - LOSSES WE COVER

## COVERAGE C - PERSONAL PROPERTY PROTECTION

Under **9. Theft**, item a. is deleted and replaced by the following:

a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, even if other permanent residency is established or claimed elsewhere.

Under **14. Freezing** is deleted and replaced by the following:

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **"residence premises"** while the dwelling is unoccupied, if you have failed to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

## SECTION I - LOSSES WE DO NOT COVER

HO-3RTX

## LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION

Item 1.a. is deleted and replaced by the following:

0901119c9008fad1                          USAA Confidential

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed and then, only if you have failed to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliance of water.

## SECTION I - CONDITIONS

Item **9. Other Insurance** is deleted and replaced by the following:

9. **Other insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

If a loss covered by this policy is also covered by other insurance, we will pay as follows:

a. Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance; or

b. For a loss to personal property that is separately described and specifically insured by other insurance, whether or not that policy is primary or excess, we will be excess over that insurance for a loss that is also covered under this policy; or

c. For all other coverage we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss; or

d. This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

The following condition is added:

**Reducing The Risk Of Loss**

We may occasionally provide you with products or services that assist you in preventing or reducing the risk of loss, and may provide an incentive for your use of these items.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others**, in item e.:

This exclusion does not apply to the permissive use, loading or unloading of:

is deleted and replaced by the following:

This exclusion does not apply to the ownership, maintenance, permissive use, loading or unloading of:

## SECTION I and II - CONDITIONS

6. **Subrogation** is changed in the HO-3RTX only:

Under item **6. Subrogation**, the first paragraph is deleted and replaced by the following:

6. **Subrogation.** Any "**insured**" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

0901119c9008fad1                    USAA Confidential

Item **8. Assignment** is deleted and replaced by the following:

8. **Assignment.** Assignment of any claim or this policy will not be valid unless we give our written consent.

Copyright, USAA, 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**HO-ACPTX** (07-12)

0901119c9008fad1

USAA Confidential

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**
**SPECIAL LOSS SETTLEMENT**
**(HO-3RTX only)**

**Coverage D - Loss of Use Protection , 1. Additional Living Expense** is deleted and replaced by the following:

1. **Additional Living Expense.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

   However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

**TOTAL LOSS - LOSS SETTLEMENT**

**Coverage A - Dwelling Protection**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, for Coverage A – Dwelling Protection only, SECTION I – Conditions, 5. Loss Settlement, item b. is deleted and replaced by the following:

b. Under Coverage A – Dwelling Protection: We will pay you the total amount of insurance for **Coverage A - Dwelling Protection** shown in the Declarations.

   To receive any additional Coverage A – Dwelling Protection payments for loss to your dwelling under any endorsement or other provisions of this policy, you must complete the actual repair or replacement of the dwelling. The replacement or repair must be completed within two years of the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days. You must then notify us within 30 days after the work has been completed.

   When repair or replacement is actually completed, we will pay the lesser of:

   (1) The covered additional amount you actually and necessarily spend; or the amount it would cost us to repair or replace the dwelling,

   (2) In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**Coverage C - Personal Property Protection**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, and your personal property is destroyed to the extent the property cannot be repaired to its condition prior to the loss we will pay your claim under the following terms:

Items a., b. and c. of the LOSS SETTLEMENT provision of the REPLACEMENT COST COVERAGE – PERSONAL PROPERTY endorsement is deleted and replaced by the following:

USAA Confidential

We will pay 75% of the amount of insurance for Coverage C – Personal Property Protection as shown in the Declarations, if this is your primary residence and all of your personal property is located in your dwelling located on the **"residence premises"** at the time of loss.

However, if part of your personal property covered by this endorsement is at another location, or in an undamaged structure on the **"residence premises"** at the time of the loss, payment will be 75% of the Coverage C – Personal Property Protection limit less the covered replacement cost of the personal property not destroyed.

To receive additional payment which exceeds 75% of Coverage C – Personal Property Protection limit, the provisions and terms of the REPLACEMENT COST COVERAGE – PERSONAL PROPERTY endorsement will apply. However, Item b. of the LOSS SETTLEMENT provision is deleted and replaced by:

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed.

In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**Liberalization Clause.**

The provisions of this endorsement will automatically apply to your insurance as of the date we implement this change in your state.

Unless specifically modified by this endorsement all other provisions of the policy to which this endorsement is attached shall apply.

Copyright, USAA 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY

## TEXAS SPECIAL PROVISIONS

### SECTION I - LOSSES WE DO NOT COVER

In the HO-3RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION** item **1.m.** is deleted and replaced by the following:

**1.m.** Vermin meaning animals, other than l. above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

In the HO-3RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION** and in the HO-6RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION**, item **1.i. Microbial Organisms** is deleted and replaced by the following:

**1.i. Microbial Organisms**, including but not limited to mold, mold spores, fungus, bacterium or parasitic microorganisms. However, we will repair or tear out and replace **"property damage"** resulting from a covered loss even if microbial organisms are present.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2010. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HOME PROTECTOR
### (HO-3RTX only)
### Texas

For an additional premium, the following is added to Section I - Conditions, 5. Loss Settlement:

c. Home Protector Coverage

You agree:

(1) To insure your buildings, under Property We Cover - Dwelling Protection and Other Structures Protection, on the "residence premises" for the full replacement cost at the time this policy is issued; and

(2) To accept any increase in coverage that results from the application of the Adjustment to Building Cost provision, if it is deemed necessary by us. You must pay for any added premium; and

(3) To tell us within 90 days of the start of any additions or other physical changes to building on the "residence premises" which increases the value by the greater of:

(a) $25,000; or

(b) 5% of the current Dwelling Protection amount of insurance.

You must pay any resulting premium.

If you comply with these requirements and if as a result of a covered loss, you have exhausted the amount of insurance:

(1) applying to buildings covered under Property We Cover - Dwelling Protection or Other Structures Protection ; or

(2) provided under ADDITIONAL COVERAGES, Debris Removal: or

(3) provided under ADDITIONAL COVERAGES, Building Ordinance or Law;

then, we will pay up to an additional 25% of the amount of insurance applying to the damaged building. The most we will pay for (1), (2), or (3), either singly or in any combination is 25% or the amount actually and necessarily spent to repair or replace the damaged building, whichever is less.

Except as specifically modified in this endorsement, all provision of the policy to which this endorsement is attached also apply to this endorsement.

Term Premium

INCLUDED

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WATER BACKUP OR SUMP PUMP OVERFLOW

Texas

### SECTION I

This endorsement applies to **PROPERTY WE COVER - Dwelling Protection, Other Structures Protection, Personal Property Protection** and **Loss of Use Protection.**

The following additional coverage is added:

We insure for direct, physical loss caused by:

1. Water or water-borne material which flows into the plumbing system of your dwelling or other structures through sewers or drains located off the **"residence premises"**; or

2. Water which overflows from a sump pump or sump well with a sump pump designed to drain subsurface water from the foundation area even if such overflow results from the mechanical breakdown of the sump pump or a disruption in power. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not apply to loss caused directly or indirectly by any of the following, regardless of whether any other causes or events act concurrently or in any sequence with the excluded event to produce the loss:

1. A general condition of flooding meaning a temporary condition of complete inundation of:

   a. two or more acres of normally dry land area; or

   b. two or more properties

   that includes the inundation of the part of the **"residence premises"** where the **"insured's"** dwelling is located. This applies even if there is a mechanical breakdown or a disruption of power; or

2. the negligence of any **"insured"**

### AMOUNT OF INSURANCE

$10,000 is the most we will pay for any one loss whether resulting from a single condition or series of related conditions.

### SECTION I - LOSSES WE DO NOT COVER

For loss covered by this endorsement, if your policy is the:

HO-3RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item **1.g.** is deleted and replaced by the following:

   g. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

HO-6RTX:

If your policy includes the **Unit-Owners Coverage A - Special Dwelling Protection** endorsement, LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, item **1.g.** is deleted and replaced by the following:

   g. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

If the policy includes the **Special Personal Property Coverage** endorsement, under LOSSES WE DO NOT COVER, item **r.** is deleted and replaced by the following:

   r. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

0901119c9008fad1

USAA Confidential

Except to the extent of additional coverage provided by the terms of this endorsement **Water Damage** is excluded as provided in HO-3RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage**.

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow.

Except to the extent of additional coverage provided by this endorsement, **Water Damage** is excluded as provided in HO-6RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage**.

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**      NO CHARGE

Copyright, USAA, 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-208TX (07-12)                                    Page 2 of 2

USAA Confidential

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REPLACEMENT COST COVERAGE - PERSONAL PROPERTY

Texas

We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

### REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article; and

b. Of like quality and usefulness.

### DEDUCTIBLE

The deductible shown on the Declarations Page applies.

### PROPERTY COVERED

a. Personal property covered in Property We Cover – Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

### PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the **"insured"** at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

### LOSS SETTLEMENT

SECTION I – CONDITIONS, Item 5.a **Loss Settlement** does not apply to property covered by this endorsement. Instead the following loss settlement applies:

a. For property that is eligible for replacement cost coverage it is our option to:

   (1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

   (2) Pay you the cost to repair or restore the property to the condition it was in just before the loss, or

   (3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $5,000.

c. You may make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

0901119c9008fad1

USAA Confidential

d. For property that is not eligible for replacement cost coverage, it is our option to:

    (1) pay you the **"actual cash value"**; or

    (2) replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition ; or

    (3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in the policy to which this endorsement is attached.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**     NO CHARGE

Copyright, USAA, 2012. All rights reserved.

HO-728TX (07-12)

0901119c9008fad1

USAA Confidential

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REPLACEMENT COST COVERAGE - PERSONAL PROPERTY
Texas

We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

### REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article; and

b. Of like quality and usefulness.

### DEDUCTIBLE

The deductible shown on the Declarations Page applies.

### PROPERTY COVERED

a. Personal property covered in Property We Cover – Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

### PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the **"insured"** at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

### LOSS SETTLEMENT

SECTION I – CONDITIONS, Item 5.a. **Loss Settlement** does not apply to property covered by this endorsement. Instead the following loss settlement applies:

a. For property that is eligible for replacement cost coverage it is our option to:

   (1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

   (2) Pay you the cost to repair or restore the property to the condition it was in just before the loss, or

   (3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $5,000.

c. You may make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

0901119c9008fad1

USAA Confidential

d. For property that is not eligible for replacement cost coverage, it is our option to:

    (1) pay you the **"actual cash value"**; or

    (2) replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition ; or

    (3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in the policy to which this endorsement is attached.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**    NO CHARGE

Copyright, USAA, 2012. All rights reserved.

0901119c9008fad1

USAA Confidential

# EXHIBIT B



o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

March 5, 2015

*Via Facsimile: (214) 665-0199*
Ms. Lisa A. Songy
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney, Suite 250
Dallas, Texas 75204

       Re:     Cause No. 272,693-B; *Angela Brooks-Brown v. USAA Texas Lloyds Company*; In the
               146th Judicial District Court, Bell County, Texas

Dear Ms. Songy:

This letter is sent to advise you that the plaintiff in the referenced action hereby invokes the appraisal provision for the property pertaining to the above referenced case, Policy Number LLYD 02423 40 74 90A, Pursuant to Section I Conditions, Appraisal:

"If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

We hereby request that you provide the identity of and contact information for defendant's appraiser no later than March 26, 2015.

We look forward to hearing from you.

Sincerely,

DANNY RAY SCOTT

# EXHIBIT C



o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

April 20, 2015

**Via Facsimile: 214-665-0199**
Lisa A. Songy
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204

Re:   Angela Brooks-Brown v. USAA Texas Lloyd's Company; Cause No. 272,693-B; In the 146th Judicial District Court; Bell County, Texas

Dear Ms. Songy:

This letter is sent to advise you that the Plaintiff has appointed Darrell Quinney of Loss Solutions as her appraiser for the property pertaining to the above referenced matter.

Mr. Quinney's phone number is 979-234-2400, and his email is dq@loss-solution.com.

Should you have any questions or require additional information, please do not hesitate to contact our office at 409.833.5400.

Sincerely,

Jo Ann Haynes, Paralegal to
DANNY RAY SCOTT

# EXHIBIT D

# Tollefson Bradley Mitchell & Melendi, LLP

2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Facsimile:   214.665.0199
Telephone:   214.665.0100

Lisa A. Songy                                                    Direct: 214.665.0107
Admitted in Texas and California                                lisas@tbmmlaw.com

April 23, 2015

*Via Facsimile (409) 833-5405*
Mr. Danny Ray Scott
Scott Law Offices
350 Pine Street, Suite 300
Beaumont, Texas  77701

> Re:   *Angela Brooks-Brown v. USAA Texas Lloyd's Company*, Cause No.
> 272,693-B, In the 146th Judicial District Court of Bell County, Texas

Dear Mr. Scott:

I am in receipt of your paralegal's letter naming Darrell Quinney as Ms. Brooks-Brown's appraiser in this matter. We object to your firm's use Mr. Quinney as an appraisal in this matter as you have identified him as an expert witness in this matter and in fact sought to quash a deposition on written questions to Mr. Quinney because he was your expert. Therefore, you have already identified Mr. Quinney as an advocate for your client and he does not meet the impartiality test of the policy in terms of being a competent and impartial appraisal. Further, we have questions regarding Mr. Quinney's competency. Thus, we will object to any appraisal award which Mr. Quinney is a part of as not being proper under the policy.

However, in compliance with the policy, USAA hereby designates Mark West as its appraiser in this matter. Mr. West can be reached at (713) 824-2773.

Further USAA does not waive any other right it may have to challenge any appraisal award in this matter. If you have any questions, please feel free to contact me.

Very truly yours,

Lisa A. Songy

LAS/cv
2015.001/ltr to Danny R. Scott

cc:   Ms. Jo Ann Haynes – Paralegal to Danny Ray Scott

# EXHIBIT E

FILED FOR RECORD
Carolyn L. Guidry
6/8/2015 12:00:00 AM
COUNTY CLERK
JEFFERSON COUNTY
0127771

CAUSE NO. **0127771** _____

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| v. | § | AT LAW NO. 1 |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | JEFFERSON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION FOR APPOINTMENT OF APPRAISAL UMPIRE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ANGELA BROOKS-BROWN (herein after referred to as "Plaintiff"), complaining of Defendant, USAA TEXAS LLOYD'S COMPANY, (hereinafter referred to as "USAA") and hereby respectfully show unto the Court as follows:

### DISCOVERY CONTROL PLAN

1.     Plaintiff intends for discovery to be conducted under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

### PARTIES

2.     Plaintiff, ANGELA BROOKS-BROWN, is an individual and resident of Bell County and citizen of the state of Texas.

3.     Defendant, USAA TEXAS LLOYD'S COMPANY, hereinafter "USAA," is a domestic insurance carrier, incorporated and engaging in the business of insurance in the State of Texas, and may be served with process by serving its President, Laura M. Bishop, 9800 Fredericksburg Road, San Antonio, Texas 78288.

### VENUE

4.     Venue is proper in Jefferson County, Texas, because the insurance contract

hj

drafted by the defendant grants the parties the right to petition a judge of a court of record in the state where the "residence premises" is located to appoint an appraisal umpire.

## FACTS

5.     Plaintiff is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A, issued by the Defendant (hereinafter referred to as the "Policy").

6.     Plaintiff owned the insured property that is specifically located at ███████████ ████████████ (hereinafter referred to as the "Property").

7.     Defendant or its agent sold the Policy, insuring the property, to Plaintiff.

8.     On or about April 4, 2014, Plaintiff's property sustained fire damage, specifically to the fence. Plaintiff filed a claim with her insurance company, USAA for the damages to her property caused by the fire.

9.     On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage.  Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof.  Plaintiff's property also sustained exterior damage to the cornice and siding, dryer vent, windows, fence, garage door and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

10.     Plaintiff submitted claims to USAA against the Policy for damage caused to the property as a result of the fire and the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy.  USAA assigned claim number 024234074-3 to Plaintiff's fire claim and claim number 024234074-4 to Plaintiff's wind and hail claim.

11.     On March 5, 2015, plaintiff communicated to defendant that plaintiff disagreed with defendant's determination of the amount of loss with respect to plaintiff's insurance claim. Plaintiff also communicated to defendant that plaintiff wished to invoke the insurance policy's appraisal clause.

12.     The insurance policy's appraisal clause states the following: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

13.     The requisite period of time has expired and the appraisers have not agreed upon an umpire. Plaintiff therefore requests that this Court select an umpire in accordance with and as allowed by the policy's provisions.

**PRAYER**

14.     For these reasons, Plaintiff asks that this Court appoint an umpire for the insurance appraisal. Plaintiff also asks the Court to issue orders as necessary to validate any decision the umpire makes and to issue any orders necessary to conclude this matter at the appropriate time.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405


*/s/Danny Ray Scott*
Danny Ray Scott
State Bar No. 24010920
danny@scottlawyers.com
Virginia Izaguirre
State Bar No. 24083230
virginia@scottlawyers.com
Sean M. Patterson
State Bar No. 24073546
sean@scottlawyers.com

*Attorneys for Plaintiff*

# EXHIBIT F

STATE OF TEXAS          §
COUNTY OF DALLAS        §

### AFFIDAVIT OF LISA SONGY

BEFORE ME, the undersigned authority, on this day personally appeared Lisa Songy, who swore and affirmed to tell the truth and stated as follows:

1.      "My Name is Lisa Songy.  I am over the age of 18 years and of sound mind and capable of making this sworn statement.  I have personal knowledge of the facts written in this statement, and these statements are true and correct.

2.      I am counsel of record for USAA Texas Lloyd's in this matter.

3.      Danny Ray Scott, Jr. represents Angela Brooks-Brown in the following lawsuits:

   (1) *Angela Brooks-Brown v. USAA Texas Lloyd's Company*; Cause No. 272,693-B; In the 146th Judicial District Court Bell County, Texas; and

   (2) *Angela Brooks-Brown v. USAA Texas Lloyd's Company*; Cause No. 0127771; In the County Court at Law No. 1, Jefferson County, Texas.

4.      According to the file-stamped copy of Plaintiff's Original Petition, Angela Brooks-Brown filed her first lawsuit (the "Bell County Lawsuit") on September 11, 2014.  A true and correct copy of the Original Petition filed in the Bell County Lawsuit is attached hereto as Exhibit A.

5.      According to the file-stamped copy Plaintiff's Original Petition for Appointment of Umpire, Angela Brooks-Brown filed her second lawsuit (the "Jefferson County Lawsuit") on June 8, 2015.  A true and correct copy of the Jefferson County Lawsuit is attached hereto as Exhibit B.

6.      Both lawsuits involve Angela Brooks-Brown's residence, which is located at ▮

██████████████████████. Further, both lawsuits concern the occurrence of two events. The first event was a fire, which Angela Brooks-Brown alleges occurred on April 4, 2014. The Second event was a wind and hailstorm, which Angela Brooks-Brown alleges occurred on May 12, 2014.

7. On or about March 5, 2015, I received a letter from Danny Ray Scott, Jr., invoking the Appraisal Provision of Angela Brooks-Brown's homeowner insurance, Policy Number LLYD 02423 40 74 90A (the "Policy"). A true and correct copy of the letter is attached hereto as Exhibit C.

8. On or about April 20, 2015, I received a letter from Danny Ray Scott, Jr.'s Paralegal, Jo Ann Haynes, designating Darrell Quinney of Loss Solutions as Angela Brooks-Browns' appraiser for the insurance appraisal proceeding. A true and correct copy of the letter is attached hereto as Exhibit D.

9. On or about April 23, 2015, I sent Danny Ray Scott Jr. a letter objecting to his use of Darrell Quinney as an appraiser and designating Mark West as USAA Texas Lloyd's Company's appraiser for the insurance appraisal proceeding. A true and correct copy of the letter is attached hereto as Exhibit E.

10. Mark West and Darrell Quinney have been unable to agree on an umpire for the insurance appraisal proceeding.

11. On or about June 9, 2015, on behalf of USAA Texas Lloyd's Company, I filed a Motion for Appointment of Umpire for Insurance Appraisal Proceeding because the appraisers were unable to agree on an umpire.

12. On or about June 10, 2015, I received a letter from Danny Ray Scott, Jr. demanding that I withdraw the Motion for Appointment of Umpire for Insurance Appraisal

2

Proceeding because he non-suited the Bell County Lawsuit on June 8, 2008 and filed the Jefferson County Lawsuit on the same day. A true and correct copy of the letter is attached hereto as exhibit F.

13. I was not made aware of the Jefferson County Lawsuit until I received the letter from Danny Ray Scott, Jr. dated June 10, 2015."

Further Affiant Sayeth Naught.

Lisa A. Songy

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary on this 26th day of June, 2015.



Notary Public in and for the
State of Texas

My Commission Expires:

5.18.19

# EXHIBIT A

Filed 9/11/2014 4:26:17 PM
Shelia Norman, District Clerk
District Court, Bell County, TX
by_____ Deputy

COPY

CAUSE NO. 272,693-B

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | 146TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | BELL COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ANGELA BROOKS-BROWN (herein after referred to as "Plaintiff"), complaining of Defendant, USAA TEXAS LLOYD'S COMPANY, (hereinafter referred to as "USAA") and hereby respectfully show unto the Court and Jury as follows:

### DISCOVERY CONTROL PLAN

1. Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff asks the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### PARTIES

2. Plaintiff, ANGELA BROOKS-BROWN, is an individual and resident of Bell County and citizen of the state of Texas.

3. Defendant, USAA TEXAS LLOYD'S COMPANY, hereinafter "USAA," is a domestic insurance carrier, incorporated and engaging in the business of insurance in the State of Texas, and may be served with process by serving its President, Laura M. Bishop, 9800 Fredericksburg Road, San Antonio, Texas 78288.

Page 1 of 13

## JURISDICTION AND VENUE

4.     This Court has Jurisdiction over this case in that the amount in controversy exceeds the minimum jurisdictional limits of this Court.

5.     Venue is mandatory and proper in Bell County, Texas, because all or a substantial part of the events giving rise to the lawsuit occurred in this county (see Tex. Civ. Prac. & Rem. Code § 15.002).

## CONDITIONS PRECEDENT

6.     All conditions precedent to recovery have been performed, waived, or have occurred.

## FACTS

7.     Plaintiff is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A, issued by the Defendant (hereinafter referred to as the "Policy").

8.     Plaintiff owned the insured property that is specifically located at ██████████ ██████████ (hereinafter referred to as the "Property").

9.     Defendant or its agent sold the Policy, insuring the property, to Plaintiff.

10.     On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage. Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof. Plaintiff's property also sustained exterior damage to the cornice and siding, windows, fence, and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

11. Plaintiff submitted a claim to USAA against the Policy for damage caused to the property as a result of the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy. USAA assigned claim number 024234074-4 to Plaintiff's claim.

12. On or about May 16, 2014, Steen Schumacher ("SCHUMACHER"), on behalf of USAA, inspected the property in question. The storm caused significant damage to the roof, including pitting and loss of granules to the shingles. The hail pitting damage bruised the shingles, while removing and crushing the granules. Wind damage uplifted and detached shingles, which would not allow the shingles to reseal to prevent water intrusion.

13. SCHUMACHER's unreasonable investigation of the claim included a failure to comply with USAA's policies and procedures concerning roof inspections and when to replace or repair a roof. The roof required full replacement under USAA's policies and procedures including repairs to the roof jack, drip edge, and other structural parts of the roof. SCHUMACHER performed an unreasonable investigation by failing to document all of the damage to the roof. SCHUMACHER did not conduct a thorough roof inspection and only allowed the minimum cost to repair three tabs of shingle roofing and a portion of the other structural parts of the roof. As a result of SCHUMACHER's unreasonable and brief investigation, Plaintiff was wrongly denied the full cost to replace the roof.

14. The storm additionally caused extensive damage to the exterior of the property. Specifically, it caused damage to the cornice and siding, windows, fence, and a/c unit. SCHUMACHER did not conduct a thorough exterior inspection and only allowed the minimum cost to repair the windows and seal and paint the garage door opening and trim. As a result of

SCHUMACHER's unreasonable exterior investigation, Plaintiff was wrongly denied the full cost to repair the damage to the cornice and siding, windows, and fence, and to replace the a/c unit. SCHUMACHER also denied Plaintiff the full cost for construction cleanup, debris removal, a job permit, and temporary utilities, although all of the cost was covered under the Policy.

15.     SCHUMACHER conducted an insufficient inspection and prematurely closed Plaintiff's claim. At the time if the investigation, premature closing of claims was part of a pattern and practice of claims handling by USAA.

16.     USAA failed to properly adjust the claim and Defendant has denied at least a portion of the claim without an adequate investigation, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, USAA underpaid portions of Plaintiff's claims by not providing full coverage for the damages sustained by Plaintiff, as well as under-scoping the damages during its investigation.

17.     To date, USAA continues to delay in the payment for the damages to the Property. As such, Plaintiff's claim(s) still remain unpaid and Plaintiff still has not been able to properly repair the Property.

18.     Defendant failed to perform its contractual duty to adequately compensate Plaintiff under terms of the policy. Specifically, Defendant failed and refused to pay any of the proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

19. Defendant misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS. CODE §541.060 (a) (1).

20. Defendant failed to make an attempt to settle Plaintiff's claim in a fair manner, although it was aware of its liability to Plaintiff under the Policy. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060 (a)(2)(A).

21. Defendant failed to explain to Plaintiff the reason for its offer of an inadequate settlement. Specifically, USAA failed to offer Plaintiff adequate compensation, without adequate explanation of the basis in the policy why full payment was not being made. Further, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did it provide any explanation for the failure to adequately settle Plaintiff's claim. Defendant's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE. §541.060 (a)(3).

22. Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendant. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a)(4).

23. Defendant refused to fully compensate Plaintiff, under the terms of the Policy, even though Defendant failed to conduct a reasonable investigation. Specifically, Defendant performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased,

unfair, and inadequate evaluation of Plaintiff's losses on the Property. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a)(7).

24. Defendant failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim. USAA's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX.INS.CODE §542.055.

25. Defendant failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. USAA's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §542.056.

26. Defendant failed to communicate with Plaintiff to insure that she understood the coverage denials that she received.

COUNT ONE: BREACH OF CONTRACT

27. Plaintiff incorporates paragraphs 10-26 herein.

28. At the time of the May 12, 2014 incident, Plaintiff had in place a policy issued by USAA. The premiums were current. All conditions precedent to recovery were made. Defendant wrongfully failed to comply with the terms of the contract. Defendant is, therefore, in breach of the contract of insurance issued to Plaintiff.

29. Defendant's conduct constitutes a breach of contract resulting in damages to the Plaintiff.

## COUNT TWO: DTPA

30.     Plaintiff incorporates paragraphs 10-26 herein.

31.     Plaintiff is a "consumer" as defined by Tex. Bus. Code § 17.45(4). Plaintiff sought or acquired goods or services by purchasing those goods or services from Defendant. USAA violated the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA")(TEX. BUS. & COM. CODE §17.44 et seq.) because Defendant engaged in false, misleading and/or deceptive acts or practices that Plaintiff relied on to her detriment.

32.     The acts and omissions of Defendant also constitute violations of the Texas Deceptive Trade Practice Act, including, but not limited to:

    a.     Committing false, misleading or deceptive acts or practices as defined by §17.46(b); and

    b.     Use of employment of an act or practice in violation of the Texas Insurance Code Chapter 541.151 et seq. as described herein.

33.     The acts and omissions of Defendant were a producing cause of the Plaintiff's damages.

34.     Defendant's conduct was committed knowingly and/or intentionally because, at the time of the acts and practices complained of, Defendant had actual awareness of the falsity, deception or unfairness of the acts or practices giving rise to Plaintiff's claim and they acted with a specific intent that Plaintiff act in detrimental reliance on the falsity or deception and/or in detrimental ignorance of the unfairness.

35.     Plaintiff gave Defendant, USAA, notice as required by DTPA §17.50(a).

### COUNT THREE: §541 ET SEQ. TEXAS INSURANCE CODE

36.     Plaintiff incorporates paragraphs 10-26 herein.

37. USAA violated the TEXAS INSURANCE CODE § 541 et seq. because they engaged in unfair and/or deceptive acts or practices in the business of insurance. Specifically, USAA's acts and omission include violation of:

   a. §541.051;

   b. §541.051(4);

   c. engaging in unfair settlement practices by (§541.060):

      i. misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

      ii. failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim with respect to which USAA's liability has become reasonably clear;

      iii. failing to promptly provide Plaintiff a reasonable explanation of the factual and legal basis in the policy for USAA's denial of the claim;

      iv. failing to affirm or deny coverage within a reasonable time; and refusing to pay a claim without conducting a reasonable investigation of the claim.

   d. misrepresenting Plaintiff's insurance policy by (§541.061):

      i. making an untrue statement of material fact;

      ii. failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and

      iii. making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact; and

   e. §17.46(b) of the TEXAS DECEPTIVE TRADE PRACTICE ACT, incorporated by TEXAS INSURANCE CODE §541.151.

38.     USAA's conduct was committed knowingly because Defendant had actual awareness of the falsity, unfairness or deception of their acts or practices made the basis for Plaintiff's claim for damages under the TEXAS INSURANCE CODE.

39.     Plaintiff gave Defendant notice as required by §541.154 of the TEXAS INSURANCE CODE. Plaintiff has attached a copy of the DTPA Demand Letter as Exhibit A.

40.     Defendant's conduct described above was a producing cause of Plaintiff's injuries.

### COUNT FOUR: TEXAS INSURANCE CODE §542

41.     Plaintiff incorporates paragraphs 10-26 herein.

42.     USAA violated the Texas Insurance Code section 542 because they failed to do the following within the statutorily mandated time of receiving all necessary information:

a.     Failing to timely acknowledge the Plaintiff's claim;

b.     Failing to commence an investigation of Plaintiff's claim;

c.     Failing to request all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated deadlines;

d.     Failing to give proper notice of the acceptance or rejection of part or all of Plaintiff's claim;

e.     Failing to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all information;

f.     Failing to pay Plaintiff's claim without delay; and

g.     Failing to include the requisite penalty interest on any and all payments made beyond the statutorily designated time to make payment in full for Plaintiff's claim.

43. Such failures constitute violations of Texas Insurance Code Section 542.055, 542.056, 542.057, and 542.058. As a result of the foregoing violations, Plaintiff requests damages under Texas Insurance Code section 542.060.

## COUNT FIVE: GOOD FAITH AND FAIR DEALING

44. Plaintiff incorporates paragraphs 10-26 herein.

45. USAA and/or its adjusters owed Plaintiff a duty of good faith and fair dealing. USAA and/or its adjusters breached this duty when they denied Plaintiff's claim because USAA and/or its adjusters knew or should have known that it was reasonably clear that Plaintiff's claim was covered. USAA's breach of this duty was a proximate cause of Plaintiff's damages.

## COUNT SIX: FRAUD

46. Plaintiff incorporates paragraphs 10-26 herein.

47. Common Law Fraud. Defendant USAA made various representations to Plaintiff regarding her windstorm / hailstorm claim, including material representations regarding prior repairs, material representations regarding policy coverages, whether or not claims were covered, and/or the value of claims, which were material and false. At the time USAA made the representations they knew the representations were false or made the representations recklessly as a positive assertion without knowledge of the truth. USAA made these representations with the intent that the Plaintiff act on them by not further pursuing claims and/or thinking there was no other money to recover. Plaintiff relied on the representations and this caused injury.

48. Constructive Fraud. A breach of fiduciary duty is a form of constructive fraud. The acts and omissions of USAA constitute constructive fraud.

49. Fraud by Non-disclosure.

(a)     USAA had a duty to Plaintiff to disclose the extent and value of damages suffered by Plaintiff and that it owed Plaintiff money for her claim.   USAA concealed from, or failed to disclose these facts to Plaintiff.  The facts were material and USAA knew that the Plaintiff was ignorant of the facts and that Plaintiff did not have an equal opportunity to discover the facts.

(b)     USAA was deliberately silent when they owed a duty to advise Plaintiff of the damages and the extent of the damages and the amount it owed Plaintiff.  By failing to disclose these facts USAA intended to induce the Plaintiff to believe no money was owed on the claim.  Plaintiff relied on the non-disclosure and was injured.

## AMBIGUITY

50.     The policy in place at the time of May 12, 2014, policy number 0242343 40 74 90A, contained patent and latent ambiguities concerning the terms of the policy governing the insured's duties after loss.

## WAIVER AND ESTOPPEL

51.     Defendant has waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

## DAMAGES

52.     As a direct result of Defendant's conduct, Plaintiff has suffered economic damages all of which she is entitled to recover.  Plaintiff is entitled to recover, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.  Plaintiff is also entitled to recover mental anguish damages

because Defendant acted in bad faith and because Defendant's knowing conduct was the producing cause of Plaintiff's mental anguish.

53.     Pursuant to the DTPA and the Texas Insurance Code, Plaintiff is also entitled to recover treble damages because Defendant's conduct was committed knowingly.

54.     Plaintiff is entitled to exemplary damages as a result of Defendant's breach of duties owed as described in the paragraphs above. When viewed objectively from the standpoint of the Defendant at the time of the occurrence in question, Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the harm to others and of which the Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. In the alternative, Defendant had specific intent to cause substantial harm to Plaintiff.

## ATTORNEY FEES

55.     Pursuant to TEXAS CIVIL PRACTICES & REMEDIES CODE §§38.001, *et seq.*, DTPA § 17.50(d), and TEXAS INSURANCE Codes § 541.152 and §542.060, Plaintiff seeks recovery of her reasonable and necessary attorney fees and court costs.

## JURY DEMAND

56.     Plaintiff respectfully requests a trial by jury.

## PRAYER

57.     For these reasons, Plaintiff asks that she have judgment against Defendant for her economic damages, mental anguish damages, treble damages, exemplary damages, reasonable and necessary attorney fees, pre-judgment and post-judgment interest as allowed by law, costs of suit, and all other relief to which Plaintiff may show herself entitled.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405

*/s/Danny Ray Scott*

Danny Ray Scott
State Bar No. 24010920
danny@scottlawyers.com
Virginia Izaguirre
State Bar No. 24083230
virginia@scottlawyers.com
Sean M. Patterson
State Bar No. 24073546
sean@scottlawyers.com

*Attorneys for Plaintiff*



**SCOTT**
LAW OFFICES

**Exhibit A**

o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

September 5, 2014

Laura M. Bishop
USAA Texas Lloyd's Company
9800 Fredericksburg Road
San Antonio, Texas 78288

| | Re: | Insured(s): | Angela Brooks-Brown |
| | | Policy No.: | 0242343 40 74 90A |
| | | Claim No.: | 024234074-4 |
| | | Date of Loss: | May 12, 2014 |

Dear Ms. Bishop:

This is an attempt to resolve all claims between Angela Brooks-Brown and USAA Texas Lloyd's Company. This settlement demand is being provided pursuant to the TEXAS DECEPTIVE TRADE PRACTICE ACT and INSURANCE CODE on behalf of the above referenced policy holder(s). Our client alleges violations of §17.46(b) of the DTPA, violations § 541 and § 542 of the INSURANCE CODE, unfair settlement practices, misrepresentations regarding the above referenced home insurance policy, and failure to pay the claim promptly.

Our client's property was covered under a policy with USAA Texas Lloyd's Company ("USAA") that provided coverage in the amount of $184,000.00 for property located at ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ on the claim loss date of May 12, 2014. Plaintiff alleges that USAA Texas Lloyd's Company performed an unreasonable investigation of this loss.

On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage. Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof. Plaintiff's property also sustained exterior damage to the cornice and siding, windows, fence, and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

Plaintiff submitted a claim to USAA against the Policy for damage caused to the property as a result of the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy. USAA assigned claim number 024234074-4 to Plaintiff's claim.

On or about May 16, 2014, Steen Schumacher ("SCHUMACHER"), on behalf of USAA, inspected the property in question. The storm caused significant damage to the roof, including pitting and loss of granules to the shingles. The hail pitting damage bruised the shingles, while removing and crushing the granules. Wind damage uplifted and detached shingles, which would not allow the shingles to reseal to prevent water intrusion.

SCHUMACHER's unreasonable investigation of the claim included a failure to comply with USAA's policies and procedures concerning roof inspections and when to replace or repair a roof. The roof required full replacement under USAA's policies and procedures including repairs to the roof jack, drip edge, and other structural parts of the roof. SCHUMACHER performed an unreasonable investigation by failing to document all of the damage to the roof. SCHUMACHER did not conduct a thorough roof inspection and only allowed the minimum cost to repair three tabs of shingle roofing and a portion of the other structural parts of the roof. As a result of SCHUMACHER's unreasonable and brief investigation, Plaintiff was wrongly denied the full cost to replace the roof.

The storm additionally caused extensive damage to the exterior of the property. Specifically, it caused damage to the cornice and siding, windows, fence, and a/c unit. SCHUMACHER did not conduct a thorough exterior inspection and only allowed the minimum cost to repair the windows and seal and paint the garage door opening and trim. As a result of SCHUMACHER's unreasonable exterior investigation, Plaintiff was wrongly denied the full cost to repair the damage to the cornice and siding, windows, and fence, and to replace the a/c unit. SCHUMACHER also denied Plaintiff the full cost for construction cleanup, debris removal, a job permit, and temporary utilities, although all of the cost was covered under the Policy.

SCHUMACHER conducted an insufficient inspection and prematurely closed Plaintiff's claim. At the time if the investigation, premature closing of claims was part of a pattern and practice of claims handling by USAA.

USAA failed to properly adjust the claim and Defendant has denied at least a portion of the claim without an adequate investigation, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, USAA underpaid portions of Plaintiff's claims by not providing full coverage for the damages sustained by Plaintiff, as well as under-scoping the damages during its investigation.

To date, USAA continues to delay in the payment for the damages to the Property. As such, Plaintiff's claim(s) still remain unpaid and Plaintiff still has not been able to properly repair the Property.

Defendant failed to perform its contractual duty to adequately compensate Plaintiff under terms of the policy. Specifically, Defendant failed and refused to pay any of the proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out

and accomplished by Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

Defendant misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS. CODE §541.060 (a) (1).

Defendant failed to make an attempt to settle Plaintiff's claim in a fair manner, although it was aware of its liability to Plaintiff under the Policy. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060 (a)(2)(A).

Defendant failed to explain to Plaintiff the reason for its offer of an inadequate settlement. Specifically, USAA failed to offer Plaintiff adequate compensation, without adequate explanation of the basis in the policy why full payment was not being made. Further, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did it provide any explanation for the failure to adequately settle Plaintiff's claim. Defendant's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE. §541.060 (a)(3).

Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendant. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a)(4).

Defendant refused to fully compensate Plaintiff, under the terms of the Policy, even though Defendant failed to conduct a reasonable investigation. Specifically, Defendant performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inadequate evaluation of Plaintiff's losses on the Property. Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §541.060(a)(7).

Defendant failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim. USAA's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX.INS.CODE §542.055.

Defendant failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. USAA's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX.INS.CODE §542.056.

Defendant failed to communicate with Plaintiff to insure that she understood the coverage

denials that she received.

Plaintiff has hired an estimator to perform a proper inspection of damages sustained in this loss. Based on a thorough inspection, Plaintiff's damages are as follows:

| | |
|---|---|
| Property Damages | $30,782.42 |
| Deductible | $3,680.00 |
| Less Amount Paid | -$2,893.37 |
| **Amount Owed Per Policy** | **$24,209.05** |
| Statutory Interest To Date | $1,856.03 |
| Attorney's Fees | $7,000.00[1] |
| Mental Anguish | $10,000.00 |
| **Total Actual Damages To Date** | **$43,065.08** |

In addition to the above mentioned damages, the Texas Insurance Code[2] also allows for a jury to award treble damages up to three times the amount of actual damages. If this case goes to trial, we are confident that treble damages will be awarded. **That would make USAA Texas Lloyd's Company potentially responsible for an additional $86,130.16 in damages.**

We reserve the right to adjust the damage amounts once repairs are commenced and/or completed if there is additional damage. Further, we reserve the right to adjust these amounts to conform to the information and evidence that will be available to us at the time of trial, should litigation be necessary.

In conjunction with the damages outlined above, we hereby demand **$43,065.08** to be paid in exchange for a release of any and all claims on behalf of Angela Brooks-Brown.

If this matter is not settled quickly, the amount of time spent on this claim and the amount of attorney fees will increase. We have been assigned an interest in this claim against your company. The purpose of this letter is to encourage you to resolve our client's claim in a fair and equitable manner without the need for further legal action. In the event you fail to timely respond to this letter with an offer of settlement that is acceptable to our client, we will have no alternative but to proceed with litigation against your company. Please forward all further correspondence regarding this claim to our firm. If you have any written or recorded statements or other investigation information pertaining to this claim, please forward a copy to me.

---

[1] This amount is based, in the opinion of Danny Ray Scott pursuant to the *Arthur Andersen v. Perry Equipment, Corp.* 945 S.W. 2d 812 and the attorney's fees as itemized through today and do not include any itemization of future attorney's fees incurred nor is any calculator applied to the gross amount. Based on experience of counsel, if this case is not resolved but proceeds to trial, attorney's fees will approximate $175,000.00 - $350,000.00 (based on the amount of work involved and required to prepare the case for trial).

[2] Treble damages are figured at three times actual damages pursuant to Tex. Ins. Code Art. 541.152(3)(b) factors as explained in *Arthur Andersen v. Perry Equipment, Corp.* 945 S.W. 2d 812. This amount will increase as the case gets nearer to trial. In the likelihood of trial, Plaintiff anticipates that the amount of attorney's fees will be substantially higher than this amount.

If you are interested in resolving this matter without the necessity of further litigation, please contact us within sixty (60) days. Please forward this letter to whoever needs to review it.

Request is made for the check to be made payable to **Angela Brooks-Brown and her attorney DANNY RAY SCOTT.** Our federal tax I.D. number is 20-0027661. I will provide a W-9 upon request.

Sincerely,

/s/ Danny Ray Scott

DANNY RAY SCOTT

# EXHIBIT B

FILED FOR RECORD
Carolyn L. Guidry
6/8/2015 12:00:00 AM
COUNTY CLERK
JEFFERSON COUNTY
0127771

CAUSE NO. **0127771**

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| v. | § | AT LAW NO. 1 |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | JEFFERSON COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION FOR APPOINTMENT OF APPRAISAL UMPIRE**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ANGELA BROOKS-BROWN (herein after referred to as "Plaintiff"), complaining of Defendant, USAA TEXAS LLOYD'S COMPANY, (hereinafter referred to as "USAA") and hereby respectfully show unto the Court as follows:

### DISCOVERY CONTROL PLAN

1.      Plaintiff intends for discovery to be conducted under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

### PARTIES

2.      Plaintiff, ANGELA BROOKS-BROWN, is an individual and resident of Bell County and citizen of the state of Texas.

3.      Defendant, USAA TEXAS LLOYD'S COMPANY, hereinafter "USAA," is a domestic insurance carrier, incorporated and engaging in the business of insurance in the State of Texas, and may be served with process by serving its President, Laura M. Bishop, 9800 Fredericksburg Road, San Antonio, Texas 78288.

### VENUE

4.      Venue is proper in Jefferson County, Texas, because the insurance contract

Page 1 of 4

hj

drafted by the defendant grants the parties the right to petition a judge of a court of record in the state where the "residence premises" is located to appoint an appraisal umpire.

FACTS

5.      Plaintiff is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A, issued by the Defendant (hereinafter referred to as the "Policy").

6.      Plaintiff owned the insured property that is specifically located at ████████ ████████████ (hereinafter referred to as the "Property").

7.      Defendant or its agent sold the Policy, insuring the property, to Plaintiff.

8.      On or about April 4, 2014, Plaintiff's property sustained fire damage, specifically to the fence. Plaintiff filed a claim with her insurance company, USAA for the damages to her property caused by the fire.

9.      On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage.  Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof.   Plaintiff's property also sustained exterior damage to the cornice and siding, dryer vent, windows, fence, garage door and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

10.      Plaintiff submitted claims to USAA against the Policy for damage caused to the property as a result of the fire and the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy.  USAA assigned claim number 024234074-3 to Plaintiff's fire claim and claim number 024234074-4 to Plaintiff's wind and hail claim.

11.     On March 5, 2015, plaintiff communicated to defendant that plaintiff disagreed with defendant's determination of the amount of loss with respect to plaintiff's insurance claim. Plaintiff also communicated to defendant that plaintiff wished to invoke the insurance policy's appraisal clause.

12.     The insurance policy's appraisal clause states the following:  "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of the loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss."

13.     The requisite period of time has expired and the appraisers have not agreed upon an umpire.  Plaintiff therefore requests that this Court select an umpire in accordance with and as allowed by the policy's provisions.

### PRAYER

14.     For these reasons, Plaintiff asks that this Court appoint an umpire for the insurance appraisal.  Plaintiff also asks the Court to issue orders as necessary to validate any decision the umpire makes and to issue any orders necessary to conclude this matter at the appropriate time.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405


*/s/Danny Ray Scott*

Danny Ray Scott
State Bar No. 24010920
danny@scottlawyers.com
Virginia Izaguirre
State Bar No. 24083230
virginia@scottlawyers.com
Sean M. Patterson
State Bar No. 24073546
sean@scottlawyers.com

*Attorneys for Plaintiff*

# EXHIBIT C



**SCOTT**
LAW OFFICES

o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

March 5, 2015

*Via Facsimile: (214) 665-0199*
Ms. Lisa A. Songy
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney, Suite 250
Dallas, Texas 75204

> Re:  Cause No. 272,693-B; *Angela Brooks-Brown v. USAA Texas Lloyds Company*; In the
> 146th Judicial District Court, Bell County, Texas

Dear Ms. Songy:

This letter is sent to advise you that the plaintiff in the referenced action hereby invokes the appraisal provision for the property pertaining to the above referenced case, Policy Number LLYD 02423 40 74 90A, Pursuant to Section I Conditions, Appraisal:

"If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

We hereby request that you provide the identity of and contact information for defendant's appraiser no later than March 26, 2015.

We look forward to hearing from you.

Sincerely,

DANNY RAY SCOTT

# EXHIBIT D

 **SCOTT**
LAW OFFICES

o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

April 20, 2015

*Via Facsimile: 214-665-0199*
Lisa A. Songy
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204

Re:     Angela Brooks-Brown v. USAA Texas Lloyd's Company; Cause No. 272,693-B; In the
146th Judicial District Court; Bell County, Texas

Dear Ms. Songy:

This letter is sent to advise you that the Plaintiff has appointed Darrell Quinney of Loss
Solutions as her appraiser for the property pertaining to the above referenced matter.

Mr. Quinney's phone number is 979-234-2400, and his email is dq@loss-solution.com.

Should you have any questions or require additional information, please do not hesitate to
contact our office at 409.833.5400.

Sincerely,

Jo Ann Haynes, Paralegal to
DANNY RAY SCOTT

# EXHIBIT E

# Tollefson Bradley Mitchell & Melendi, LLP

2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Facsimile:   214.665.0199
Telephone:   214.665.0100

Lisa A. Songy                                          Direct: 214.665.0107
Admitted in Texas and California                       lisas@tbmmlaw.com

April 23, 2015

*Via Facsimile (409) 833-5405*
Mr. Danny Ray Scott
Scott Law Offices
350 Pine Street, Suite 300
Beaumont, Texas  77701

      Re:    *Angela Brooks-Brown v. USAA Texas Lloyd's Company*, Cause No.
            272,693-B, In the 146th Judicial District Court of Bell County, Texas

Dear Mr. Scott:

      I am in receipt of your paralegal's letter naming Darrell Quinney as Ms. Brooks-Brown's appraiser in this matter.  We object to your firm's use Mr. Quinney as an appraisal in this matter as you have identified him as an expert witness in this matter and in fact sought to quash a deposition on written questions to Mr. Quinney because he was your expert.  Therefore,  you have already identified Mr. Quinney as an advocate for your client and he does not meet the impartiality test of the policy in terms of being a competent and impartial appraisal.  Further, we have questions regarding Mr. Quinney's competency.  Thus, we will object to any appraisal award which Mr. Quinney is a part of as not being proper under the policy.

      However, in compliance with the policy, USAA hereby designates Mark West as its appraiser in this matter.  Mr. West can be reached at (713) 824-2773.

      Further USAA does not waive any other right it may have to challenge any appraisal award in this matter.  If you have any questions, please feel free to contact me.

                  Very truly yours,

                  Lisa A. Songy

LAS/cv
2015.001/ltr to Danny R. Scott

cc:    Ms. Jo Ann Haynes – Paralegal to Danny Ray Scott

# EXHIBIT F



o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

June 10, 2015

*Via Facsimile: (214) 665-0199*
Ms. Lisa A. Songy
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney, Suite 250
Dallas, Texas 75204

> Re:  Cause No. 0127771; *Angela Brooks-Brown v. USAA Texas Lloyd's Company*; In
> the County Court at Law No. 1 of Jefferson County, Texas

Dear Ms. Songy:

I am in receipt of USAA's Motion for Appointment of Umpire filed in Cause No. 272,693-B; *Angela Brooks-Brown v. USAA Texas Lloyds Company*; In the 146th Judicial District Court, Bell County, Texas. Plaintiff filed a nonsuit of all of her claims in that Bell County proceeding on June 8, 2015. I have verified that you and your paralegal received notice of that nonsuit. In addition, on June 8, 2015, plaintiff filed an original petition in the County Court at Law No. 1 of Jefferson County, Texas asking the judge of that court to appoint an umpire in the Angela Brooks-Brown/USAA appraisal proceeding. USAA will be served with a copy of that petition pursuant to the Texas Rules of Civil Procedure and will be afforded an opportunity to appear and be heard.

As you state in your motion, with regard to the appointment of an umpire, USAA's insurance contract states that the insured or USAA may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. On June 8, 2015, and prior to the filing of your Motion for Appointment of Umpire in the referenced matter, the insured asked the judge of the County Court at Law No. 1 of Jefferson County, Texas to appoint an umpire in the Angela Brooks-Brown/USAA appraisal proceeding.

There is currently no legal action pending in Bell County regarding the Angela Brooks-Brown matter, as the plaintiff has nonsuited all of her claims against USAA as of June 8, 2015. Furthermore, the insured asked a Jefferson County court to appoint an umpire in her appraisal proceeding. We therefore request that you withdraw your motion and respect the Jefferson County court's authority to appoint an umpire. If you choose to proceed with your motion in the nonsuited Bell County matter, we hope that you will ensure that the Bell County court is

aware of the pending legal action in Jefferson County in which the insured has asked a court in that county to appoint an umpire.

I have attached a copy of the Jefferson County petition for your records and review.

Sincerely,

DANNY RAY SCOTT

FILED FOR RECORD
Carolyn L. Guidry
6/8/2015 12:00:00 AM
COUNTY CLERK
JEFFERSON COUNTY
0127771

CAUSE NO. **0127771** _____

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| v. | § | AT LAW NO. 1 |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | JEFFERSON COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION FOR APPOINTMENT OF APPRAISAL UMPIRE**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ANGELA BROOKS-BROWN (herein after referred to as "Plaintiff"), complaining of Defendant, USAA TEXAS LLOYD'S COMPANY, (hereinafter referred to as "USAA") and hereby respectfully show unto the Court as follows:

**DISCOVERY CONTROL PLAN**

1.      Plaintiff intends for discovery to be conducted under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

**PARTIES**

2.      Plaintiff, ANGELA BROOKS-BROWN, is an individual and resident of Bell County and citizen of the state of Texas.

3.      Defendant, USAA TEXAS LLOYD'S COMPANY, hereinafter "USAA," is a domestic insurance carrier, incorporated and engaging in the business of insurance in the State of Texas, and may be served with process by serving its President, Laura M. Bishop, 9800 Fredericksburg Road, San Antonio, Texas 78288.

**VENUE**

4.      Venue is proper in Jefferson County, Texas, because the insurance contract

Page 1 of 4

hj

drafted by the defendant grants the parties the right to petition a judge of a court of record in the state where the "residence premises" is located to appoint an appraisal umpire.

## FACTS

5.      Plaintiff is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A, issued by the Defendant (hereinafter referred to as the "Policy").

6.      Plaintiff owned the insured property that is specifically located at ██████████ ██████████ (hereinafter referred to as the "Property").

7.      Defendant or its agent sold the Policy, insuring the property, to Plaintiff.

8.      On or about April 4, 2014, Plaintiff's property sustained fire damage, specifically to the fence. Plaintiff filed a claim with her insurance company, USAA for the damages to her property caused by the fire.

9.      On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage.  Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof.  Plaintiff's property also sustained exterior damage to the cornice and siding, dryer vent, windows, fence, garage door and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

10.     Plaintiff submitted claims to USAA against the Policy for damage caused to the property as a result of the fire and the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy.  USAA assigned claim number 024234074-3 to Plaintiff's fire claim and claim number 024234074-4 to Plaintiff's wind and hail claim.

11.    On March 5, 2015, plaintiff communicated to defendant that plaintiff disagreed with defendant's determination of the amount of loss with respect to plaintiff's insurance claim. Plaintiff also communicated to defendant that plaintiff wished to invoke the insurance policy's appraisal clause.

12.    The insurance policy's appraisal clause states the following: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

13.    The requisite period of time has expired and the appraisers have not agreed upon an umpire. Plaintiff therefore requests that this Court select an umpire in accordance with and as allowed by the policy's provisions.

### PRAYER

14.    For these reasons, Plaintiff asks that this Court appoint an umpire for the insurance appraisal. Plaintiff also asks the Court to issue orders as necessary to validate any decision the umpire makes and to issue any orders necessary to conclude this matter at the appropriate time.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone:  (409) 833-5400
Facsimile:  (409) 833-5405


_/s/Danny Ray Scott_
Danny Ray Scott
State Bar No. 24010920
danny@scottlawyers.com
Virginia Izaguirre
State Bar No. 24083230
virginia@scottlawyers.com
Sean M. Patterson
State Bar No. 24073546
sean@scottlawyers.com

_Attorneys for Plaintiff_

CAUSE NO. 272,693-B

| ANGELA BROOKS-BROWN | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| v. | § | 146TH JUDICIAL DISTRICT |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | BELL COUNTY, TEXAS |

### PLAINTIFF'S PLEA IN ABATEMENT TO DEFENDANT'S MOTION FOR APPOINTMENT OF UMPIRE FOR INSURANCE APPRAISAL PROCEEDING

Plaintiff, Angela Brooks-Brown, asks the Court to abate defendant USAA Texas Lloyd's Company's motion for appointment of umpire for insurance appraisal proceeding because the matter is already pending in another forum.

### INTRODUCTION & BACKGROUND

1.    Plaintiff, Angela Brooks-Brown, sued defendant, USAA Texas Lloyd's Company ("USAA"), for breach of contract, violations of the Texas Insurance Code, violation of the Texas Deceptive Trade Practices Act, and common law fraud.

2.    On March 5, 2015, plaintiff invoked the insurance policy's appraisal provision and notified defendant in accordance with the policy's requirements. *See* Exhibit A. On June 6, 2015, plaintiff's counsel filed a notice of nonsuit of all of plaintiff's claims. *See* Exhibits B and C.

3.    The contract of insurance that governs plaintiff's claim is a contract that defendant USAA Texas Lloyd's Company unilaterally drafted and sold to plaintiff. In this insurance contract, USAA Texas Lloyd's Company granted express permission to plaintiff to ask any judge in the state of Texas to appoint an umpire in the appraisal proceeding. *See* Exhibit D (Bates No. UTLC000110).

4.    On June 6, 2015, plaintiff's counsel filed a petition in Jefferson County, Texas asking a Jefferson County judge to appoint an umpire in the appraisal. *See* Exhibits E and F. Although

FWD TO CC 7/10/15

146TH DISTRICT COURT
BELL COUNTY, TEXAS

7/10/2015

plaintiff filed the petition on Saturday, June 6, 2015, the clerk did not file stamp the document until midnight on June 8, 2015. *Id*. Simultaneously with the filing of the petition, plaintiff asked the Jefferson County Clerk to serve USAA Texas Lloyd's Company with the petition and plaintiff paid the fees associated with that request. *See* Exhibit E. After plaintiff filed the petition in Jefferson County asking a court to appoint an appraisal umpire, on June 8, 2015, defendant filed its motion in this Court asking the court to appoint an umpire for appraisal. *See* Defendant's Motion.

ARGUMENT & AUTHORITIES

**A. THE COURT SHOULD ABATE DEFENDANT'S MOTION BECAUSE THE JEFFERSON COUNTY COURT HAS DOMINANT JURISDICTION**

5.      The Court should abate defendant's motion because plaintiff has already filed a petition in Jefferson County, Texas asking a court to appoint an appraisal umpire, giving that court dominant jurisdiction. Dominant jurisdiction belongs to the first court in which suit is properly filed. *In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011); *Wyatt v Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988). When the subject matter of two suits is inherently interrelated, the court where the second suit was filed must grant a motion to abate. *In re Puig*, 351 S.W.3d at 305-306. Any subsequent suit involving the same parties and the same controversy must be dismissed if a party to that suit calls the second court's attention to the pendency of the prior suit by a plea in abatement. *In re Sims*, 88 S.W.3d 297, 302 (Tex. App.—San Antonio 2002, no pet.).

6.      In *State Farm Lloyds v. Johnson* and *Gilbert Texas Construction v Underwriters at Lloyds*, the Supreme Court of Texas emphasizes the contractual nature of the appraisal right. See *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009); *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The Court states, "The principles courts use when

interpreting an insurance policy are well established. Those principles include construing the policy according to general rules of contract construction to ascertain the parties' intent. First, we look at the language of the policy because we presume parties intend what the words of their contract say." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d at 895. The Court urges courts to honor the parties' agreement and not remake their contract by reading additional provisions into it. *Id*. Like any other contractual provision, appraisal clauses should be enforced. *State Farm Lloyds v. Johnson*, 290 S.W.3d at 895.

7.    Defendant, USAA Texas Lloyd's Company drafted and granted plaintiff express permission to ask any judge of a court of record in the state where the "residence premises" is located to appoint an appraisal umpire.    Specifically, the insurance policy's appraisal clause states the following:  "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  *If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. See* Exhibit D (Bates No. UTLC000110).

8.    Exercising this right granted to plaintiff by defendant, on June 6, 2015, plaintiff's counsel filed a petition in Jefferson County, Texas asking a Jefferson County judge to appoint an umpire in the appraisal. Later, on June 8 2015, defendant filed a motion in this Court to appoint an appraisal umpire. Since plaintiff has previously asked a Jefferson County court to appoint an appraisal umpire, the Jefferson County court has dominant jurisdiction over the issue of the appointment of an appraisal umpire. The policy, written by defendant, expressly grants plaintiff

the right to ask any court in this state to appoint an umpire for appraisal. As a court notes, Texas does not have a statue that exclusively vest jurisdiction to appoint an appraisal umpire in the county where the loss occurred. *Fire Ass'n of Philadelphia v. Ballard*, 112 S.W.2d 532, 534 (Tex. App.— Waco 1938, no pet.).

## CONCLUSION

9.      Plaintiff has filed a petition in Jefferson County asking the court to appoint an umpire for appraisal. Defendant expressly granted plaintiff the right to ask any court in the state to appoint an appraisal umpire. Since plaintiff requested a court in Jefferson County to appoint an umpire before defendant, the Jefferson County court has dominant jurisdiction.

## PRAYER

10.      For these reasons, plaintiff asks the Court, after a hearing, to abate defendant's motion for appointment of an appraisal umpire.

Respectfully submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone:  (409) 833-5400
Facsimile:  (409) 833-5405

 */s/Danny Ray Scott*
——————————————————
DANNY RAY SCOTT
State Bar No. 24010920
danny@scottlawyers.com
VIRGINIA IZAGUIRRE
State Bar No. 24083230
virginia@scottlawyers.com
SEAN M. PATTERSON

State Bar No. 24073546
sean@scottlawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served on all counsel of record in accordance with the Texas Rules of Civil Procedure on July 9, 2015.

*/s/ Danny Ray Scott*

DANNY RAY SCOTT



o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

March 5, 2015

*Via Facsimile: (214) 665-0199*
Ms. Lisa A. Songy
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney, Suite 250
Dallas, Texas 75204

      Re:     Cause No. 272,693-B; *Angela Brooks-Brown v. USAA Texas Lloyds Company*; In the
                 146th Judicial District Court, Bell County, Texas

Dear Ms. Songy:

This letter is sent to advise you that the plaintiff in the referenced action hereby invokes the appraisal provision for the property pertaining to the above referenced case, Policy Number LLYD 02423 40 74 90A, Pursuant to Section I Conditions, Appraisal:

"If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

We hereby request that you provide the identity of and contact information for defendant's appraiser no later than March 26, 2015.

We look forward to hearing from you.

Sincerely,

DANNY RAY SCOTT

 **ProDoc® eFiling 2**

logged in as danny@scottlawyers.com

| Home | Submit Filing | Submit eService | My Filings | My eServices | Firm Management | Resources |

« Back to All Filings                                              🖶 Print Page

**Filed Date & Time**

| Date: | Time: |
|---|---|
| Saturday, June 06, 2015 | 7:04:19 AM |

| **Filing Status Definitions** | **Envelope Information** |
|---|---|

**Envelope Number:** 5573285
**Case Category:** Civil - Contract
**Cause Number:** 272,693-B
**Judge for the Case:** Not Available

**Court Assignment:** Bell County – District Clerk
**Case Type:** Debt/Contract – Debt/Contract
**Case Title:**

| **Envelope Fee** | **Est.Amount** |
|---|---|
| **ProDoc, Inc. or other provider fee:** | |
| eFiling/eService Fee | $3.00 |
| 8.25% Sales Tax | $0.25 |
| **Court Fees:** | |
| Total Court Service Fees | $2.00 |
| **State eFiling System Processing Fees:** | |
| Convenience Fee | $0.15 |
| **Total Envelope Fees:** | $5.40 |

**Payment Information**

**Account Name:** AMEX
**Payment Method:** Credit Card
**Credit Card Type:** AMEX
**Card Number:** XXXX XXXX XXXX 1052
**Card Expiration Date:** 05/2018
**Transaction Amount:** $5.4
**Transaction Status:** Approved
**Transaction ID:** 9179534
**Transaction Order ID:** 005573285-0

**Personal Information**

**Filer:** Danny Scott
**Attorney of Record:** Danny Scott
**Firm or Organization:** Scott Law Offices
**Bar Number:** 24010920

**Service Recipients**

**Shelia Jones**
Email:               sheliaj@tbmmlaw.com
Status:              Sent
Service Opened:      Yes
Served Date/Time:    6/6/2015 7:05:28 AM
[ View Log ]

**Lisa Songy**
Email:               lisas@tbmmlaw.com
Status:              Sent
Service Opened:      Yes
Served Date/Time:    6/6/2015 7:05:29 AM
[ View Log ]

**Sean Patterson**
Email:               sean@scottlawyers.com
Status:              Sent
Service Opened:      No
[ View Log ]

**Virginia Izaguirre**
Email:               virginia@scottlawyers.com
Status:              Sent
Service Opened:      No
[ View Log ]

**Danny Scott**
Email:               danny@scottlawyers.com
Status:              Sent
Service Opened:      Yes
Served Date/Time:    6/6/2015 7:05:41 AM
[ View Log ]

**Adrienne Jackson**
    Email:                   adrienne@scottlawyers.com
    Status:                  Sent
    Service Opened:      Yes
    Served Date/Time:    6/6/2015 7:05:42 AM

[View Log]

**Jo Ann Haynes**
    Email:                   joann@scottlawyers.com
    Status:                  Sent
    Service Opened:      No

[View Log]

**Claudia Villa**
    Email:                   claudiav@tbmmlaw.com
    Status:                  Sent
    Service Opened:      Yes
    Served Date/Time:    6/6/2015 7:05:46 AM

[View Log]

## Notice

| Filing Fees | Filing Information |
|---|---|
| **Total Filing Fees:** $0.00 | **Current Status:** ✓ accepted |
| | **Accepted Date/Time:** 6/9/2015 8:46:59 AM |
| | **Filing Description:** Notice |
| | **Reference Number:** Angela Brooks-Brown |
| | **Comments for Clerk:** |

## Document Information

**Document(s) Filed:**

**Lead Document:**

Angela Brooks-Brown Notice of Nonsuit.doc [Does not contain sensitive data]    **Document Description:** Angela Brooks-Brown Notice of Nonsuit.pdf

Transmitted - Angela Brooks-Brown Notice of Nonsuit.pdf [Does not contain sensitive data]    **Document Description:** Angela Brooks-Brown Notice of Nonsuit.pdf

This site and all contents Copyright ©2003-2015 Thomson Reuters. All rights reserved.

**Loading...**

CAUSE NO. 272,693-B

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | 146th JUDICIAL DISTRICT |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | BELL COUNTY, TEXAS |

**PLAINTIFF'S NOTICE OF NON-SUIT WITHOUT PREJUDICE**

Plaintiff, Angela Brooks-Brown, files this Notice of Non-suit without Prejudice.

At this time, Plaintiff does not desire to pursue the claims in this cause against Defendant USAA Texas Lloyd's Company.  Texas Rule of Civil Procedure 162 provides that "at any time before the plaintiff has introduced all of its evidence…, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes.  Notice of the dismissal or non-suit shall be served…without necessity of court order."  Plaintiff hereby exercises the right to non-suit USAA Texas Lloyd's Company without prejudice from the claims asserted in this specific case.

For these reasons, Plaintiff hereby nonsuits plaintiff's claims against defendant USAA Texas Lloyd's Company without prejudice to the refiling of plaintiff's claims at a later date.

6/8/2015

146TH DISTRICT COURT
BELL COUNTY, TEXAS

Page 1 of 2

Respectfully submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405

/s/ Danny Ray Scott
DANNY RAY SCOTT
State Bar No. 24010920
VIRGINIA IZAGUIRRE
State Bar No. 24083230
SEAN M. PATTERSON
State Bar No. 24073546

ATTORNEYS FOR PLAINTIFF

STATE OF TEXAS

Before me, the undersigned notary public for the State of Texas, on this day personally appeared Mary Ann Rice, Administrative Support Manager and custodian of records of USAA Texas Lloyd's Company, and after being by me duly sworn and upon her oath says that an exact duplicate of the USAA Texas Lloyd's Company, 02423 40 74 90A, including any applicable endorsements and forms, issued to ANGELA BROOKS, effective on May 12, 2014, has been prepared under her direction and is attached hereto.

_____
Mary Ann Rice,
Administrative Support Manager

Subscribed and sworn to before me by said Mary Ann Rice, Administrative Support Manager, this 4 day of October, 2014 at San Antonio, Texas, to certify which witness my hand and seal at office.

DIANA G ARREDONDO
My Commission Expires
August 10, 2016

_____
Diana G Arredondo
Notary Public
State of Texas
My commission expires on August 10, 2016

0901119c9008fad1

USAA Confidential

UTLC000084


# HOMEOWNERS POLICY PACKET

EFFECTIVE: 10-09-13 TO: 10-09-14

MISS ANGELA D BROOKS-BROWN

LLYD    02423 40 74    90A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

1) Go to usaa.com to view policy coverages and home features.

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls: Policy Service (800) 531-8111. Claims (800) 531-8222.
HOCS1

49709-0406

0901119c9008fad1

USAA Confidential

UTLC000085

THIS PAGE INTENTIONALLY LEFT BLANK

USAA Confidential

0901119c9008fad1



USAA TEXAS LLOYD'S COMPANY

9800 Fredericksburg Road - San Antonio, Texas 78288
AMENDED DECLARATIONS PAGE - EFFECTIVE 10/09/13

| Named Insured and Residence Premises | Policy Number |
|---|---|
| ANGELA BROOKS | LLYD 02423 40 74 90A |

Policy Period From: 10/09/13    To: 10/09/14
(12:01 A.M. standard time at location of the residence premises)

---

### SECTION I - COVERAGES AND AMOUNTS OF INSURANCE

| | |
|---|---|
| COVERAGE A - DWELLING PROTECTION | $184,000 |
| COVERAGE B - OTHER STRUCTURES PROTECTION | $46,000 |
| COVERAGE C - PERSONAL PROPERTY PROTECTION | $138,000 |
| COVERAGE D - LOSS OF USE PROTECTION (UP TO 12 MONTHS) | $36,800 |

### SECTION II - COVERAGES AND LIMITS OF LIABILITY

| | |
|---|---|
| Personal Liability – Each Occurrence | $300,000 |
| Medical Payments to Others | $5,000 |

### DEDUCTIBLES (Applies to SECTION I Coverages ONLY)

We cover only that part of the loss over the deductible stated.

| | | |
|---|---|---|
| WIND AND HAIL | $3,680 | (2%) |
| ALL OTHER PERILS | $1,840 | (1%) |

**POLICY PREMIUM for Section I and Section II Coverages Above**        $814.50

**CREDITS AND DISCOUNTS** (Included in policy premium above.)   $760.10 CR
Details on the following page. (If applicable)

### OTHER COVERAGES AND ENDORSEMENTS

Forms and Endorsements are printed on the following page.

### STATE SURCHARGES AND TAXES (Shown below if applicable)

SURCHARGES ARE PRINTED ON THE FOLLOWING PAGE.        $1.79

### TOTAL POLICY PREMIUM

Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes
$816.29

THIS IS NOT A BILL.

---

**FIRST MORTGAGEE:**
JPMORGAN CHASE BANK NA
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 47020
ATLANTA, GA 30362-0020

LOAN NR    1679555013

In witness whereof, this policy is signed on 10/07/13

Steven Alan Bennett, Secretary          Kevin Bergner, President

**REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.**

HO-D1 (07-08)        ATTACH THIS DECLARATION TO PREVIOUS POLICY        87028-0708

0901119c9008fad1

USAA Confidential

UTLC000087



USAA TEXAS LLOYD'S COMPANY
AMENDED DECLARATIONS PAGE - EFFECTIVE      10/09/13

| | **Policy Number** | | **Policy Term:** | 10/09/13 | 10/09/14 |
|---|---|---|---|---|---|
| LLYD | 02423 40 74 | 90A | | **Inception** | **Expiration** |

POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

REMAIN IN EFFECT (Refer to prior Policy Packet(s) for documents not attached.):

| | | |
|---|---|---|
| QR3TXLLD | (07-08) | QUICK REFERENCE-SPECIAL FORM |
| HO-3RTX | (07-08) | HOMEOWNERS SPECIAL FORM |
| HO-ACPTX | (07-12) | AMENDMENT TO CONTRACT PROVISIONS |
| HO-SLS3TX | (07-12) | SPECIAL LOSS SETTLEMENT |
| HO-TX | (05-10) | TEXAS SPECIAL PROVISIONS |
| HO-125TX | (07-08) | HOME PROTECTOR |
| HO-208TX | (07-12) | WATER BACKUP OR SUMP PUMP OVERFLOW |
| HO-728TX | (07-12) | REPLACEMENT COST COVERAGE |

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:

| | |
|---|---|
| AUTO AND HOME COMBINATION DISCOUNT | $90.50 CR |
| CLAIMS FREE DISCOUNT | $90.50 CR |
| HOME AGE DISCOUNT | $552.04 CR |
| PROTECTIVE DEVICE CREDIT | $27.06 CR |

SPECIFICALLY LISTED BELOW ARE SURCHARGES.

TX VOLUNTEER FIRE FUND ASSESSMENT                    $1.79

REASON(S) FOR CHANGE:

MISCELLANEOUS POLICY CHANGES

HO-D2  (07-08)                    10/07/13                                              87029-0708

USAA Confidential

**UTLC000088**

USAA
9800 Fredericksburg Road
San Antonio, Texas 78288

# SPECIAL FORM – HOMEOWNERS POLICY.
**READ YOUR POLICY CAREFULLY**

This policy is a legal contract between you, the policyholder, and us, the insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract. This contract consists of the Declarations page, the policy, and any applicable endorsements.

Your policy provides the coverages and amounts of insurance shown in the Declarations with a premium.

This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

## QUICK REFERENCE

| | Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| DEDUCTIBLE | 3 |
| **SECTION I** | |
| PROPERTY WE COVER | 3 |
| Dwelling Protection | |
| Other Structures Protection | |
| Personal Property Protection | |
| Special Amounts | |
| Property We Do Not Cover | |
| Loss of Use Protection | |
| ADDITIONAL COVERAGES | 7 |
| Debris Removal | |
| Reasonable Repairs | |
| Trees, Shrubs, Plants | |
| Fire Department Charge | |
| Property Removed | |
| Credit Card and Identity Fraud | |
| Loss Assessment | |
| Collapse | |
| Lock Replacement | |
| Refrigerated Products | |
| Land | |
| Glass or Safety Glazing | |
| Landlord's Furnishings | |
| Building Ordinance or Law | |

| | Page |
|---|---|
| Temporary Living Expense | |
| Military Uniforms | |
| War | |
| Electronic Media | |
| LOSSES WE COVER | 13 |
| Dwelling and Other Structures | |
| Personal Property | |
| LOSSES WE DO NOT COVER | 15 |
| CONDITIONS | 18 |
| **SECTION II** | |
| LIABILITY COVERAGES | 24 |
| Personal Liability | |
| Medical Payments | |
| EXCLUSIONS | 25 |
| ADDITIONAL COVERAGES | 28 |
| Claims Expenses | |
| First Aid Expenses | |
| Damage to Property of Others | |
| Loss Assessment | |
| CONDITIONS | 30 |
| **SECTIONS I and II** | |
| CONDITIONS | 31 |

0901119c9008fad1

USAA Confidential

UTLC000089

## AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface and quotation marks when used.

1. "Actual cash value" is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. "Actual cash value" applies to valuation of covered property regardless of whether that property has sustained partial loss, or total loss. The "actual cash value" of lost or damaged property may be significantly less than its replacement cost.

2. "Aircraft" means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. "Bodily injury" means physical injury, sickness or disease, including required care, loss of services and death that results.

   "Bodily injury" does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

4. "Business" means any full or part-time activity arising out of or related to any trade, profession or occupation of any "insured".

5. "Business day" means a day other than Saturday, Sunday or holiday recognized by the State of Texas.

6. "Collapse" means:

   a. A sudden falling or caving in;

   b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered unless it is the direct result of "collapse".

7. "Damages" means compensatory damages the "insured" is legally obligated to pay as a result of "bodily injury" or "property damage" covered by this insurance, but does not include punitive, exemplary or multiple damages.

8. "Hovercraft" means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

9. "Insured" means:

   a. The "member";

   b. Spouse when a resident of the same household; and

   c. Residents of your household who are:

      (1) Your relatives; or

HO-3RTX (07-08)

89645-0708
Page 1 of 34

(2) Other person under the age of 21 and in the care of any prson named above.

Under SECTION II, "insured" also means:

d. With respect to animals, "watercraft" or "personal watercraft" to which this policy applies, any person or organization legally responsible for these animals, "watercraft" or "personal watercraft" which are owned by you or any person included in 9.a., 9.b, or 9.c. above. A person or organization using or having custody of these animals, "watercraft" or "personal watercraft" without consent of the owner is not an "insured".

e. With respect to any vehicle or conveyance to which this policy applies:

(1) "Residence employees" while engaged in your employ or that of any person included in 9.a., 9.b. or 9.c. above; or

(2) Other persons using the vehicle on an "insured location" with your consent.

10. "Insured location" means:

a. The "residence premises";

b. Any premises used by you in connection within 10.a. above;

c. Any part of a premises:

(1) Not owned by any "insured"; and

(2) Where any "insured" is temporarily residing;

d. Vacant land, other than farm land owned by or rented to any "insured";

e. Land owned by or rented to any "insured" on which a one or two family dwelling is being built as a residence for any "insured";

f. Individual or family cemetery plots or burial vaults of any "insured"; or

g. Any part of a premises occasionally rented to an "insured" for other than "business" use.

11. "Member" means the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership number is shown in the Declarations of this policy.

12. "Motor vehicle(s)" means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.

13. "Named peril(s)" means one or more of the perils listed under LOSSES WE COVER - PERSONAL PROPERTY PROTECTION.

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

15. "Personal watercraft" means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

16. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. "Professional services" means any type of service to the public that requires members rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the service and includes, but is not limited to services rendered by dentists, naturopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists, podiatrists, optometrists, nurses, nurse-midwives, veterinarians, pharmacists, architects,

0901119c9008fad1

USAA Confidential

UTLC000091

landscape architects, engineers, accountants, land surveyors, psychologists, attorneys-at-law, therapists, counselors and social workers.

18. **"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

19. **"Residence employee"** means an employee of any **"insured"** whose primary duties are related to the maintenance or use of the **"residence premises"**, including household or domestic service.

20. **"Residence premises"** means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

Where you reside and which is shown as the **"residence premises"** in the Declarations.

**"Residence premises"** also means a two family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

21. **"Sudden and accidental"** means an abrupt, fortuitous event which is unintended from the perspective of a reasonable person.

22. **"War"** means war whether declared or undeclared; civil war; insurrection; rebellion; revolution; any warlike act by friendly or enemy forces, destruction or seizure for a military purpose.

23. **"Watercraft"** means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the applicable amount of insurance that applies, we will pay only that part of the total of all loss payable under SECTION I - PROPERTY WE COVER that exceeds the deductible amount shown in the Declarations.

## SECTION I PROPERTY WE COVER

**COVERAGE A - Dwelling Protection**

We cover:

1. The dwelling on the **"residence premises"** shown in the Declarations, including structures attached to the dwelling;

2. Materials and supplies located on or next to the **"residence premises"** used to construct, alter or repair the dwelling or other structures on the **"residence premises"**; and

3. Custom or permanently installed window treatments and permanently installed carpeting.

Except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

**COVERAGE B - Other Structures Protection**

We cover:

1. Other structures on the **"residence premises"**:

   a. We cover other structures on the **"residence premises"**:

      (1) Set apart from the dwelling by clear space; and

      (2) Sidewalks, driveways and fences; and

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

UTLC000092

(3) Structures connected to the dwelling by only a fence, utility line, or similar connection.

b. We do not cover:

(1) Land, except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Land, including land on which the other structures are located;

(2) Structures used in whole or part for "business" unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

(a) Duties of any "insured's" employment by another; and

(b) Performed solely by an "insured".

2. Other Structures away from the "residence premises".

a. We cover other structures owned by you and located away from the "residence premises", if used by you in connection with the "residence premises".

b. We do not cover:

(1) Other structures located away from the "residence premises":

(a) Being used as a dwelling; or

(b) Capable of being used as a dwelling; or

(c) Used in whole or part for "business"; or

(2) Land, including land on which the other structure is located.

The amount of insurance for all structures will not be more than the amount of insurance shown in the Declarations for Other Structures Protection.

**COVERAGE C - Personal Property Protection**

We cover:

Tangible personal property owned or used by any "insured" while it is anywhere in the world. After a loss and at your request, we will cover the loss of personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by any "insured";

2. A guest or a "residence employee", while the property is in any residence occupied by any "insured".

The amount of insurance for personal property usually located at any "insured's" residence, other than the "residence premises" is limited to 10% of the amount of insurance for Personal Property Protection, or $1,000, whichever is greater.

Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Amounts of Insurance.** The special amounts set out below do not increase the Personal Property Protection amount of insurance. The special amount for each numbered category below is the total amount for each loss for all property in that category.

1. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards and gift certificates including electronic gift certificates.

2. $1,000 for securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

This limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

0901119c9008fad1

USAA Confidential

UTLC000093

3. $1,500 for **"watercraft"** or **"personal watercraft"**, including their trailers, furnishings, equipment and outboard motors.

4. $1,500 for trailers not used with **"watercraft"** or **"personal watercraft"**.

5. $10,000 for loss by theft of jewelry, watches, precious and semi-precious stones, fur garments, including any garment containing fur, which represents its principal value.

6. $2,500 on stamps, trading cards and comic books, including any of these that are part of a collection.

7. $10,000 for loss by theft of firearms.

8. $10,000 for loss by theft of silverware, silver-platedware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This category includes but is not limited to flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. (a) $10,000 for tangible **"business"** property at your residence.

   (b) $1,000 for tangible **"business"** property away from your residence.

10. $3,000 on motorized golf carts and their equipment and accessories. But if, at the time of loss, there is any other insurance covering physical loss to golf carts, then this policy does not apply.

11. $3,000 for motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads. However, this limit does not apply to vehicles not subject to motor vehicle registration which are:

    a. Used to service any **"insured's"** residence, or

    b. Designed for assisting the handicapped.

**Property We Do Not Cover.**

1. Personal property separately described and specifically insured in this or other insurance.

2. Animals, birds or fish.

3. **"Motor vehicle(s)"**. This includes but is not limited to:

   a. Equipment, accessories, and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wires, discs or other media, for use with any such device or instrument, while in or upon the **"motor vehicle"**.

   We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence; or

   b. Designed for assisting the handicapped.

   We also cover:

   a. Motorized golf carts and their equipment and accessories; and

   b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hours and for use off public roads

   subject to the provisions under Special Amounts of Insurance.

4. **"Aircraft"** and parts.

5. **"Hovercraft"** and parts.

6. Personal property of roomers, roommates, boarders, or other tenants. This does not apply to property of roomers, roommates, boarders or tenants who qualify as **"insureds"**.

0901119c9008fad1

USAA Confidential

UTLC000094

7. Personal property in an apartment regularly rented or held for rental to others by any "insured", except as provided in ADDITIONAL COVERAGES, Landlord's Furnishings.

8. Personal property rented or held for rental to others off the "residence premises".

9. "Business" data, records, recordings, images and photographs including such data stored in:

   a. Books of account, drawings or other paper records; or,

   b. Electronic storage media.

   However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

10. Personal data, records, recordings, images, and photographs, regardless of storage media. This includes songs, movies and other audio or video media which you purchase and download onto a computer or portable electronic media player, other than as provided in ADDITIONAL COVERAGES, Electronic Media. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

11. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage.

## COVERAGE D – Loss Of Use Protection

The amount of insurance for Loss of Use shown on the Declarations is the total limit for the coverages that follow.

1. **Additional Living Expense.** If a loss covered under Section - I - LOSSES WE COVER makes that part of the "residence premises" where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

   However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

2. **Fair Rental Value.** If a loss covered under Section I – LOSSES WE COVER makes that part of the "residence premises" rented to others or held for rental by you uninhabitable, we cover the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

3. **Prohibited Use.** If a loss covered under Section I – LOSSES WE COVER results in an order from a civil authority prohibiting you from use of the "residence premises" as a result of direct damage to neighboring premises by a loss covered under Section I – LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks. A neighboring premise is defined as a premises that is adjacent to the "residence premises".

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

0901119c9008fad1

USAA Confidential

UTLC000095

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to the coverage afforded under 1., 2., and 3. above.

## ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if loss to the damaged property is covered under SECTION I - LOSSES WE COVER; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

      This expense is included in the amount of insurance that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the amount of insurance for the damaged property, an additional 5% of that amount of insurance will be available to cover debris removal expense.

   b. We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the **"residence premises"** of:

      (1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

      (2) A neighbor's tree(s) felled by a loss under **"named peril(s)"**.

      provided the tree(s)

      (3) Damage(s) a covered structure; or

      (4) Does not damage a covered structure, but:

      (a) Blocks a driveway on the **"residence premises"** which prevents a **"motor vehicle"** that is registered for use on public roads or property, from entering or leaving the **"residence premises"**; or

      (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

   The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

   This coverage reduces the amount of insurance that applies to the covered property.

   The policy deductible applies.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable loss under Section I - LOSSES WE COVER, we will pay the reasonable expense incurred by you, for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable loss under SECTION I - LOSSES WE COVER. This coverage reduces the amount of insurance that applies to the covered property and does not relieve you of your duties in case of a loss to covered property, as set forth in SECTION I - CONDITIONS 3.d.

   The policy deductible applies.

0901119c9008fad1                          USAA Confidential

UTLC000096

3. **Trees, Shrubs and Other Plants.**

We cover trees, shrubs, plants, lawns, or landscaping on the "residence premises"; for loss caused by the following Losses We Cover: Fire or Lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises", Vandalism or malicious mischief or Theft.

We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under SECTION I – LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under SECTION I – LOSSES WE COVER and for no more than 30 days after the property has been removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

This coverage reduces the amount of insurance that applies to the property being removed.

The policy deductible applies.

6. **Credit Card Coverage and Identity Fraud Expense Coverage.**

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from **Credit Card Coverage** and **Identity Fraud Expense Coverage.**

For the purposes of **Credit Card Coverage** and **Identity Fraud Expense Coverage**, a series of acts committed by any one person in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

a. **Credit Card Coverage** also includes, fund transfer cards, forgery and counterfeit money. Under **Credit Card Coverage**, we pay for all loss and defense costs resulting from:

   (1) The legal obligation of any "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in any "insured's" name;

   (2) Loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any "insured's" name;

   (3) Loss to any "insured" caused by forgery or alteration of any "insured's" check or negotiable instrument written on an "insured's" bank account. This does not include loss by the acceptance of a forged, altered or counterfeit check, or other negotiable instrument, by an "insured".

   (4) Loss to any "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

For losses covered by this additional insurance we will provide defense as follows:

0901119c9008fad1                    USAA Confidential

UTLC000097

(1) We may investigate and settle any claim or suit as we deem to be appropriate. Any duty to defend a claim or suit ends when the amount we pay or tender for the loss equals the applicable amount of insurance.

(2) If a suit is brought against any "insured" as a result of theft or unauthorized use of a credit card or fund transfer card, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense any "insured" against any suit for the enforcement of payment under the forgery coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to **Credit Card Coverage.**

b. Under **Identity Fraud Expense Coverage**, we pay for "expenses" and defense costs incurred by any "insured" as the direct result of "identity fraud".

With respect to the provisions of this coverage only, the following definitions are added:

"Identity Fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of any "insured" with the intent to commit, or aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

"Expenses" means:

(1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchants, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

(4) Loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information resulting from "identity fraud";

(5) Reasonable attorney fees incurred, with our prior consent, for:

(a) Defense of lawsuits brought against the "insured" by merchants or their collection agencies; and

(b) The removal of any criminal or civil judgments wrongly entered against an "insured".

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual "identity fraud".

(7) Research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies resulting from "identity fraud".

This coverage is additional insurance and does not reduce the amount of insurance.

A $100 deductible applies to **Identity Fraud Expense Coverage.**

The following exclusions apply to **Credit Card Coverage** and **Identity Fraud Expense Coverage:**

(1) We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household or any "insured";

0901119c9008fad1                    USAA Confidential                    UTLC000098

(b) By a person who has been entrusted with the card(s) or device(s);

(c) If any **"insured"** has not complied with all terms and conditions under which the cards or devices are issued.

(2) We do not cover loss arising out of **"business"** pursuits, dishonesty, fraud, or criminal activity of any **"insured"**.

7. **Loss Assessment**. We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property, owned by all members collectively, caused by a loss under Section I – LOSSES WE COVER for **DWELLING PROTECTION COVERAGE** AND **OTHER STRUCTURES PROTECTION COVERAGE**, subject to all provisions of the policy.

This coverage does not apply to assessments made as a result of damage caused by:

a. Earthquake; or

b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

The limit of $10,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

This coverage is not limited by the expiration of this policy.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

8. **"Collapse"**. For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving **"collapse"** of a building or any part of a building only when the **"collapse"** is caused by one or more of the following:

a. **"Named peril(s)"** apply to covered buildings and personal property for loss insured by this additional coverage.

b. Decay that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

c. Insect or vermin damage that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the **"collapse"** occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the **"collapse"** of a building.

This coverage reduces the amount of insurance that applies to the damaged covered property.

The policy deductible applies.

9. **Lock Replacement**. When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

0901119c9008fad1                    USAA Confidential

UTLC000099

a. Change the combination in the lock hardware of the doors, or

b. Change the lock hardware of the doors.

The most we will pay for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products.** We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on your **"residence premises"**, as a consequence of power failure or mechanical breakdown. The $500 limit is the most we will pay in any one loss regardless of the number of freezers or refrigerators.

The Power Failure exclusion under Section I – LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION does not apply to Refrigerated Products.

This coverage does not increase the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

11. **Land.** If a loss covered under Section I – LOSSES WE COVER damages a building on the **"residence premises"** insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

This coverage is an additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

12. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material caused by a loss under Section I - LOSSES WE COVER, which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building storm door or storm window.

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

This coverage reduces the amount of insurance that applies to the damaged property.

The policy deductible applies.

13. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, your carpeting and other household furnishings located in an apartment on the **"residence premises"** regularly rented or held for rental to others by any **"insured"**, for loss caused by **"named peril(s)"**, other than theft.

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage reduces the Personal Property Protection amount of insurance.

The policy deductible applies.

14. **Building Ordinance or Law.** For loss caused by a loss under Section I - LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

The limit for this coverage will not be more than 5% of the Coverage A - Dwelling Protection amount of insurance.

0901119c9008fad1                        USAA Confidential

UTLC000100

If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

The policy deductible applies.

15. **Temporary Living Expenses.** We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the "residence premises" is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the "residence premises" because an earthquake, volcanic eruption or landslide has occurred.

This coverage is additional insurance and does not reduce the Loss Of Use Protection amount of insurance.

No deductible applies to this coverage.

16. **Military Uniforms and Equipment.** We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss caused by "named peril(s)" while you are on active or active reserve duty.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

17. **War.** To the extent that coverage for "war" is provided here, item 1.f. under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY**

**PROTECTION** and the "war" exclusion in any endorsement attached to this policy do not apply.

We will pay up to $10,000 for:

a. Direct loss or damage to your personal property caused by "war"; or

b. Abandonment as a consequence of "war" subject to these conditions.

subject to the following conditions:

This coverage applies only:

a. To any "insured" who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

b. To loss that occurs anywhere outside the Continental United States, Alaska and Hawaii.

In addition to compliance with the other provisions of **Your Duties After Loss**, you must:

a. Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

b. Send us, within 90 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

The **Loss Settlement** clause in this policy is changed for loss by "war" only to read:

"War" loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

0901119c9008fad1                        USAA Confidential

UTLC000101

Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

We will adjust all losses with you. We will pay you unless some other person is named in this policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

18. **Electronic Media**, meaning songs, movies and other audio or video media, which you purchased and downloaded onto a computer or portable electronic media player. We will pay up to $250 for a loss covered under **"named peril(s)"**, provided that you maintain records to document the actual purchase of this media. This coverage does not include personal data or records.

This coverage is additional insurance and does not reduce the Personal Property Protection amount of insurance.

The policy deductible applies.

## SECTION I - LOSSES WE COVER

### COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE B - OTHER STRUCTURES PROTECTION COVERAGE

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER - Coverages A and B unless excluded in Section I - LOSSES WE DO NOT COVER.

### COVERAGE C - PERSONAL PROPERTY PROTECTION

We insure against **"sudden and accidental"**, direct physical loss to tangible property described in PROPERTY WE COVER - Coverage C caused by a peril listed below unless the loss is excluded in **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.**

1.  Fire or lightning.

2.  Windstorm or hail.

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

    This peril includes loss to the **"watercraft"**, **"personal watercraft"**, and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3.  Explosion.

4.  Riot or civil commotion.

5.  Aircraft, including self-propelled missiles and spacecraft.

6.  Vehicles, meaning damage caused by or resulting from an impact with a **"motor vehicle"**. This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7.  Smoke, meaning **"sudden and accidental"** damage from smoke.

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

UTLC000102

This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief.**

9. **Theft**, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, if other permanent residency is established or claimed elsewhere;

   b. In or to a dwelling under construction, or materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. From that part of a **"residence premises"** rented by any **"insured"** to a person who does not qualify as an **"insured"**.

   This peril does not include loss caused by theft that occurs away from the **"residence premises"** of:

   a. Property while at any other residence owned by, rented to, or occupied by any **"insured"** unless the **"insured"** has stayed at the temporary residence at any time during the 60 days immediately before the loss;

   b. **"Watercraft"**, or **"personal watercraft"** including their furnishings, equipment and outboard motors; or

   c. Trailers and campers.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet,** which causes damage to property contained in a building.

12. **Discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. A plumbing system does not include a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump.

    This peril does not include loss:

    a. To the system or appliance from which the water or steam escaped; or

    b. Caused by or resulting from freezing except as provided in the peril of Freezing below; or

    c. On the **"residence premises"** caused by discharge or overflow which occurs off the **"residence premises"**.

13. **Tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

    This peril does not include loss on the **"residence premises"** if you have failed to:

    a. Maintain heat in the building; or

    b. Shut off the water supply and drain the system and appliances of water.

15. **Damage from artificially generated electrical current.**

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

0901119c9008fad1                          USAA Confidential

UTLC000103

# SECTION I - LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

1. Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

   (i) The cause of the excluded event or damage that; or

   (ii) Other causes of the loss that; or

   (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

   (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

   produce the loss.

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have:

      (1) Maintained heat in the building; or

      (2) Shut off the water supply and drained the system and appliances of water;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) Swimming pool, hot tub, or spa, including their filtration and circulation system; or

      (2) Fence, pavement, patio; or

      (3) Foundation, retaining wall or bulkhead; or

      (4) Pier, wharf or dock.

   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   d. Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   e. Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

   f. Wear and tear, marring, deterioration;

   g. Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

   h. Smog, rust, electrolysis or other corrosion;

   i. Smoke from agricultural smudging or industrial operations;

   j. Discharge, dispersal, seepage, migration, release or escape of **"pollutants"** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by **"named peril(s)"** of this policy.

   k. Birds, rodents, insects;

0901119c9008fad1

USAA Confidential

UTLC000104

l. Animals owned or kept by any "**insured**".

m. Vermin meaning animals, other than (m.) above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

n. Nesting, infestation, discharge or release of waste products or secretions, by any birds, rodents, insects, vermin, or animals owned or kept by an "**insured**".

o. Pressure from, or presence or intrusion of, tree, shrub or plant roots.

2. If items 1.f. through 1.o. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

3. If any item in 1. above directly causes a "**named peril(s)**" to occur, the resulting damage produced by the "**named peril(s)**" is covered unless otherwise excluded or excepted elsewhere in this policy.

## LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:

   (i) The cause of the excluded event or damage that; or

   (ii) Other causes of the loss that; or

   (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

   (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

produce the loss.

a. **Ordinance or Law**, meaning the increased cost of demolition repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

   (1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   (2) Landslide; mudslide or mudflow;

   (3) Subsidence, sinkhole, erosion or movement resulting from improper compaction, site selection or any other external forces;

   (4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;

unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of building, storm door or storm window results and then we will pay only for the resulting loss.

c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

   (1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

UTLC000105

(2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device; or

(3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

(4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure;

unless direct loss by fire, explosion or theft results from water damage and then we will pay only for the resulting loss.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **"residence premises"** except as provided in ADDITIONAL COVERAGES, Refrigerated Products.

If damage caused by a loss insured under Section I - LOSSES WE COVER results on the **"residence premises",** we will pay only for that damage.

e. **Neglect,** by or failure of any **"insured"** to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f. **"War"** and any consequence of **"war",** except as provided in ADDITIONAL COVERAGES, War. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** meaning

(1) Any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

(2) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Section I - LOSSES WE COVER.

(3) This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss,** meaning loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

This exclusion does not apply to an **"insured"** who has not cooperated in or contributed to the creation of an intentional loss, if that **"insured"** has:

(1) Filed a police report, and

(2) Cooperated with law enforcement investigation or prosecution

relating to any other **"insured",** causing the intentional loss.:

Payment to an **"insured",** under this exception to exclusion **1.h.** will be limited to the insurable interest of the **"insured"** in such property, less any payments made to a mortgagee or other party with a legal secured interest in the property and subject to the other terms and conditions of this policy.

As a condition of payment for intentional loss caused by another **"insured"** under this exception to exclusion **1.h.,** we may require an assignment of rights of recovery to the extent payment is made by us.

0901119c9008fad1                          USAA Confidential

UTLC000106

i. **Microbial Organisms**, including but not limited to mold, mold spores, fungus, bacterium or parasitic microoganisms.

j. **"Collapse"**, other than as provided in ADDITIONAL COVERAGES, "Collapse".

k. **Diminution in value**, meaning any reduction in value that would remain after damaged property is repaired or replaced.

l. **Wet rot, dry rot, or deterioration.**

m. **Settling, cracking, shrinking, bulging** or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail, or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, negligent, inadequate or defective;**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or maintenance.

This limitation applies to loss or damage to any property on or off the **"residence premises"**.

## SECTION I - CONDITIONS

1. **Insurable Interest and Amount of Insurance.**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

b. For more than the applicable amount of insurance

whichever is less.

Each time there is a loss to any building insured under Coverage A - Dwelling Protection or Coverage B - Other Structures Protection, the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to that amount of insurance shown on the Declarations page.

A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This provision shall not apply to personal property.

0901119c9008fad1                          USAA Confidential

UTLC000107

**2. Residential Community Property Clause.**

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

**3. Your Duties After Loss.** In case of a loss to which this insurance may apply you must see that the following are done:

a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

c. Notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage;

d. (1) Protect the property from further damage;

(2) Make reasonable and necessary repairs to protect the property; and

(3) Keep an accurate record of repair expenses;

e. Cooperate with us in the investigation of a claim;

f. At our request prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

g. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to and sign, while not in the presence of any other **"insured"**:

(a) Statements; and

(b) Examinations under oath; and

(4) Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so.

h. Send to us, within 91 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the **"insured"** and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimate;

(6) The inventory of claimed personal property described in 2.f. above;

(7) Receipts for Additional Living Expenses and Temporary Living Expenses incurred and records that support the Fair Rental Value loss; and

(8) Evidence or affidavit stating the amount and cause of loss that supports a claim under ADDITIONAL COVERAGES, Credit Card Coverage, and receipts, bills or other records that support your claim for expenses under Identity Fraud Expense Coverage.

0901119c9008fad1                    USAA Confidential

UTLC000108

**4. Our Duties After Loss:**

a. Within 15 days after we receive your written notice of claim, we must:

   (1) Acknowledge receipt of the claim. If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment.

   (2) Begin any investigation of the claim.

   (3) Specify the information you must provide in accordance with **Your Duties After Loss** (item 3. above).

   We may request more information, if during the investigation of the claim such additional information is necessary.

b. After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

   (1) Within 15 **"business days"**; or

   (2) Within 30 days if we have reason to believe the loss resulted from arson.

c. If we do not approve payment of your claim or require more time for processing your claim, we must:

   (1) Give the reasons for denying your claim, or

   (2) Give the reasons we require more time to process your claim. But we must either approve or deny your claim within 45 days after requesting more time.

**5. Loss Settlement.** We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage. Subject to the amount of insurance covered losses are settled as follows:

a. For the following property:

   (1) Personal property; and

   (2) Awnings, outdoor antennas, satellite dishes, and outdoor equipment, whether or not attached to the buildings; and

   (3) Structures that are not buildings; and

   (4) All covered structures whether or not they are buildings, if located away from the **"residence premises"**.

   We will pay the lesser of:

   (1) The **"actual cash value"**; or

   (2) Our cost to replace the property with property of like kind, quality, age and condition; or

   (3) Our cost to repair or our cost to restore the property to the condition it was in just before the loss.

b. All items under Dwelling Protection and buildings on the **"residence premises"** under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

   (1) When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

   (2) When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the **"actual cash value"**, not to exceed our cost to repair or our cost to replace the damaged part of the property.

HO-3RTX (07-08)

0901119c9008fad1 USAA Confidential UTLC000109

(a) To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

(b) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property whichever is less.

6. **Loss or Damage to a Pair or Set.** In case of loss or damage to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between "**actual cash value**" of the property before and after the loss.

7. **Matching of Undamaged Property.** In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

8. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "**residence premises**" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expense of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the "**actual cash value**", replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

0901119c9008fad1                               USAA Confidential

UTLC000110

9. **Other Insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

If a loss covered by this policy, other than a loss covered by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage or golf cart coverage, is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance.

This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

10. **Suit Against Us.** No action can be brought against us unless you have:

    a. Given us notice of the loss;

    b. Complied with all other policy provisions; and

    c. Started action

    within two years and one day after the cause of action accrues.

11. **Our Option.** If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

If we notify you that we will pay your claim, we must pay with 5 **"business days"** after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 **"business days"** after the date you perform the act.

13. **Abandonment.** You may not abandon property to us for any reason.

14. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the Declarations page as interests appear.

    b. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

    c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

       (1) At our request pays any premiums due under this policy, if you have failed to do so.

       (2) Submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

       (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

       All of the terms of this policy will then apply directly to the mortgagee.

       Failure of the mortgagee to comply with c. (1), c.(2) or c.(3) above shall void this policy as to the interest of the mortgagee.

0901119c9008fad1                          USAA Confidential

UTLC000111

d. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with terms of this policy.

   (1) The mortgagee's rights under the mortgagee will be transferred to us to the extent of the amount we pay.

   (2) The mortgagee's rights to recover the full amount of the mortgagee's claim will not be impaired.

   At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

e. If this policy is canceled, we will give the mortgagee specifically named on the Declarations page written notice of cancellation.

   If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

   If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice.

   The date of cancellation cannot be before the 10th day after the date we mail the notice.

   We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

f. If the property described under Coverage A - Dwelling is foreclosed under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

   The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

g. If we elect not to renew this policy, the mortgagee specifically named on the Declarations page will be given 30 days written notice of the nonrenewal.

15. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

16. **Salvage and Recovered Property.**

   a. We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement Condition. At our option, property that we have paid for or replaced becomes our property.

   b. If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

17. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements which, if known by us, would have caused us not to:

      (1) Issue the policy;

      (2) Issue the policy in as large an amount;

      (3) Provide coverage for the hazard resulting in the loss; or

0901119c9008fad1

USAA Confidential

UTLC000112

(4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim, we may deny coverage or declare the entire policy void as to the interest of all "insureds" and refund the unearned premium as of the date of the conduct described in a., b., or c. above. Any unearned premium refund will be offset by any amounts paid to any "insured" under the policy after the date of the conduct described in a., b., or c. above.

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

18. **Duties to Determine and Maintain Policy Limits.** It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

19. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

20. **Catastrophe Claims.** If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the **Your Duties After Loss, Our Duties After Loss** and **Loss Payment** provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a. Is declared a disaster under the Texas Disaster Act of 1975; or

b. Is determined to be a catastrophe by the Texas Department of Insurance.

21. **Adjustment to Building Cost.** The amount of insurance for Section I, Dwelling Protection, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

Section I, Other Structures Protection, Personal Property and Loss of Use, will also be adjusted. The rules then in use by us will determine the new amounts for these coverages.

These amounts will not be reduced without your consent.

You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against any "insured" for "damages" because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the "damages" for which the "insured" is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for "damages" resulting from the "occurrence" equals our limit of liability. This coverage does not provide defense to any "insured" for criminal prosecution or proceedings.

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

UTLC000113

### COVERAGE F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral expenses. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1. To a person on the **"insured location"** with the permission of any **"insured"**; or

2. To a person off the **"insured location"**, if the **"bodily injury"**:

   a. Arises out of a condition on the **"insured location"** or the ways immediately adjoining;

   b. Is caused by the activities of any **"insured"**;

   c. Is caused by a **"residence employee"** in the course of the **"residence employee's"** employment by any **"insured"**; or

   d. Is caused by an animal owned by or in the care of any **insured**.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

   a. Which is reasonably expected or intended by any **"insured"** even if the resulting **"bodily injury"** or **"property damage"**:

      (1) Is of a different kind, quality or degree than initially expected or intended; or

      (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this exclusion does not apply to an **"insured"** who did not cooperate in or contribute to the creation of the loss if that **"insured"** has:

      (1) Filed a police report; and

      (2) Cooperated with law enforcement investigation or prosecution relating to any other **"insured"** causing the intentional loss.

   This exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

   b. (1) Arising out of or in connection with a **"business"** engaged in by any **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

      (2) Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"**.

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

         (c) In part, as an office, school, studio or private garage.

   c. Arising out of the rendering or failure to render **"professional services"**;

0901119c9008fad1                              USAA Confidential

UTLC000114

d. Arising out of a premises:

(1) Owned by any **"insured"**; or

(2) Rented to any **"insured"**; or

(3) Rented to others by any **"insured"**;

that is not an **"insured location"**;

e. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**; or

(2) The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"motor vehicle"** excluded in paragraph (1) or (2) above.

This exclusion does not apply to the permissive use, loading or unloading of:

(1) A trailer not towed by or carried on a **"motor vehicle"**;

(2) A **"motor vehicle"** designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an **"insured"**; or

(b) Owned by any **"insured"** provided the **"occurrence"** takes place on any **"insured location"**; or

(c) Owned by any **"insured"** and designed or modified to operate at speeds not to exceed 15 miles per hour.

(3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **"occurrence"**, is within the legal boundaries of:

(a) A golfing facility and is parked or stored there, or being used by any **"insured"** to:

(i) Play the game of golf or for other recreational or leisure activity allowed by the facility; or

(ii) Travel to and from an area where **"motor vehicles"** or golf carts are parked or stored; or

(iii) Cross public roads at designated points to access other parts of the golfing facility.

(b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an **"insured's"** residence.

(4) A **"motor vehicle"** not subject to motor vehicle registration which is:

(a) Used to service any **"insured's"** residence; or

(b) Designed for assisting the handicapped; or

(c) In dead storage on an **"insured location"**.

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any **"insured"** to any person of; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

a **"watercraft"** or **"personal watercraft"**.

This exclusion does not apply to any **"watercraft"** owned or borrowed by, or rented to any **"insured"**:

0901119c9008fad1

USAA Confidential

UTLC000115

(1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower; or

(2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any **"personal watercraft"** or **"watercraft"** that is being stored.

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of; or

(2) The entrustment by any **"insured"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

an **"aircraft"** or **"hovercraft"**.

h. Caused directly or indirectly by **"war"** including any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. Arising out of the transmission of a communicable disease by any **"insured"** through sexual contact.

j. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k. Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

l. Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

m. Arising out of any actual, alleged or threatened:

(1) Sexual misconduct; or

(2) Sexual harassment; or

(3) Sexual molestation.

n. Arising out of any actual, alleged or threatened physical or mental abuse. For purposes of this policy abuse means an act that is committed with the intent to cause harm.

Exclusions d., e., f., and g. do not apply to **"bodily injury"** to a **"residence employee"** arising out of and in the course of the **"residence employee's"** employment by any **"insured"**.

2. **Coverage E – Personal Liability** does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II – ADDITIONAL COVERAGES, Loss Assessment.

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of any **"insured location"**; or

(b) Where the liability of others is assumed by any **"insured"** prior to an **"occurrence"**.

unless excluded in (1) above or elsewhere in this policy;

b. **"Property damage"** to property owned by the **"insured"**.

0901119c9008fad1                          USAA Confidential

UTLC000116

c. **"Property damage"** to property rented to, occupied or used by or in the care of any **"insured"**. This exclusion does not apply to **"property damage"** caused by fire, smoke or explosion.

d. **"Bodily injury"** to any person eligible to receive any benefits:

   (1) Voluntarily provided; or

   (2) Required to be provided, whether or not actually provided;

   by any **"insured"** under any:

   (1) Workers' compensation law;

   (2) Non-occupational disability law; or

   (3) Occupational disease law.

e. **"Bodily injury"** or **"property damage"** for which any **"insured"** under this policy.

   (1) Is also an **"insured"** under a nuclear energy liability policy; or

   (2) Would be an **"insured"** under that policy but for the exhaustion of its limit of liability.

   A nuclear energy liability policy is one issued by:

   (1) Nuclear Energy Liability Insurance Association;

   (2) Mutual Atomic Energy Liability Underwriters;

   (3) Nuclear Insurance Association of Canada; or any of their successors'.

f. **"Bodily injury"** to you or any **"insured"** within the meaning of part a., b., or c. of **"insured"** as defined.

g. **"Property damage"** arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of **"pollutants"** however caused and whenever occurring unless resulting from the peril of fire. Any loss cost or expense arising out of any:

   (1) Request, demand or order that any **"insured"** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of **"pollutants"**; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assess the effects of **"pollutants"**.

3. **Coverage F - Medical Payments to Others** does not apply to **"bodily injury"**:

   a. To a **"residence employee"** if the **"bodily injury"**:

      (1) Occurs off the **"insured location"**; and

      (2) Does not arise out of or in the course of the **"residence employee's** employment by an **"insured"**.

   b. To any person eligible to receive benefits:

      (1) Voluntarily provided; or

      (2) Required to be provided;

      under any:

      (1) Workers' compensation law; or

      (2) Non-occupational disability law; or

      (3) Occupational disease law.

   c. From any:

      (1) Nuclear reaction; or

      (2) Nuclear radiation; or

      (3) Radioactive contamination;

      all whether controlled or uncontrolled or however caused; or

      (4) Any consequence of any of these.

0901119c9008fad1                          USAA Confidential

UTLC000117

d. To any person, other than a "residence employee" of any "insured", regularly residing on any part of the "insured location" or residing on any part of the "insured location" for a period in excess of thirty consecutive days prior to the date of loss, unless other permanent residency is established or claimed elsewhere.

# SECTION II - ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability:

1. **Claim Expenses.** We pay:

    a. Expenses we incur and costs taxed against any "insured" in any suit we defend;

    b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

    c. Reasonable expenses incurred by any "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

    d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

    e. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured".

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by any "insured".

   We will not pay for "property damage":

    a. To the extent of any amount recoverable under SECTION I of this policy;

    b. Caused intentionally by any "insured" who is 13 years of age or older.

       However, this exclusion does not apply to an "insured" who did not cooperate in or contribute to the creation of the loss if that "insured" has:

       (1) Filed a police report; and

       (2) Cooperated with law enforcement investigation or prosecution relating to any other "insured" causing the intentional loss.

    c. To property owned by any "insured";

    d. To property owned by or rented to a tenant of any "insured" or a resident in your household; or

    e. Arising out of:

0901119c9008fad1                              USAA Confidential

UTLC000118

(1) A "**business**" engaged in by any "**insured**";

(2) Any act or omission in connection with a premises owned, rented or controlled by any "**insured**", other than the "**insured location**"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of "**aircraft**", "**hovercraft**", "**watercraft**", "**personal watercraft**" or "**motor vehicle**". This exclusion e.(3) does not apply to a "**motor vehicle**" that:

    (a) Is designed for recreational use off public roads,

    (b) Is not owned by any "**insured**"; and

    (c) At the time and place of the "**occurrence**", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

4. **Loss Assessment.** We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, when the assessment is made as a result of:

    a. "**Bodily injury**" or "**property damage**" caused by an "**occurrence**" not excluded under SECTION II of this policy; or

    b. Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "**residence premises**".

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

    a. One "**occurrence**", including continuous or repeated exposure to substantially the same general harmful conditions; or

    b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E – Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

This coverage is not limited by the expiration of this policy.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage E limit is shown in the Declarations. This is our limit for all damages from each "**occurrence**" regardless of the number of "**insureds**", claims made or persons injured. All "**bodily injury**" and "**property damage**" resulting from any one accident or from continuous or repeated exposure to substantially the

same general harmful conditions shall be considered to be the result of one "**occurrence**".

The Coverage F limit is shown in the Declarations. This is our limit for all medical expenses payable for "**bodily injury**" to one person as the result of one accident.

0901119c9008fad1    USAA Confidential    UTLC000119

2. **Severability of Insurance.** This insurance applies separately to each **"insured"**. This condition does not increase our limit of liability for any one **"occurrence"**.

3. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

   a. Concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements which if known by us, would have caused us not to:

      (1) Issue the policy;

      (2) Issue the policy in as large an amount;

      (3) Provide coverage for the hazard resulting in the loss; or

      (4) Issue the policy for the same amount of premium or at the same rate

   relating to the issuance of this policy or in the presentation of a claim we may deny coverage as to the interest of all **"insureds"**.

   We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

4. **Duties After Loss.** In case of an accident or **"occurrence"**, the **"insured"** will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and **"insured"**;

      (2) Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

      (3) Names and addresses of any claimants and witnesses.

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   c. Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence"**.

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

      (3) With the conduct of suits and attend hearings and trials;

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. Under Damage to Property of Others, if we request, submit to us within 60 days after notice of the loss, a sworn statement of loss and show the damaged property, if in the **"insured's"** control.

   f. The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

5. **Duties of an Injured Person - Coverage F - Medical Payments to Others.** The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

0901119c9008fad1                      USAA Confidential

UTLC000120

6. **Payment of Claim - Coverage F - Medical Payment to Others.** Payment under this coverage is not an admission of liability by any "insured" or us.

7. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against any "insured". Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured.** Bankruptcy or insolvency of any "insured" will not relieve us of our obligations under this policy.

9. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

10. **Notice of Settlement of Liability Claim.** We will notify the "insured" in writing of any initial offer to compromise or settle a claim against the "insured" under the liability section of this policy. We will give the "insured" notice within 10 days after the date the offer is made.

    We will notify the "insured" in writing of any settlement of a claim against the "insured" under the liability section of this policy. We will give the "insured" notice within 30 days after the date of the settlement.

# SECTIONS I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in SECTION I or "bodily injury" or "property damage" in SECTION II, which occurs during the policy period.

2. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a. A subsequent edition of this policy; or

   b. An amendatory endorsement.

3. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

   b. If this policy has been in effect for less than 60 days and is not a renewal policy we may cancel this policy if:

      (1) We identify a condition that:

          (a) Creates an increased risk of hazard;

          (b) Was not disclosed in the application for insurance coverage and

          (c) Is not the subject of a prior claim; or

HO-3RTX (07-08)          Page 32 of 34

0901119c9008fad1     USAA Confidential     UTLC000121

(2) Before the effective date of the policy, we have not accepted a copy of a required inspection report that:

  (a) Was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

  (b) Is dated not earlier than the 90th day before the effective date of the policy.

An inspection report is deemed accepted, unless we reject it before the 11th day after the date we receive it.

c. We may also cancel this policy at any time for any of the following reasons

  (1) You do not pay the premium or any portion of the premium when due.

  (2) The Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

  (3) You submit a fraudulent claim.

  (4) There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

d. The effective date of cancellation cannot be before the 10th day after we mail the notice if we cancel for any of the reasons in c. or the 30th day after we mail notice if we cancel for any other reason. Our notice of cancellation must state the reason for cancellation.

This cancellation notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

e. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

f. We may not cancel this policy solely because you are an elected official.

5. **Nonrenewal**. We may elect not to renew this policy. We may do so by letting you and any mortgagee named on the Declarations page, know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, or mailed to you by postal mail at your last known address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

If we fail to give you proper notice of our decision not to renew, you may require us to renew this policy.

a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

b. We may not refuse to renew this policy because you are an elected official.

0901119c9008fad1    USAA Confidential    UTLC000122

c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided above. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

6. **Subrogation.** Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights or recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a. Sign and deliver all related papers;

b. Cooperate with us in a reasonable manner; and

c. Do nothing after a loss to prejudice such rights.

7. **Spouse Access.** The **"member"** and we agree that the **"member"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"member"** and may conduct the same transactions as the **"member"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"member"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the resident spouse to access policy information or conduct transactions on this policy.

8. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. For the purpose of this condition **"insured"** includes:

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"residence premises"**; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material Insurance Services Office, with its permission.

0901119c9008fad1

USAA Confidential

UTLC000123

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Amendment to Contract Provisions
Texas
(Applies to HO-3RTX & HO-6RTX unless otherwise noted)

### DEFINITIONS

5. **"Collapse"** is deleted and replaced by the following:

5. **"Collapse"** means:

   a. A sudden falling or caving in; or

   b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

### SECTION I

### SECTION I - PROPERTY WE COVER

### COVERAGE C - Personal Property Protection

**Under Property We Do Not Cover:**

Item **1.** is deleted.

Item **3.** is deleted and replaced by the following:

3. **"Motor vehicle(s)".** This includes but is not limited to the following while in or upon a **"motor vehicle"**.

   a. Equipment, accessories, and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wire, discs or other media, for use with any such device or instrument.

We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

a. Used solely to service any residence; or

b. Designed for assisting the handicapped.

Subject to the provisions under Special Amounts of Insurance we also cover:

a. Motorized golf carts and their equipment and accessories; and

b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads.

The following is added to **Property We Do Not Cover:**

Controlled substances included on Schedule I as defined by 21 United States Code Section 812, and as changed, updated, and republished by 21 Code of Federal Regulations Part 1308 at the time of loss. This exclusion applies whether or not state law allows use of the substance.

**Under COVERAGE D - Loss of Use Protection:**

The lead-in paragraph is deleted and replaced by the following:

The SECTION I - LOSSES WE DO NOT COVER apply to the coverage provided under Loss of Use below. The amount of insurance for Loss of Use shown in the Declarations is the total limit for the coverages that follow.

Item **3. Prohibited Use** is deleted and replaced by the following:

0901119c9008fad1          USAA Confidential

UTLC000124

3. **Prohibited Use.** If a loss covered under SECTION I - LOSSES WE COVER results in an order from a civil authority prohibiting you from the use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under SECTION I - LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks.

## ADDITIONAL COVERAGES

The lead-in paragraph is deleted and replaced by the following:

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following. The SECTION I - LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated.

HO-3RTX only:

Under **12. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO-6RTX only:

Under **11. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

This coverage does not include loss on the **"residence premises"** if the building containing the **"residence premises"** has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO-3RTX only:

Under **17. War**, item b. is deleted and replaced by the following:

b. Abandonment as a consequence of **"war"**;

## SECTION I - LOSSES WE COVER

## COVERAGE C - PERSONAL PROPERTY PROTECTION

Under **9. Theft**, item a. is deleted and replaced by the following:

a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, even if other permanent residency is established or claimed elsewhere.

Under **14. Freezing** is deleted and replaced by the following:

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **"residence premises"** while the dwelling is unoccupied, if you have failed to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

## SECTION I - LOSSES WE DO NOT COVER

HO-3RTX

## LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION

Item 1.a. is deleted and replaced by the following:

0901119c9008fad1

USAA Confidential

UTLC000125

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed and then, only if you have failed to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain the system and appliance of water.

## SECTION I - CONDITIONS

Item **9. Other Insurance** is deleted and replaced by the following:

9. **Other insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

   If a loss covered by this policy is also covered by other insurance, we will pay as follows:

   a. Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance; or

   b. For a loss to personal property that is separately described and specifically insured by other insurance, whether or not that policy is primary or excess, we will be excess over that insurance for a loss that is also covered under this policy; or

c. For all other coverage we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss; or

d. This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

The following condition is added:

**Reducing The Risk Of Loss**

We may occasionally provide you with products or services that assist you in preventing or reducing the risk of loss, and may provide an incentive for your use of these items.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others**, in item e.:

   This exclusion does not apply to the permissive use, loading or unloading of:

   is deleted and replaced by the following:

   This exclusion does not apply to the ownership, maintenance, permissive use, loading or unloading of:

## SECTION I and II - CONDITIONS

6. **Subrogation** is changed in the HO-3RTX only:

Under item **6. Subrogation**, the first paragraph is deleted and replaced by the following:

6. **Subrogation.** Any "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

0901119c9008fad1                          USAA Confidential

UTLC000126

Item **8. Assignment** is deleted and replaced by the following:

8. **Assignment.** Assignment of any claim or this policy will not be valid unless we give our written consent.

Copyright, USAA, 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-ACPTX (07-12)

0901119c9008fad1

USAA Confidential

UTLC000127

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**
**SPECIAL LOSS SETTLEMENT**
**(HO-3RTX only)**

**Coverage D - Loss of Use Protection , 1. Additional Living Expense** is deleted and replaced by the following:

1. **Additional Living Expense. If** a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

   However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

**TOTAL LOSS - LOSS SETTLEMENT**

**Coverage A - Dwelling Protection**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, for Coverage A – Dwelling Protection only, SECTION I – Conditions, 5. Loss Settlement, item b. is deleted and replaced by the following:

b Under Coverage A – Dwelling Protection: We will pay you the total amount of insurance for **Coverage A - Dwelling Protection** shown in the Declarations.

To receive any additional Coverage A – Dwelling Protection payments for loss to your dwelling under any endorsement or other provisions of this policy, you must complete the actual repair or replacement of the dwelling. The replacement or repair must be completed within two years of the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days. You must then notify us within 30 days after the work has been completed.

When repair or replacement is actually completed, we will pay the lesser of:

(1) The covered additional amount you actually and necessarily spend; or the amount it would cost us to repair or replace the dwelling,

(2) In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**Coverage C - Personal Property Protection**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, and your personal property is destroyed to the extent the property cannot be repaired to its condition prior to the loss we will pay your claim under the following terms:

Items a., b. and c. of the LOSS SETTLEMENT provision of the REPLACEMENT COST COVERAGE – PERSONAL PROPERTY endorsement is deleted and replaced by the following:

0901119c9008fad1

USAA Confidential

UTLC000128

We will pay 75% of the amount of insurance for Coverage C – Personal Property Protection as shown in the Declarations, if this is your primary residence and all of your personal property is located in your dwelling located on the **"residence premises"** at the time of loss.

However, if part of your personal property covered by this endorsement is at another location, or in an undamaged structure on the **"residence premises"** at the time of the loss, payment will be 75% of the Coverage C – Personal Property Protection limit less the covered replacement cost of the personal property not destroyed.

To receive additional payment which exceeds 75% of Coverage C – Personal Property Protection limit, the provisions and terms of the REPLACEMENT COST COVERAGE – PERSONAL PROPERTY endorsement will apply. However, Item b. of the LOSS SETTLEMENT provision is deleted and replaced by:

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed.

In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**Liberalization Clause.**

The provisions of this endorsement will automatically apply to your insurance as of the date we implement this change in your state.

Unless specifically modified by this endorsement all other provisions of the policy to which this endorsement is attached shall apply.

Copyright, USAA 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

UTLC000129

THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY

## TEXAS SPECIAL PROVISIONS

### SECTION I - LOSSES WE DO NOT COVER

In the HO-3RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION** item **1.m.** is deleted and replaced by the following:

**1.m.** Vermin meaning animals, other than l. above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

In the HO-3RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION** and in the HO-6RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION**, item **1.i. Microbial Organisms** is deleted and replaced by the following:

**1.i. Microbial Organisms**, including but not limited to mold, mold spores, fungus, bacterium or parasitic microorganisms. However, we will repair or tear out and replace **"property damage"** resulting from a covered loss even if microbial organisms are present.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2010. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

UTLC000130

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

HOME PROTECTOR
(HO-3RTX only)
Texas

For an additional premium, the following is added to Section I - Conditions, 5. Loss Settlement:

c.  Home Protector Coverage

You agree:

(1) To insure your buildings, under Property We Cover - Dwelling Protection and Other Structures Protection, on the "residence premises" for the full replacement cost at the time this policy is issued; and

(2) To accept any increase in coverage that results from the application of the Adjustment to Building Cost provision, if it is deemed necessary by us. You must pay for any added premium; and

(3) To tell us within 90 days of the start of any additions or other physical changes to building on the "residence premises" which increases the value by the greater of:

(a) $25,000; or

(b) 5% of the current Dwelling Protection amount of insurance.

You must pay any resulting premium.

If you comply with these requirements and if as a result of a covered loss, you have exhausted the amount of insurance:

(1) applying to buildings covered under Property We Cover - Dwelling Protection or Other Structures Protection ; or

(2) provided under ADDITIONAL COVERAGES, Debris Removal; or

(3) provided under ADDITIONAL COVERAGES, Building Ordinance or Law;

then, we will pay up to an additional 25% of the amount of insurance applying to the damaged building. The most we will pay for (1), (2), or (3), either singly or in any combination is 25% or the amount actually and necessarily spent to repair or replace the damaged building, whichever is less.

Except as specifically modified in this endorsement, all provision of the policy to which this endorsement is attached also apply to this endorsement.

Term Premium
INCLUDED

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

UTLC000131

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WATER BACKUP OR SUMP PUMP OVERFLOW
Texas

### SECTION I

This endorsement applies to **PROPERTY WE COVER - Dwelling Protection, Other Structures Protection, Personal Property Protection** and **Loss of Use Protection**.

The following additional coverage is added:

We insure for direct, physical loss caused by:

1. Water or water-borne material which flows into the plumbing system of your dwelling or other structures through sewers or drains located off the **"residence premises"**; or

2. Water which overflows from a sump pump or sump well with a sump pump designed to drain subsurface water from the foundation area even if such overflow results from the mechanical breakdown of the sump pump or a disruption in power. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not apply to loss caused directly or indirectly by any of the following, regardless of whether any other causes or events act concurrently or in any sequence with the excluded event to produce the loss:

1. A general condition of flooding meaning a temporary condition of complete inundation of:

   a. two or more acres of normally dry land area; or

   b. two or more properties

   that includes the inundation of the part of the **"residence premises"** where the **"insured's"** dwelling is located. This applies even if there is a mechanical breakdown or a disruption of power; or

2. the negligence of any **"insured"**

### AMOUNT OF INSURANCE

$10,000 is the most we will pay for any one loss whether resulting from a single condition or series of related conditions.

### SECTION I - LOSSES WE DO NOT COVER

For loss covered by this endorsement, if your policy is the:

HO-3RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item **1.g.** is deleted and replaced by the following:

g. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

HO-6RTX:

If your policy includes the **Unit-Owners Coverage A - Special Dwelling Protection** endorsement, LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, item **1.g.** is deleted and replaced by the following:

g. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

If the policy includes the **Special Personal Property Coverage** endorsement, under LOSSES WE DO NOT COVER, item **r.** is deleted and replaced by the following:

r. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

0901119c9008fad1

USAA Confidential

UTLC000132

Except to the extent of additional coverage provided by the terms of this endorsement **Water Damage** is excluded as provided in HO-3RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage**.

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow

Except to the extent of additional coverage provided by this endorsement, **Water Damage** is excluded as provided in HO-6RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage**.

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**        NO CHARGE

Copyright, USAA, 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-208TX (07-12)                                          Page 2 of 2

0901119c9008fad1

USAA Confidential

UTLC000133

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REPLACEMENT COST COVERAGE - PERSONAL PROPERTY
Texas

We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

### REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article; and

b. Of like quality and usefulness.

### DEDUCTIBLE

The deductible shown on the Declarations Page applies.

### PROPERTY COVERED

a. Personal property covered in Property We Cover – Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

### PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the **"insured"** at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

### LOSS SETTLEMENT

SECTION I – CONDITIONS, Item 5.a **Loss Settlement** does not apply to property covered by this endorsement. Instead the following loss settlement applies:

a. For property that is eligible for replacement cost coverage it is our option to:

(1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

(2) Pay you the cost to repair or restore the property to the condition it was in just before the loss, or

(3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $5,000.

c. You may make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

0901119c9008fad1

USAA Confidential

UTLC000134

d. For property that is not eligible for replacement cost coverage, it is our option to:

(1) pay you the **"actual cash value"**; or

(2) replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition ; or

(3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in the policy to which this endorsement is attached.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**   NO CHARGE

Copyright, USAA, 2012. All rights reserved.

HO-728TX (07-12)

0901119c9008fad1

USAA Confidential

UTLC000135

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REPLACEMENT COST COVERAGE - PERSONAL PROPERTY
Texas

We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

### REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article; and

b. Of like quality and usefulness.

### DEDUCTIBLE

The deductible shown on the Declarations Page applies.

### PROPERTY COVERED

a. Personal property covered in Property We Cover – Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

### PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the "insured" at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

### LOSS SETTLEMENT

SECTION I – CONDITIONS, Item 5.a. Loss Settlement does not apply to property covered by this endorsement. Instead the following loss settlement applies:

a. For property that is eligible for replacement cost coverage it is our option to:

   (1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

   (2) Pay you the cost to repair or restore the property to the condition it was in just before the loss, or

   (3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than "actual cash value" until repair or replacement of the damaged property is completed, unless the entire loss is less than $5,000.

c. You may make a claim for loss on an "actual cash value" basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

0901119c9008fad1

USAA Confidential

UTLC000136

d. For property that is not eligible for replacement cost coverage, it is our option to:

(1) pay you the **"actual cash value"**; or

(2) replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition ; or

(3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in the policy to which this endorsement is attached.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**     NO CHARGE

Copyright, USAA, 2012. All rights reserved.

HO-728TX (07-12)

0901119c9008fad1

USAA Confidential

UTLC000137



Log Out

logged in as danny@scottlawyers.com

| Home | Submit Filing | Submit eService | My Filings | My eServices | Firm Management | Resources |

« Back to All Filings

 Print Page

**Filed Date & Time**

| Date: | Time: |
|-------|-------|
| Saturday, June 06, 2015 | 7:53:39 AM |

**Filing Status Definitions**                **Envelope Information**

**Envelope Number:** 5573310
**Case Category:** Civil - Contract
**Cause Number:** 0127771
**Judge for the Case:** Not Available

**Court Assignment:** Jefferson County - County Clerk
**Case Type:** Insurance
**Case Title:** ANGELA BROOKS BROWN VS USAA TEXAS LLOYDS COMPANY

| Envelope Fee | Est.Amount |
|--------------|-----------|
| **ProDoc, Inc. or other provider fee:** | |
| eFiling/eService Fee | $3.00 |
| 8.25% Sales Tax | $0.25 |
| **Court Fees:** | |
| Total Court Case Fees | $222.00 |
| Total Court Filing Fees | $73.00 |
| Total Court Service Fees | $2.00 |
| **State eFiling System Processing Fees:** | |
| Convenience Fee | $8.68 |
| **Total Envelope Fees:** | **$308.93** |

**Payment Information**

**Account Name:** Chase MasterCard
**Payment Method:** Credit Card
**Credit Card Type:** MASTERCARD
**Card Number:** XXXX XXXX XXXX 8880
**Card Expiration Date:** 10/2018
**Transaction Amount:** $308.93
**Transaction Status:** Approved
**Transaction ID:** 9147967
**Transaction Order ID:** 005573310-0

**Personal Information**

**Filer:** Danny Scott
**Attorney of Record:** Danny Scott
**Firm or Organization:** Scott Law Offices
**Bar Number:** 24010920

**Service Recipients**

**Sean Patterson**
Email:              sean@scottlawyers.com
Status:             Sent
Service Opened:     No
[View Log]

**Virginia Izaguirre**
Email:              virginia@scottlawyers.com
Status:             Sent
Service Opened:     No
[View Log]

**Danny Scott**
Email:              danny@scottlawyers.com
Status:             Sent
Service Opened:     No
[View Log]

**Adrienne Jackson**
Email:              adrienne@scottlawyers.com
Status:             Sent
Service Opened:     No
[View Log]

**Jo Ann Haynes**
Email:              joann@scottlawyers.com
Status:             Sent
Service Opened:     No
[View Log]

## Petition

| Filing Fees | |
|---|---|
| Copies - Service ($1.00 x 4) | $4.00 |
| Issue Citation - Certified Mail | $4.00 |
| Service - Constable - All Other | $65.00 |
| **Total Filing Fees:** | **$73.00** |

### Filing Information

**Current Status:** ✓ accepted
**Accepted Date/Time:** 6/8/2015 8:18:26 AM
**Filing Description:** Petition to Appoint Appraisal Umpire
**Reference Number:** Angela Brooks-Brown
**Comments for Clerk:**

## Document Information

**Document(s) Filed:**

**Lead Document:**

Original - Angela Brooks-Brown Pet to Appoint Umpire.docx.pdf [**Exhibit - Contains sensitive data**]
**Document Description:** Angela Brooks-Brown Petition to Appoint Umpire.pdf

Transmitted - Angela Brooks-Brown Pet to Appoint Umpire.docx.pdf [**Exhibit - Contains sensitive data**]
**Document Description:** Angela Brooks-Brown Petition to Appoint Umpire.pdf

**Attachments:**

Angela Brooks-Brown Cover_sheet.pdf [**Exhibit - Contains sensitive data**]
**Document Description:** Angela Brooks-Brown Cover_sheet.pdf

Transmitted - Angela Brooks-Brown Cover_sheet.pdf [**Exhibit - Contains sensitive data**]
**Document Description:** Transmitted - Angela Brooks-Brown Cover_sheet.pdf

-

This site and all contents Copyright ©2003-2015 Thomson Reuters. All rights reserved.

**Loading...**

FILED FOR RECORD
Carolyn L. Guidry
6/8/2015 12:00:00 AM
COUNTY CLERK
JEFFERSON COUNTY
0127771

CAUSE NO. **0127771** _____

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| v. | § | AT LAW NO. 1 |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | JEFFERSON COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION FOR APPOINTMENT OF APPRAISAL UMPIRE**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ANGELA BROOKS-BROWN (herein after referred to as "Plaintiff"), complaining of Defendant, USAA TEXAS LLOYD'S COMPANY, (hereinafter referred to as "USAA") and hereby respectfully show unto the Court as follows:

**DISCOVERY CONTROL PLAN**

1. Plaintiff intends for discovery to be conducted under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

**PARTIES**

2. Plaintiff, ANGELA BROOKS-BROWN, is an individual and resident of Bell County and citizen of the state of Texas.

3. Defendant, USAA TEXAS LLOYD'S COMPANY, hereinafter "USAA," is a domestic insurance carrier, incorporated and engaging in the business of insurance in the State of Texas, and may be served with process by serving its President, Laura M. Bishop, 9800 Fredericksburg Road, San Antonio, Texas 78288.

**VENUE**

4. Venue is proper in Jefferson County, Texas, because the insurance contract

hi

drafted by the defendant grants the parties the right to petition a judge of a court of record in the state where the "residence premises" is located to appoint an appraisal umpire.

FACTS

5. Plaintiff is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A, issued by the Defendant (hereinafter referred to as the "Policy").

6. Plaintiff owned the insured property that is specifically located at █████████ ████████████ (hereinafter referred to as the "Property").

7. Defendant or its agent sold the Policy, insuring the property, to Plaintiff.

8. On or about April 4, 2014, Plaintiff's property sustained fire damage, specifically to the fence. Plaintiff filed a claim with her insurance company, USAA for the damages to her property caused by the fire.

9. On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage. Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof. Plaintiff's property also sustained exterior damage to the cornice and siding, dryer vent, windows, fence, garage door and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

10. Plaintiff submitted claims to USAA against the Policy for damage caused to the property as a result of the fire and the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy. USAA assigned claim number 024234074-3 to Plaintiff's fire claim and claim number 024234074-4 to Plaintiff's wind and hail claim.

11.     On March 5, 2015, plaintiff communicated to defendant that plaintiff disagreed with defendant's determination of the amount of loss with respect to plaintiff's insurance claim. Plaintiff also communicated to defendant that plaintiff wished to invoke the insurance policy's appraisal clause.

12.     The insurance policy's appraisal clause states the following:  "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of the loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss."

13.     The requisite period of time has expired and the appraisers have not agreed upon an umpire.  Plaintiff therefore requests that this Court select an umpire in accordance with and as allowed by the policy's provisions.

### PRAYER

14.     For these reasons, Plaintiff asks that this Court appoint an umpire for the insurance appraisal.  Plaintiff also asks the Court to issue orders as necessary to validate any decision the umpire makes and to issue any orders necessary to conclude this matter at the appropriate time.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405


_/s/Danny Ray Scott_

Danny Ray Scott
State Bar No. 24010920
danny@scottlawyers.com
Virginia Izaguirre
State Bar No. 24083230
virginia@scottlawyers.com
Sean M. Patterson
State Bar No. 24073546
sean@scottlawyers.com

*Attorneys for Plaintiff*

CAUSE NO. 272,693-B

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | 146TH JUDICIAL DISTRICT |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | BELL COUNTY, TEXAS |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S VERIFIED APPLICATION FOR TEMPORARY INJUNCTION AGAINST PLAINTIFF**

Plaintiff, Angela Brooks-Brown, asks the Court to deny defendant USAA Texas Lloyd's Company's application for temporary injunction against plaintiff because defendant has failed to show it has a right to the relief sought.

**INTRODUCTION & BACKGROUND**

1.    Plaintiff, Angela Brooks-Brown, sued defendant, USAA Texas Lloyd's Company ("USAA"), for breach of contract, violations of the Texas Insurance Code, violation of the Texas Deceptive Trade Practices Act, and common law fraud.

2.    On March 5, 2015, plaintiff invoked the insurance policy's appraisal provision and notified defendant in accordance with the policy's requirements. *See* Exhibit A. On June 6, 2015, plaintiff's counsel filed a notice of nonsuit of all of plaintiff's claims. *See* Exhibits B and C.

3.    The contract of insurance that governs plaintiff's claim is a contract that defendant USAA Texas Lloyd's Company unilaterally drafted and sold to plaintiff. In this insurance contract, USAA Texas Lloyd's Company granted express permission to plaintiff to ask any judge in the state of Texas to appoint an umpire in the appraisal proceeding. *See* Exhibit D (Bates No. UTLC000110).

4.    On June 6, 2015, plaintiff's counsel filed a petition in Jefferson County, Texas asking a Jefferson County judge to appoint an umpire in the appraisal. *See* Exhibits E and F. Although

plaintiff filed the petition on Saturday, June 6, 2015, the clerk did not file stamp the document until midnight on June 8, 2015. *Id*. Simultaneously with the filing of the petition, plaintiff asked the Jefferson County Clerk to serve USAA Texas Lloyd's Company with the petition and plaintiff paid the fees associated with that request. *See* Exhibit E. After plaintiff filed the petition in Jefferson County asking a court to appoint an appraisal umpire, on June 8, 2015, defendant filed its motion in this Court asking the court to appoint an umpire for appraisal. *See* Defendant's Motion for Appointment Umpire for Insurance Appraisal Proceeding. Now defendant files an application for temporary injunction against plaintiff, asking this Court to restrict plaintiff from exercising the contractual right defendant expressly granted to plaintiff.

### ARGUMENT & AUTHORITIES

5.      The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnari v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id*. An applicant for temporary injunction must plead and prove (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id*. An injury is irreparable if the injured party cannot be compensated adequately in damages or if the damages cannot be measured by any certain pecuniary standard. Id. To demonstrate probable injury or harm, an applicant must show an injury for which there can be no real legal measure of damages or none that can be determined with a sufficient degree of certainty. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925-926 (Tex. App.-Dallas 2006, no pet.). At a temporary injunction hearing, the trial court considers whether the applicant has shown a probability of success and irreparable injury. *Id*. at

922. Defendant's application should be denied because defendant has failed to show it has a right to the relief sought.

**A.** *Defendant Expressly Granted Plaintiff the Right to Request a Jefferson County Judge to Appoint an Umpire for the Appraisal Process.*

6.  Plaintiff has a contractual right to request a Jefferson County judge to appoint an umpire. Defendant, USAA Texas Lloyd's Company drafted and granted plaintiff express permission to ask any judge of a court of record in the state where the "residence premises" is located to appoint an appraisal umpire.  Specifically, the insurance policy's appraisal clause states the following:  "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire. ***If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located****. See* Exhibit D (Bates No. UTLC000110). Exercising this right granted to plaintiff by defendant, on June 6, 2015, plaintiff's counsel filed a petition in Jefferson County, Texas asking a Jefferson County judge to appoint an umpire in the appraisal.

7.  In *State Farm Lloyds v. Johnson* and *Gilbert Texas Construction v Underwriters at Lloyds*, the Supreme Court of Texas emphasizes the contractual nature of the appraisal right. See *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009); *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The Court states, "The principles courts use when interpreting an insurance policy are well established. Those principles include construing the policy according to general rules of contract construction to ascertain the parties' intent. First, we

look at the language of the policy because we presume parties intend what the words of their contract say." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d at 895. The Court urges courts to honor the parties' agreement and not remake their contract by reading additional provisions into it. *Id*. Like any other contractual provision, appraisal clauses should be enforced. *State Farm Lloyds v. Johnson*, 290 S.W.3d at 895.

8. Because the insurance contract was drafted by USAA provided express contractual language authorizing plaintiff to ask a judge in Jefferson County to appoint an umpire, plaintiff has the contractual authority to request a judge in Jefferson County to appoint an umpire. Defendant has not produced any evidence that plaintiff waived this contractual right.

**B.** *Dominant Jurisdiction*

9. Defendant incorrectly argues that this Court has dominant Jurisdiction. Plaintiff demanded appraisal pursuant to the terms of the insurance policy. On March 5, 2015, plaintiff invoked appraisal pursuant to the terms of the insurance policy. *See* Exhibit A. On June 6, 2015, plaintiff's counsel filed a notice of nonsuit of all of plaintiff's claims. *See* Exhibits B and C. On June 6, 2015, plaintiff's counsel filed a petition in Jefferson County, Texas asking a Jefferson County judge to appoint an umpire in the appraisal. *See* Exhibits E and F. Although plaintiff filed the petition on Saturday, June 6, 2015, the clerk did not file stamp the document until midnight on June 8, 2015. Simultaneously with the filing of the petition, plaintiff asked the Jefferson County Clerk to serve USAA Texas Lloyd's Company with the petition and plaintiff paid the fees associated with that request. *See* Exhibit E. After plaintiff filed the petition in Jefferson County asking a court to appoint an appraisal umpire, on June 8, 2015, defendant filed its motion in this Court asking the court to appoint an umpire for appraisal.

10.     Dominant jurisdiction belongs to the first court in which suit is properly filed. *In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011); *Wyatt v Shaw Plumbling Co.*, 760 S.W.2d 245, 248 (Tex. 1988).  Since plaintiff has previously asked a Jefferson County court to appoint an appraisal umpire, the Jefferson County court has dominant jurisdiction over the issue of the appointment of an appraisal umpire.

**C.** *Venue is Proper in Jefferson County*

11.     As stated above, the policy drafted by USAA expressly grants plaintiff the right to request a Jefferson County judge to appoint an umpire for appraisal. Strangely, defendant does not mention the policy provision that granted plaintiff this right in its motion. Defendant has not shown any evidence that plaintiff waived this right, which was granted to plaintiff by defendant. Since the policy expressly stated that plaintiff could request "***a judge of court of record in the state where the "residence premises" is located***" to appoint an appraisal umpire, venue is proper in Jefferson County. In exchange for monetary insurance premium payments, USAA gave plaintiff the right to ask any judge in the state of Texas to appoint an umpire.  If USAA wished to restrict umpire-appointing authority to judges located in Bell County, it could have easily drafted a contract that would have contained that restriction.  Now that plaintiff has availed herself of the privileges afforded her under that contract of insurance, USAA now seeks to punish her and/or her attorneys for taking an action that is expressly allowed by the contract.

12.     Defendant also erroneously argues that public policy and Texas venue statutes requires that umpires be appointed by judges sitting in the same county as the insured property. Defendant offers no authority to support this contention. Defendant deliberately confuses the issues of (1) the proper venue for plaintiff's contractual and extra-contractual

claims contained in plaintiff's original petition filed in Bell County; and (2) the proper venue for the appointment of an umpire in the appraisal proceeding. It is obvious that the proper venue for plaintiff's contractual and extra-contractual claims contained in her original petition is Bell County, Texas. However, the contract that defendant USAA Texas Lloyd's Company drafted and for which it accepted financial compensation from plaintiff in exchange for insuring plaintiff's property, granted plaintiff express permission to ask any judge in any one of 254 Texas counties to appoint an umpire in the appraisal proceeding. *See* Exhibit D (Bates No. UTLC000110). As a court notes, Texas does not have a statue that exclusively vest jurisdiction to appoint an appraisal umpire in the county where the loss occurred. *Fire Ass'n of Philadelphia v. Ballard*, 112 S.W.2d 532, 534 (Tex. App.— Waco 1938, no pet.).

**PRAYER**

13. For these reasons, plaintiff asks the Court to deny defendant's application for temporary injunction.

Respectfully submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405

*/s/Danny Ray Scott*
_____
DANNY RAY SCOTT
State Bar No. 24010920
danny@scottlawyers.com
VIRGINIA IZAGUIRRE
State Bar No. 24083230
virginia@scottlawyers.com
SEAN M. PATTERSON
State Bar No. 24073546

sean@scottlawyers.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served on all counsel of record in accordance with the Texas Rules of Civil Procedure on July 9, 2015.

*/s/ Danny Ray Scott*

DANNY RAY SCOTT



o: 409.833.5400
f: 409.833.5405
350 Pine Street, Suite 300
Beaumont, TX 77701-2431
scottlawyers.com

March 5, 2015

*Via Facsimile: (214) 665-0199*
Ms. Lisa A. Songy
TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP
2811 McKinney, Suite 250
Dallas, Texas 75204

   Re:  Cause No. 272,693-B; *Angela Brooks-Brown v. USAA Texas Lloyds Company*; In the
       146th Judicial District Court, Bell County, Texas

Dear Ms. Songy:

This letter is sent to advise you that the plaintiff in the referenced action hereby invokes the appraisal provision for the property pertaining to the above referenced case, Policy Number LLYD 02423 40 74 90A, Pursuant to Section I Conditions, Appraisal:

"If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

We hereby request that you provide the identity of and contact information for defendant's appraiser no later than March 26, 2015.

We look forward to hearing from you.

Sincerely,

DANNY RAY SCOTT

 **ProDoc® eFiling 2**


| Home | Submit Filing | Submit eService | My Filings | My eServices | Firm Management | Resources |

**«** Back to All Filings                                    🖨 Print Page

### Filed Date & Time

| Date: | Time: |
|---|---|
| Saturday, June 06, 2015 | 7:04:19 AM |

| **Filing Status Definitions** | Envelope Information |
|---|---|

**Envelope Number:** 5573285
**Case Category:** Civil - Contract
**Cause Number:** 272,693-B
**Judge for the Case:** Not Available

**Court Assignment:** Bell County – District Clerk
**Case Type:** Debt/Contract – Debt/Contract
**Case Title:**

| Envelope Fee | Est.Amount |
|---|---|
| **ProDoc, Inc. or other provider fee:** | |
| eFiling/eService Fee | $3.00 |
| 8.25% Sales Tax | $0.25 |
| **Court Fees:** | |
| Total Court Service Fees | $2.00 |
| **State eFiling System Processing Fees:** | |
| Convenience Fee | $0.15 |
| **Total Envelope Fees:** | $5.40 |

**Payment Information**

**Account Name:** AMEX
**Payment Method:** Credit Card
**Credit Card Type:** AMEX
**Card Number:** XXXX XXXX XXXX 1052
**Card Expiration Date:** 05/2018
**Transaction Amount:** $5.4
**Transaction Status:** Approved
**Transaction ID:** 9179534
**Transaction Order ID:** 005573285-0

**Personal Information**

**Filer:** Danny Scott
**Attorney of Record:** Danny Scott
**Firm or Organization:** Scott Law Offices
**Bar Number:** 24010920

**Service Recipients**

**Shelia Jones**
Email:            sheliaj@tbmmlaw.com
Status:           Sent
Service Opened:   Yes
Served Date/Time: 6/6/2015 7:05:28 AM
[ View Log ]

**Lisa Songy**
Email:            lisas@tbmmlaw.com
Status:           Sent
Service Opened:   Yes
Served Date/Time: 6/6/2015 7:05:29 AM
[ View Log ]

**Sean Patterson**
Email:            sean@scottlawyers.com
Status:           Sent
Service Opened:   No
[ View Log ]

**Virginia Izaguirre**
Email:            virginia@scottlawyers.com
Status:           Sent
Service Opened:   No
[ View Log ]

**Danny Scott**
Email:            danny@scottlawyers.com
Status:           Sent
Service Opened:   Yes
Served Date/Time: 6/6/2015 7:05:41 AM
[ View Log ]

**Adrienne Jackson**
  Email:                adrienne@scottlawyers.com
  Status:               Sent
  Service Opened:       Yes
  Served Date/Time:     6/6/2015 7:05:42 AM

  [View Log]

**Jo Ann Haynes**
  Email:                joann@scottlawyers.com
  Status:               Sent
  Service Opened:       No

  [View Log]

**Claudia Villa**
  Email:                claudiav@tbmmlaw.com
  Status:               Sent
  Service Opened:       Yes
  Served Date/Time:     6/6/2015 7:05:46 AM

  [View Log]

| Notice |
| --- |

| Filing Fees | | Filing Information |
| --- | --- | --- |

**Total Filing Fees:**      $0.00

**Current Status:** ✓accepted
**Accepted Date/Time:** 6/9/2015 8:46:59 AM
**Filing Description:** Notice
**Reference Number:** Angela Brooks-Brown
**Comments for Clerk:**

| Document Information |
| --- |

**Document(s) Filed:**

**Lead Document:**

Angela Brooks-Brown Notice of Nonsuit.doc [Does not contain sensitive data]     **Document Description:** Angela Brooks-Brown Notice of Nonsuit.pdf

Transmitted - Angela Brooks-Brown Notice of Nonsuit.pdf [Does not contain sensitive data]     **Document Description:** Angela Brooks-Brown Notice of Nonsuit.pdf

-

This site and all contents Copyright ©2003-2015 Thomson Reuters. All rights reserved.

**Loading...**

CAUSE NO. 272,693-B

| ANGELA BROOKS-BROWN | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | 146th JUDICIAL DISTRICT |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | BELL COUNTY, TEXAS |

**PLAINTIFF'S NOTICE OF NON-SUIT WITHOUT PREJUDICE**

Plaintiff, Angela Brooks-Brown, files this Notice of Non-suit without Prejudice.

At this time, Plaintiff does not desire to pursue the claims in this cause against Defendant USAA Texas Lloyd's Company. Texas Rule of Civil Procedure 162 provides that "at any time before the plaintiff has introduced all of its evidence…, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes. Notice of the dismissal or non-suit shall be served…without necessity of court order." Plaintiff hereby exercises the right to non-suit USAA Texas Lloyd's Company without prejudice from the claims asserted in this specific case.

For these reasons, Plaintiff hereby nonsuits plaintiff's claims against defendant USAA Texas Lloyd's Company without prejudice to the refiling of plaintiff's claims at a later date.

6/8/2015

146TH DISTRICT COURT
BELL COUNTY, TEXAS

Page 1 of 2

FWD TO CC 6/8/15

Respectfully submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone: (409) 833-5400
Facsimile: (409) 833-5405

/s/ Danny Ray Scott
DANNY RAY SCOTT
State Bar No. 24010920
VIRGINIA IZAGUIRRE
State Bar No. 24083230
SEAN M. PATTERSON
State Bar No. 24073546

ATTORNEYS FOR PLAINTIFF

STATE OF TEXAS

Before me, the undersigned notary public for the State of Texas, on this day personally appeared Mary Ann Rice, Administrative Support Manager and custodian of records of USAA Texas Lloyd's Company, and after being by me duly sworn and upon her oath says that an exact duplicate of the USAA Texas Lloyd's Company, 02423 40 74 90A, including any applicable endorsements and forms, issued to ANGELA BROOKS, effective on May 12, 2014, has been prepared under her direction and is attached hereto.

_Mary Ann Rice_

Mary Ann Rice,
Administrative Support Manager

Subscribed and sworn to before me by said Mary Ann Rice, Administrative Support Manager, this ⁰⁄ᴴ day of October, 2014 at San Antonio, Texas, to certify which witness my hand and seal at office.

_Diana G Arredondo_

DIANA G ARREDONDO
My Commission Expires
August 10, 2016

Diana G Arredondo
Notary Public
State of Texas
My commission expires on August 10, 2016

0901119c9008fad1

USAA Confidential



# HOMEOWNERS POLICY PACKET

EFFECTIVE: 10-09-13 TO: 10-09-14

MISS ANGELA D BROOKS-BROWN

LLYD    02423 40 74    90A

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

1) Go to usaa.com to view policy coverages and home features.

This is not a bill. Any premium charge or return for this policy will be reflected on your next regular monthly statement.
**To receive this document and others electronically or view your policy summary online, go to usaa.com.**
For U.S. Calls: Policy Service (800) 531-8111. Claims (800) 531-8222.
HOCS1                                                           49709-0406

0901119c9008fad1

USAA Confidential

UTLC000085

THIS PAGE INTENTIONALLY LEFT BLANK

USAA Confidential

0901119c9008fad1

UTLC000086



USAA TEXAS LLOYD'S COMPANY

9800 Fredericksburg Road - San Antonio, Texas 78288
AMENDED DECLARATIONS PAGE - EFFECTIVE 10/09/13

| Named Insured and Residence Premises | Policy Number |
|---|---|
| ANGELA BROOKS | LLYD 02423 40 74 90A |

Policy Period From: 10/09/13    To: 10/09/14
(12:01 A.M. standard time at location of the residence premises)

| SECTION I - COVERAGES AND AMOUNTS OF INSURANCE | |
|---|---|
| COVERAGE A - DWELLING PROTECTION | $184,000 |
| COVERAGE B - OTHER STRUCTURES PROTECTION | $46,000 |
| COVERAGE C - PERSONAL PROPERTY PROTECTION | $138,000 |
| COVERAGE D - LOSS OF USE PROTECTION (UP TO 12 MONTHS) | $36,800 |

| SECTION II - COVERAGES AND LIMITS OF LIABILITY | |
|---|---|
| Personal Liability – Each Occurrence | $300,000 |
| Medical Payments to Others | $5,000 |

**DEDUCTIBLES (Applies to SECTION I Coverages ONLY)**
We cover only that part of the loss over the deductible stated.

| | | |
|---|---|---|
| WIND AND HAIL | $3,680 | (2%) |
| ALL OTHER PERILS | $1,840 | (1%) |

| POLICY PREMIUM for Section I and Section II Coverages Above | $814.50 |
|---|---|

| CREDITS AND DISCOUNTS (Included in policy premium above.) | $760.10 CR |
|---|---|
| Details on the following page. (If applicable) | |

**OTHER COVERAGES AND ENDORSEMENTS**

Forms and Endorsements are printed on the following page.

**STATE SURCHARGES AND TAXES** (Shown below if applicable)

| SURCHARGES ARE PRINTED ON THE FOLLOWING PAGE. | $1.79 |
|---|---|

**TOTAL POLICY PREMIUM**
Including Credits, Discounts, Optional Coverages, Endorsements, State Surcharges and Taxes

$816.29

THIS IS NOT A BILL.

FIRST MORTGAGEE:
JPMORGAN CHASE BANK NA          LOAN NR     1679555013
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 47020
ATLANTA, GA 30362-0020

In witness whereof, this policy is signed on 10/07/13

Steven Alan Bennett, Secretary          Kevin Bergner, President

**REFER TO YOUR POLICY FOR OTHER COVERAGES, LIMITS AND EXCLUSIONS.**

HO-D1 (07-08)     ATTACH THIS DECLARATION TO PREVIOUS POLICY          67028-0708

0901119c9008fad1

USAA Confidential

UTLC000087



USAA TEXAS LLOYD'S COMPANY
AMENDED DECLARATIONS PAGE - EFFECTIVE          10/09/13

**Policy Number**                    **Policy Term:**  10/09/13        10/09/14
LLYD   02423 40 74   90A                              **Inception**      **Expiration**

POLICY AND ENDORSEMENTS THAT ARE PART OF YOUR CONTRACT WITH US.

REMAIN IN EFFECT (Refer to prior Policy Packet(s) for documents not attached.):
   QR3TXLLD      (07-08) QUICK REFERENCE-SPECIAL FORM
   HO-3RTX       (07-08) HOMEOWNERS SPECIAL FORM
   HO-ACPTX      (07-12) AMENDMENT TO CONTRACT PROVISIONS
   HO-SLS3TX     (07-12) SPECIAL LOSS SETTLEMENT
   HO-TX         (05-10) TEXAS SPECIAL PROVISIONS
   HO-125TX      (07-08) HOME PROTECTOR
   HO-208TX      (07-12) WATER BACKUP OR SUMP PUMP OVERFLOW
   HO-728TX      (07-12) REPLACEMENT COST COVERAGE

YOUR PREMIUM HAS BEEN REDUCED BY THE FOLLOWING CREDITS AND DISCOUNTS:

   AUTO AND HOME COMBINATION DISCOUNT              $90.50 CR
   CLAIMS FREE DISCOUNT                            $90.50 CR
   HOME AGE DISCOUNT                              $552.04 CR
   PROTECTIVE DEVICE CREDIT                        $27.06 CR

SPECIFICALLY LISTED BELOW ARE SURCHARGES.

   TX VOLUNTEER FIRE FUND ASSESSMENT                            $1.79

REASON(S) FOR CHANGE:

MISCELLANEOUS POLICY CHANGES

HO-D2 (07-08)              10/07/13                              87029-0708

USAA
9800 Fredericksburg Road
San Antonio, Texas 78288

# SPECIAL FORM - HOMEOWNERS POLICY.

**\*\*READ YOUR POLICY CAREFULLY\*\***

This policy is a legal contract between you, the policyholder, and us, the insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract. This contract consists of the Declarations page, the policy, and any applicable endorsements.

Your policy provides the coverages and amounts of insurance shown in the Declarations with a premium.

This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

## QUICK REFERENCE

| | Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **DEDUCTIBLE** | 3 |
| **SECTION I** | |
| **PROPERTY WE COVER** | 3 |
| Dwelling Protection | |
| Other Structures Protection | |
| Personal Property Protection | |
| Special Amounts | |
| Property We Do Not Cover | |
| Loss of Use Protection | |
| **ADDITIONAL COVERAGES** | 7 |
| Debris Removal | |
| Reasonable Repairs | |
| Trees, Shrubs, Plants | |
| Fire Department Charge | |
| Property Removed | |
| Credit Card and Identity Fraud | |
| Loss Assessment | |
| Collapse | |
| Lock Replacement | |
| Refrigerated Products | |
| Land | |
| Glass or Safety Glazing | |
| Landlord's Furnishings | |
| Building Ordinance or Law | |

| | Page |
|---|---|
| Temporary Living Expense | |
| Military Uniforms | |
| War | |
| Electronic Media | |
| **LOSSES WE COVER** | 13 |
| Dwelling and Other Structures | |
| Personal Property | |
| **LOSSES WE DO NOT COVER** | 15 |
| **CONDITIONS** | 18 |
| **SECTION II** | |
| **LIABILITY COVERAGES** | 24 |
| Personal Liability | |
| Medical Payments | |
| **EXCLUSIONS** | 25 |
| **ADDITIONAL COVERAGES** | 28 |
| Claims Expenses | |
| First Aid Expenses | |
| Damage to Property of Others | |
| Loss Assessment | |
| **CONDITIONS** | 30 |
| **SECTIONS I and II** | |
| **CONDITIONS** | 31 |

QR3TXLLD (07-08)

0901119c9008fad1

USAA Confidential

UTLC000089

## AGREEMENT

In return for payment of premium and subject to all terms of this policy, we will provide the insurance described.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse when a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. Certain words and phrases are defined and are printed in boldface and quotation marks when used.

1. **"Actual cash value"** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. **"Actual cash value"** applies to valuation of covered property regardless of whether that property has sustained partial loss, or total loss. The **"actual cash value"** of lost or damaged property may be significantly less than its replacement cost.

2. **"Aircraft"** means any conveyance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

3. **"Bodily injury"** means physical injury, sickness or disease, including required care, loss of services and death that results.

   **"Bodily injury"** does not include mental injuries such as: emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to the person claiming a mental injury.

4. **"Business"** means any full or part-time activity arising out of or related to any trade, profession or occupation of any **"insured"**.

5. **"Business day"** means a day other than Saturday, Sunday or holiday recognized by the State of Texas.

6. **"Collapse"** means:

   a. A sudden falling or caving in;

   b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

   Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered unless it is the direct result of **"collapse"**.

7. **"Damages"** means compensatory damages the **"insured"** is legally obligated to pay as a result of **"bodily injury"** or **"property damage"** covered by this insurance, but does not include punitive, exemplary or multiple damages.

8. **"Hovercraft"** means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

9. **"Insured"** means:

   a. The **"member"**;

   b. Spouse when a resident of the same household; and

   c. Residents of your household who are:

      (1) Your relatives; or

HO-3RTX (07-08)

0901119c9008fad1　　　　　USAA Confidential

UTLC000090

(2) Other person under the age of 21 and in the care of any prson named above.

Under SECTION II, **"insured"** also means:

d. With respect to animals, **"watercraft"** or **"personal watercraft"** to which this policy applies, any person or organization legally responsible for these animals, **"watercraft"** or **"personal watercraft"** which are owned by you or any person included in 9.a., 9.b. or 9.c. above. A person or organization using or having custody of these animals, **"watercraft"** or **"personal watercraft"** without consent of the owner is not an **"insured"**.

e. With respect to any vehicle or conveyance to which this policy applies:

(1) **"Residence employees"** while engaged in your employ or that of any person included in 9.a., 9.b. or 9.c. above; or

(2) Other persons using the vehicle on an "**insured location**" with your consent.

10. **"Insured location"** means:

a. The **"residence premises"**;

b. Any premises used by you in connection within 10.a. above;

c. Any part of a premises:

(1) Not owned by any **"insured"**; and

(2) Where any **"insured"** is temporarily residing;

d. Vacant land, other than farm land owned by or rented to any **"insured"**;

e. Land owned by or rented to any **"insured"** on which a one or two family dwelling is being built as a residence for any **"insured"**;

f. Individual or family cemetery plots or burial vaults of any **"insured"**; or

g. Any part of a premises occasionally rented to an **"insured"** for other than **"business"** use.

11. **"Member"** means the owner of the policy who is the person who meets all eligibility requirements for membership and whose membership number is shown in the Declarations of this policy.

12. **"Motor vehicle(s)"** means any type of motorized land vehicle or conveyance, whether or not subject to motor vehicle registration.

13. **"Named peril(s)"** means one or more of the perils listed under LOSSES WE COVER – PERSONAL PROPERTY PROTECTION.

14. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. **"Bodily injury"**; or

b. **"Property damage"**.

15. **"Personal watercraft"** means a conveyance, used or designed to be used on water that uses a jet pump powered by an internal combustion engine as the primary source of propulsion.

16. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. **"Professional services"** means any type of service to the public that requires members rendering a service to obtain an advanced degree and/or obtain a license or other legal authorization to provide the service and includes, but is not limited to services rendered by dentists, naturopaths, chiropractors, physicians and surgeons, doctors of dentistry, physical therapists, occupational therapists, podiatrists, optometrists, nurses, nurse-midwives, veterinarians, pharmacists, architects,

0901119c9008fad1

USAA Confidential

UTLC000091

landscape architects, engineers, accountants, land surveyors, psychologists, attorneys-at-law, therapists, counselors and social workers.

18. **"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

19. **"Residence employee"** means an employee of any **"insured"** whose primary duties are related to the maintenance or use of the **"residence premises"**, including household or domestic service.

20. **"Residence premises"** means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

Where you reside and which is shown as the **"residence premises"** in the Declarations.

**"Residence premises"** also means a two family dwelling where you reside in at least one of the family units and which is shown as the **"residence premises"** in the Declarations.

21. **"Sudden and accidental"** means an abrupt, fortuitous event which is unintended from the perspective of a reasonable person.

22. **"War"** means war whether declared or undeclared; civil war; insurrection; rebellion; revolution; any warlike act by friendly or enemy forces, destruction or seizure for a military purpose.

23. **"Watercraft"** means a conveyance principally designed to be propelled on or in water by wind, current, paddles, oars, engine power or electric motor.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the applicable amount of insurance that applies, we will pay only that part of the total of all loss payable under SECTION I - PROPERTY WE COVER that exceeds the deductible amount shown in the Declarations.

## SECTION I PROPERTY WE COVER

**COVERAGE A - Dwelling Protection**

We cover:

1. The dwelling on the **"residence premises"** shown in the Declarations, including structures attached to the dwelling;

2. Materials and supplies located on or next to the **"residence premises"** used to construct, alter or repair the dwelling or other structures on the **"residence premises"**; and

3. Custom or permanently installed window treatments and permanently installed carpeting.

Except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Land, we do not cover land, including land on which the dwelling is located.

**COVERAGE B - Other Structures Protection**

We cover:

1. Other structures on the **"residence premises"**:

   a. We cover other structures on the **"residence premises"**:

      (1) Set apart from the dwelling by clear space; and

      (2) Sidewalks, driveways and fences; and

0901119c9008fad1

USAA Confidential

UTLC000092

(3) Structures connected to the dwelling by only a fence, utility line, or similar connection.

b. We do not cover:

(1) Land, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Land, including land on which the other structures are located;

(2) Structures used in whole or part for "business" unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

(a) Duties of any "insured's" employment by another; and

(b) Performed solely by an "insured".

2. Other Structures away from the "residence premises".

a. We cover other structures owned by you and located away from the "residence premises", if used by you in connection with the "residence premises".

b. We do not cover:

(1) Other structures located away from the "residence premises":

(a) Being used as a dwelling; or

(b) Capable of being used as a dwelling; or

(c) Used in whole or part for "business"; or

(2) Land, including land on which the other structure is located.

The amount of insurance for all structures will not be more than the amount of insurance shown in the Declarations for Other Structures Protection.

**COVERAGE C - Personal Property Protection**

We cover:

Tangible personal property owned or used by any "insured" while it is anywhere in the world. After a loss and at your request, we will cover the loss of personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by any "insured";

2. A guest or a "residence employee", while the property is in any residence occupied by any "insured".

The amount of insurance for personal property usually located at any "insured's" residence, other than the "residence premises" is limited to 10% of the amount of insurance for Personal Property Protection, or $1,000, whichever is greater.

Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Amounts of Insurance.** The special amounts set out below do not increase the Personal Property Protection amount of insurance. The special amount for each numbered category below is the total amount for each loss for all property in that category.

1. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards and gift certificates including electronic gift certificates.

2. $1,000 for securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

This limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

0901119c9008fad1                    USAA Confidential

UTLC000093

3. $1,500 for **"watercraft"** or **"personal watercraft"**, including their trailers, furnishings, equipment and outboard motors.

4. $1,500 for trailers not used with **"watercraft"** or **"personal watercraft"**.

5. $10,000 for loss by theft of jewelry, watches, precious and semi-precious stones, fur garments, including any garment containing fur, which represents its principal value.

6. $2,500 on stamps, trading cards and comic books, including any of these that are part of a collection.

7. $10,000 for loss by theft of firearms.

8. $10,000 for loss by theft of silverware, silver-platedware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This category includes but is not limited to flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

9. (a) $10,000 for tangible **"business"** property at your residence.

   (b) $1,000 for tangible **"business"** property away from your residence.

10. $3,000 on motorized golf carts and their equipment and accessories. But if, at the time of loss, there is any other insurance covering physical loss to golf carts, then this policy does not apply.

11. $3,000 for motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads. However, this limit does not apply to vehicles not subject to motor vehicle registration which are:

    a. Used to service any **"insured's"** residence, or

    b. Designed for assisting the handicapped.

**Property We Do Not Cover.**

1. Personal property separately described and specifically insured in this or other insurance.

2. Animals, birds or fish.

3. **"Motor vehicle(s)"**. This includes but is not limited to:

   a. Equipment, accessories, and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wires, discs or other media, for use with any such device or instrument, while in or upon the **"motor vehicle"**.

   We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

   a. Used to service any **"insured's"** residence; or

   b. Designed for assisting the handicapped.

   We also cover:

   a. Motorized golf carts and their equipment and accessories; and

   b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hours and for use off public roads

   subject to the provisions under Special Amounts of Insurance.

4. **"Aircraft"** and parts.

5. **"Hovercraft"** and parts.

6. Personal property of roomers, roommates, boarders, or other tenants. This does not apply to property of roomers, roommates, boarders or tenants who qualify as **"insureds"**.

0901119c9008fad1                    USAA Confidential

UTLC000094

7. Personal property in an apartment regularly rented or held for rental to others by any "**insured**", except as provided in ADDITIONAL COVERAGES, Landlord's Furnishings.

8. Personal property rented or held for rental to others off the "**residence premises**".

9. "**Business**" data, records, recordings, images and photographs including such data stored in:

   a. Books of account, drawings or other paper records; or,

   b. Electronic storage media.

   However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

10. Personal data, records, recordings, images, and photographs, regardless of storage media. This includes songs, movies and other audio or video media which you purchase and download onto a computer or portable electronic media player, other than as provided in ADDITIONAL COVERAGES, Electronic Media. However, we do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market.

11. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage.

## COVERAGE D – Loss Of Use Protection

The amount of insurance for Loss of Use shown on the Declarations is the total limit for the coverages that follow.

1. **Additional Living Expense.** If a loss covered under Section - I - LOSSES WE COVER makes that part of the "**residence premises**" where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses incurred by you

so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

2. **Fair Rental Value.** If a loss covered under Section I – LOSSES WE COVER makes that part of the "**residence premises**" rented to others or held for rental by you uninhabitable, we cover the fair rental value of that part of the "**residence premises**" rented to others or held for rental by you less any expenses that do not continue while the premises is uninhabitable.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental, but not to exceed 12 months.

3. **Prohibited Use.** If a loss covered under Section I – LOSSES WE COVER results in an order from a civil authority prohibiting you from use of the "**residence premises**" as a result of direct damage to neighboring premises by a loss covered under Section I – LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks. A neighboring premise is defined as a premises that is adjacent to the "**residence premises**".

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy.

0901119c9008fad1

USAA Confidential

UTLC000095

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to the coverage afforded under 1., 2., and 3. above.

## ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if loss to the damaged property is covered under SECTION I - LOSSES WE COVER; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

      This expense is included in the amount of insurance that applies to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the amount of insurance for the damaged property, an additional 5% of that amount of insurance will be available to cover debris removal expense.

   b. We will also pay your reasonable expense, up to $1,000 in the aggregate, for the removal from the **"residence premises"** of:

      (1) Your tree(s) felled by the peril of windstorm or hail, or weight of ice, snow or sleet; or

      (2) A neighbor's tree(s) felled by a loss under **"named peril(s)"**.

      provided the tree(s)

      (3) Damage(s) a covered structure; or

      (4) Does not damage a covered structure, but:

         (a) Blocks a driveway on the **"residence premises"** which prevents a **"motor vehicle"** that is registered for use on public roads or property, from entering or leaving the **"residence premises"**; or

         (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

      The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

      This coverage reduces the amount of insurance that applies to the covered property.

      The policy deductible applies.

2. **Reasonable Repairs**. In the event that covered property is damaged by an applicable loss under Section I - LOSSES WE COVER, we will pay the reasonable expense incurred by you, for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable loss under SECTION I - LOSSES WE COVER. This coverage reduces the amount of insurance that applies to the covered property and does not relieve you of your duties in case of a loss to covered property, as set forth in SECTION I - CONDITIONS 3.d.

   The policy deductible applies.

0901119c9008fad1                              USAA Confidential

UTLC000096

3. **Trees, Shrubs and Other Plants.**

We cover trees, shrubs, plants, lawns, or landscaping on the "residence premises"; for loss caused by the following Losses We Cover: Fire or Lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises", Vandalism or malicious mischief or Theft.

We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under SECTION I – LOSSES WE COVER.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under SECTION I – LOSSES WE COVER and for no more than 30 days after the property has been removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

This coverage reduces the amount of insurance that applies to the property being removed.

The policy deductible applies.

6. **Credit Card Coverage and Identity Fraud Expense Coverage.**

We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from **Credit Card Coverage** and **Identity Fraud Expense Coverage**.

For the purposes of **Credit Card Coverage** and **Identity Fraud Expense Coverage**, a series of acts committed by any one person in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

a. **Credit Card Coverage** also includes, fund transfer cards, forgery and counterfeit money. Under **Credit Card Coverage**, we pay for all loss and defense costs resulting from:

(1) The legal obligation of any "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in any "insured's" name;

(2) Loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any "insured's" name;

(3) Loss to any "insured" caused by forgery or alteration of any "insured's" check or negotiable instrument written on an "insured's" bank account. This does not include loss by the acceptance of a forged, altered or counterfeit check, or other negotiable instrument, by an "insured".

(4) Loss to any "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

For losses covered by this additional insurance we will provide defense as follows:

0901119c9008fad1                    USAA Confidential

UTLC000097

(1) We may investigate and settle any claim or suit as we deem to be appropriate. Any duty to defend a claim or suit ends when the amount we pay or tender for the loss equals the applicable amount of insurance.

(2) If a suit is brought against any **"insured"** as a result of theft or unauthorized use of a credit card or fund transfer card, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense any **"insured"** against any suit for the enforcement of payment under the forgery coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to **Credit Card Coverage.**

b. Under **Identity Fraud Expense Coverage**, we pay for **"expenses"** and defense costs incurred by any **"insured"** as the direct result of **"identity fraud"**.

With respect to the provisions of this coverage only, the following definitions are added:

**"Identity Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **"insured"** with the intent to commit, or aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**"Expenses"** means:

(1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchants, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

(4) Loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information resulting from **"identity fraud"**;

(5) Reasonable attorney fees incurred, with our prior consent, for:

(a) Defense of lawsuits brought against the **"insured"** by merchants or their collection agencies; and

(b) The removal of any criminal or civil judgments wrongly entered against an **"insured"**.

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual **"identity fraud"**.

(7) Research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies resulting from **"identity fraud"**.

This coverage is additional insurance and does not reduce the amount of insurance.

A $100 deductible applies to **Identity Fraud Expense Coverage.**

The following exclusions apply to **Credit Card Coverage** and **Identity Fraud Expense Coverage:**

(1) We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household or any **"insured"**;

0901119c9008fad1

USAA Confidential

UTLC000098

(b) By a person who has been entrusted with the card(s) or device(s);

(c) If any **"insured"** has not complied with all terms and conditions under which the cards or devices are issued.

(2) We do not cover loss arising out of **"business"** pursuits, dishonesty, fraud, or criminal activity of any **"insured"**.

7. **Loss Assessment.** We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property, owned by all members collectively, caused by a loss under Section I – LOSSES WE COVER for **DWELLING PROTECTION COVERAGE** AND **OTHER STRUCTURES PROTECTION COVERAGE**, subject to all provisions of the policy.

This coverage does not apply to assessments made as a result of damage caused by:

a. Earthquake; or

b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

The limit of $10,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

This coverage is not limited by the expiration of this policy.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

8. **"Collapse".** For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving **"collapse"** of a building or any part of a building only when the **"collapse"** is caused by one or more of the following:

a. **"Named peril(s)"** apply to covered buildings and personal property for loss insured by this additional coverage.

b. Decay that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

c. Insect or vermin damage that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the **"collapse"** occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the **"collapse"** of a building.

This coverage reduces the amount of insurance that applies to the damaged covered property.

The policy deductible applies.

9. **Lock Replacement.** When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

0901119c9008fad1

USAA Confidential

UTLC000099

a. Change the combination in the lock hardware of the doors, or

b. Change the lock hardware of the doors.

The most we will pay for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products**. We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on your **"residence premises"**, as a consequence of power failure or mechanical breakdown. The $500 limit is the most we will pay in any one loss regardless of the number of freezers or refrigerators.

The Power Failure exclusion under Section I - LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION does not apply to Refrigerated Products.

This coverage does not increase the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

11. **Land**. If a loss covered under Section I - LOSSES WE COVER damages a building on the **"residence premises"** insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

This coverage is an additional insurance and does not reduce the amount of insurance.

The policy deductible applies.

12. **Glass or Safety Glazing Material**.

We cover:

a. The breakage of glass or safety glazing material caused by a loss under Section I - LOSSES WE COVER, which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building storm door or storm window.

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

This coverage reduces the amount of insurance that applies to the damaged property.

The policy deductible applies.

13. **Landlord's Furnishings**. We will pay up to $2,500 for your appliances, your carpeting and other household furnishings located in an apartment on the **"residence premises"** regularly rented or held for rental to others by any **"insured"**, for loss caused by **"named peril(s)"**, other than theft.

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage reduces the Personal Property Protection amount of insurance.

The policy deductible applies.

14. **Building Ordinance or Law**. For loss caused by a loss under Section I - LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

The limit for this coverage will not be more than 5% of the Coverage A - Dwelling Protection amount of insurance.

0901119c9008fad1                    USAA Confidential

UTLC000100

If the insured property is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to the repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

The policy deductible applies.

15. **Temporary Living Expenses.** We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the **"residence premises"** because an earthquake, volcanic eruption or landslide has occurred.

This coverage is additional insurance and does not reduce the Loss Of Use Protection amount of insurance.

No deductible applies to this coverage.

16. **Military Uniforms and Equipment.** We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss caused by **"named peril(s)"** while you are on active or active reserve duty.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

17. **War.** To the extent that coverage for **"war"** is provided here, item 1.f. under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY**

**PROTECTION** and the **"war"** exclusion in any endorsement attached to this policy do not apply.

We will pay up to $10,000 for:

a. Direct loss or damage to your personal property caused by **"war"**; or

b. Abandonment as a consequence of **"war"** subject to these conditions.

subject to the following conditions:

This coverage applies only:

a. To any **"insured"** who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

b. To loss that occurs anywhere outside the Continental United States, Alaska and Hawaii.

In addition to compliance with the other provisions of **Your Duties After Loss**, you must:

a. Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

b. Send us, within 90 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

The **Loss Settlement** clause in this policy is changed for loss by **"war"** only to read:

"War" loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

0901119c9008fad1                              USAA Confidential

UTLC000101

Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

We will adjust all losses with you. We will pay you unless some other person is named in this policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

This coverage reduces the Personal Property Protection amount of insurance.

No deductible applies to this coverage.

18. **Electronic Media**, meaning songs, movies and other audio or video media, which you purchased and downloaded onto a computer or portable electronic media player. We will pay up to $250 for a loss covered under **"named peril(s)"**, provided that you maintain records to document the actual purchase of this media. This coverage does not include personal data or records.

This coverage is additional insurance and does not reduce the Personal Property Protection amount of insurance.

The policy deductible applies.

# SECTION I - LOSSES WE COVER

## COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE B - OTHER STRUCTURES PROTECTION COVERAGE

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER - Coverages A and B unless excluded in Section I – LOSSES WE DO NOT COVER.

## COVERAGE C - PERSONAL PROPERTY PROTECTION

We insure against **"sudden and accidental"**, direct physical loss to tangible property described in PROPERTY WE COVER - Coverage C caused by a peril listed below unless the loss is excluded in **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.**

1. Fire or lightning.

2. Windstorm or hail.

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the

building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

This peril includes loss to the **"watercraft"**, **"personal watercraft"**, and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning damage caused by or resulting from an impact with a **"motor vehicle"**. This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7. **Smoke**, meaning **"sudden and accidental"** damage from smoke.

0901119c9008fad1

USAA Confidential

UTLC000102

This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief.**

9. **Theft**, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, if other permanent residency is established or claimed elsewhere;

b. In or to a dwelling under construction, or materials and supplies for use in the construction until the dwelling is finished and occupied; or

c. From that part of a **"residence premises"** rented by any **"insured"** to a person who does not qualify as an **"insured"**.

This peril does not include loss caused by theft that occurs away from the **"residence premises"** of:

a. Property while at any other residence owned by, rented to, or occupied by any **"insured"** unless the **"insured"** has stayed at the temporary residence at any time during the 60 days immediately before the loss;

b. **"Watercraft"**, or **"personal watercraft"** including their furnishings, equipment and outboard motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet,** which causes damage to property contained in a building.

12. **Discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. A plumbing system does not include a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped; or

b. Caused by or resulting from freezing except as provided in the peril of Freezing below; or

c. On the **"residence premises"** caused by discharge or overflow which occurs off the **"residence premises"**.

13. **Tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **"residence premises"** if you have failed to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Damage from artificially generated electrical current.**

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

0901119c9008fad1                                    USAA Confidential

UTLC000103

# SECTION I - LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

1. Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

   (i) The cause of the excluded event or damage that; or

   (ii) Other causes of the loss that; or

   (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

   (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

   produce the loss.

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have:

      (1) Maintained heat in the building; or

      (2) Shut off the water supply and drained the system and appliances of water;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) Swimming pool, hot tub, or spa, including their filtration and circulation system; or

      (2) Fence, pavement, patio; or

      (3) Foundation, retaining wall or bulkhead; or

      (4) Pier, wharf or dock.

   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   d. Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   e. Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

   f. Wear and tear, marring, deterioration;

   g. Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

   h. Smog, rust, electrolysis or other corrosion;

   i. Smoke from agricultural smudging or industrial operations;

   j. Discharge, dispersal, seepage, migration, release or escape of **"pollutants"** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by **"named peril(s)"** of this policy.

   k. Birds, rodents, insects;

0901119c9008fad1

USAA Confidential

UTLC000104

l. Animals owned or kept by any "**insured**".

m. Vermin meaning animals, other than (m.) above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

n. Nesting, infestation, discharge or release of waste products or secretions, by any birds, rodents, insects, vermin, or animals owned or kept by an "**insured**".

o. Pressure from, or presence or intrusion of, tree, shrub or plant roots.

2. If items 1.f. through 1.o. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

3. If any item in 1. above directly causes a "**named peril(s)**" to occur, the resulting damage produced by the "**named peril(s)**" is covered unless otherwise excluded or excepted elsewhere in this policy.

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION**

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:

   (i) The cause of the excluded event or damage that; or

   (ii) Other causes of the loss that; or

   (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

   (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

   produce the loss.

   a. **Ordinance or Law**, meaning the increased cost of demolition repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

   b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

      (1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

      (2) Landslide; mudslide or mudflow;

      (3) Subsidence, sinkhole, erosion or movement resulting from improper compaction, site selection or any other external forces;

      (4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;

      unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of building, storm door or storm window results and then we will pay only for the resulting loss.

   c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

      (1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

UTLC000105

(2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device; or

(3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

(4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure;

unless direct loss by fire, explosion or theft results from water damage and then we will pay only for the resulting loss.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **"residence premises"** except as provided in ADDITIONAL COVERAGES, Refrigerated Products.

If damage caused by a loss insured under Section I - LOSSES WE COVER results on the **"residence premises"**, we will pay only for that damage.

e. **Neglect,** by or failure of any **"insured"** to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f. **"War"** and any consequence of **"war"**, except as provided in ADDITIONAL COVERAGES, War. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** meaning

(1) Any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

(2) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Section I - LOSSES WE COVER.

(3) This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss,** meaning loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

This exclusion does not apply to an **"insured"** who has not cooperated in or contributed to the creation of an intentional loss, if that **"insured"** has:

(1) Filed a police report, and

(2) Cooperated with law enforcement investigation or prosecution

relating to any other **"insured"**, causing the intentional loss.:

Payment to an **"insured"**, under this exception to exclusion **1.h.** will be limited to the insurable interest of the **"insured"** in such property, less any payments made to a mortgagee or other party with a legal secured interest in the property and subject to the other terms and conditions of this policy.

As a condition of payment for intentional loss caused by another **"insured"** under this exception to exclusion **1.h.**, we may require an assignment of rights of recovery to the extent payment is made by us.

0901119c9008fad1

USAA Confidential

UTLC000106

i. **Microbial Organisms**, including but not limited to mold, mold spores, fungus, bacterium or parasitic microorganisms.

j. **"Collapse"**, other than as provided in ADDITIONAL COVERAGES, "Collapse".

k. **Diminution in value**, meaning any reduction in value that would remain after damaged property is repaired or replaced.

l. **Wet rot, dry rot, or deterioration.**

m. **Settling, cracking, shrinking, bulging** or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

   a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail, or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

   b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

   c. **Faulty, negligent, inadequate or defective;**

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or maintenance.

   This limitation applies to loss or damage to any property on or off the **"residence premises"**.

## SECTION I - CONDITIONS

1. **Insurable Interest and Amount of Insurance.**

   Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

   b. For more than the applicable amount of insurance

   whichever is less.

   Each time there is a loss to any building insured under Coverage A - Dwelling Protection or Coverage B - Other Structures Protection, the amount of insurance applicable to that building for loss by fire will be reduced by the amount of the loss. As repairs are made, the amount of insurance will be reinstated up to that amount of insurance shown on the Declarations page.

   A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This provision shall not apply to personal property.

0901119c9008fad1                    USAA Confidential

UTLC000107

**2. Residential Community Property Clause.**

This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

**3. Your Duties After Loss.** In case of a loss to which this insurance may apply you must see that the following are done:

a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

c. Notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card Coverage and Identity Fraud Expense Coverage;

d. (1) Protect the property from further damage;

    (2) Make reasonable and necessary repairs to protect the property; and

    (3) Keep an accurate record of repair expenses;

e. Cooperate with us in the investigation of a claim;

f. At our request prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

g. As often as we reasonably require:

    (1) Show the damaged property;

    (2) Provide us with records and documents we request and permit us to make copies; and

    (3) Submit to and sign, while not in the presence of any other **"insured"**:

        (a) Statements; and

        (b) Examinations under oath; and

    (4) Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so.

h. Send to us, within 91 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

    (1) The time and cause of loss;

    (2) The interest of the **"insured"** and all others in the property involved and all liens on the property;

    (3) Other insurance which may cover the loss;

    (4) Changes in title or occupancy of the property during the term of the policy;

    (5) Specifications of damaged buildings and detailed repair estimate;

    (6) The inventory of claimed personal property described in 2.f. above;

    (7) Receipts for Additional Living Expenses and Temporary Living Expenses incurred and records that support the Fair Rental Value loss; and

    (8) Evidence or affidavit stating the amount and cause of loss that supports a claim under ADDITIONAL COVERAGES, Credit Card Coverage, and receipts, bills or other records that support your claim for expenses under Identity Fraud Expense Coverage.

0901119c9008fad1        USAA Confidential        UTLC000108

**4. Our Duties After Loss:**

a. Within 15 days after we receive your written notice of claim, we must:

(1) Acknowledge receipt of the claim. If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment.

(2) Begin any investigation of the claim.

(3) Specify the information you must provide in accordance with **Your Duties After Loss** (item 3. above).

We may request more information, if during the investigation of the claim such additional information is necessary.

b. After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

(1) Within 15 **"business days"**; or

(2) Within 30 days if we have reason to believe the loss resulted from arson.

c. If we do not approve payment of your claim or require more time for processing your claim, we must:

(1) Give the reasons for denying your claim, or

(2) Give the reasons we require more time to process your claim. But we must either approve or deny your claim within 45 days after requesting more time.

**5. Loss Settlement.** We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage. Subject to the amount of insurance covered losses are settled as follows:

a. For the following property:

(1) Personal property; and

(2) Awnings, outdoor antennas, satellite dishes, and outdoor equipment, whether or not attached to the buildings; and

(3) Structures that are not buildings; and

(4) All covered structures whether or not they are buildings, if located away from the **"residence premises"**.

We will pay the lesser of:

(1) The **"actual cash value"**; or

(2) Our cost to replace the property with property of like kind, quality, age and condition; or

(3) Our cost to repair or our cost to restore the property to the condition it was in just before the loss.

b. All items under Dwelling Protection and buildings on the **"residence premises"** under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

(1) When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

(2) When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the **"actual cash value"**, not to exceed our cost to repair or our cost to replace the damaged part of the property.

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

UTLC000109

(a) To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

(b) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property whichever is less.

6. **Loss or Damage to a Pair or Set.** In case of loss or damage to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between "**actual cash value**" of the property before and after the loss.

7. **Matching of Undamaged Property.** In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

8. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "**residence premises**" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expense of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the "**actual cash value**", replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

0901119c9008fad1                              USAA Confidential

UTLC000110

9. **Other Insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

If a loss covered by this policy, other than a loss covered by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage or golf cart coverage, is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance.

This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

10. **Suit Against Us.** No action can be brought against us unless you have:

a. Given us notice of the loss;

b. Complied with all other policy provisions; and

c. Started action

within two years and one day after the cause of action accrues.

11. **Our Option.** If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

If we notify you that we will pay your claim, we must pay with 5 **"business days"** after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 **"business days"** after the date you perform the act.

13. **Abandonment.** You may not abandon property to us for any reason.

14. **Mortgage Clause.** The word "mortgagee" includes trustee.

a. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the Declarations page as interests appear.

b. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

(1) At our request pays any premiums due under this policy, if you have failed to do so.

(2) Submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so.

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

All of the terms of this policy will then apply directly to the mortgagee.

Failure of the mortgagee to comply with c. (1), c.(2) or c.(3) above shall void this policy as to the interest of the mortgagee.

0901119c9008fad1                        USAA Confidential

UTLC000111

d.  If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with terms of this policy.

    (1) The mortgagee's rights under the mortgagee will be transferred to us to the extent of the amount we pay.

    (2) The mortgagee's rights to recover the full amount of the mortgagee's claim will not be impaired.

    At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

e.  If this policy is canceled, we will give the mortgagee specifically named on the Declarations page written notice of cancellation.

    If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

    If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice.

    The date of cancellation cannot be before the 10th day after the date we mail the notice.

    We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

f.  If the property described under Coverage A - Dwelling is foreclosed under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

    The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

g.  If we elect not to renew this policy, the mortgagee specifically named on the Declarations page will be given 30 days written notice of the nonrenewal.

15. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

16. **Salvage and Recovered Property.**

    a.  We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement Condition. At our option, property that we have paid for or replaced becomes our property.

    b.  If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

17. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

    a.  Intentionally concealed or misrepresented any material fact or circumstance;

    b.  Engaged in fraudulent conduct; or

    c.  Made false statements which, if known by us, would have caused us not to:

        (1) Issue the policy;

        (2) Issue the policy in as large an amount;

        (3) Provide coverage for the hazard resulting in the loss; or

0901119c9008fad1                    USAA Confidential

UTLC000112

(4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim, we may deny coverage or declare the entire policy void as to the interest of all "insureds" and refund the unearned premium as of the date of the conduct described in a., b., or c. above. Any unearned premium refund will be offset by any amounts paid to any "insured" under the policy after the date of the conduct described in a., b., or c. above.

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

18. **Duties to Determine and Maintain Policy Limits.** It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

19. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

20. **Catastrophe Claims.** If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the **Your Duties After Loss, Our Duties After Loss** and **Loss Payment** provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a. Is declared a disaster under the Texas Disaster Act of 1975; or

b. Is determined to be a catastrophe by the Texas Department of Insurance.

21. **Adjustment to Building Cost.** The amount of insurance for Section I, Dwelling Protection, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

Section I, Other Structures Protection, Personal Property and Loss of Use, will also be adjusted. The rules then in use by us will determine the new amounts for these coverages.

These amounts will not be reduced without your consent.

You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against any "insured" for "damages" because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the "damages" for which the "insured" is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for "damages" resulting from the "occurrence" equals our limit of liability. This coverage does not provide defense to any "insured" for criminal prosecution or proceedings.

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

UTLC000113

## COVERAGE F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral expenses. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1.  To a person on the **"insured location"** with the permission of any **"insured"**; or

2.  To a person off the **"insured location"**, if the **"bodily injury"**:

    a.  Arises out of a condition on the **"insured location"** or the ways immediately adjoining;

    b.  Is caused by the activities of any **"insured"**;

    c.  Is caused by a **"residence employee"** in the course of the **"residence employee's"** employment by any **"insured"**; or

    d.  Is caused by an animal owned by or in the care of any **insured**.

# SECTION II - EXCLUSIONS

1.  **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

    a.  Which is reasonably expected or intended by any **"insured"** even if the resulting **"bodily injury"** or **"property damage"**:

        (1) Is of a different kind, quality or degree than initially expected or intended; or

        (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

        However, this exclusion does not apply to an **"insured"** who did not cooperate in or contribute to the creation of the loss if that **"insured"** has:

        (1) Filed a police report; and

        (2) Cooperated with law enforcement investigation or prosecution relating to any other **"insured"** causing the intentional loss.

        This exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

    b.  (1) Arising out of or in connection with a **"business"** engaged in by any **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

        (2) Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"**.

            (a) On an occasional basis if used only as a residence;

            (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

            (c) In part, as an office, school, studio or private garage.

    c.  Arising out of the rendering or failure to render **"professional services"**;

0901119c9008fad1                                    USAA Confidential

UTLC000114

d.  Arising out of a premises:

   (1) Owned by any **"insured"**; or

   (2) Rented to any **"insured"**; or

   (3) Rented to others by any **"insured"**;

   that is not an **"insured location"**;

e.  Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**; or

   (2) The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

   (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"motor vehicle"** excluded in paragraph (1) or (2) above.

   This exclusion does not apply to the permissive use, loading or unloading of:

   (1) A trailer not towed by or carried on a **"motor vehicle"**;

   (2) A **"motor vehicle"** designed for recreational use off public roads, not subject to motor vehicle registration and:

      (a) Not owned by an **"insured"**; or

      (b) Owned by any **"insured"** provided the **"occurrence"** takes place on any **"insured location"**; or

      (c) Owned by any **"insured"** and designed or modified to operate at speeds not to exceed 15 miles per hour.

   (3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **"occurrence"**, is within the legal boundaries of:

      (a) A golfing facility and is parked or stored there, or being used by any **"insured"** to:

         (i) Play the game of golf or for other recreational or leisure activity allowed by the facility; or

         (ii) Travel to and from an area where **"motor vehicles"** or golf carts are parked or stored; or

         (iii) Cross public roads at designated points to access other parts of the golfing facility.

      (b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an **"insured's"** residence.

   (4) A **"motor vehicle"** not subject to motor vehicle registration which is:

      (a) Used to service any **"insured's"** residence; or

      (b) Designed for assisting the handicapped; or

      (c) In dead storage on an **"insured location"**.

f.  Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of; or

   (2) The entrustment by any **"insured"** to any person of; or

   (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

   a **"watercraft"** or **"personal watercraft"**.

   This exclusion does not apply to any **"watercraft"** owned or borrowed by, or rented to any **"insured"**:

0901119c9008fad1                    USAA Confidential

UTLC000115

(1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower; or

(2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any **"personal watercraft"** or **"watercraft"** that is being stored.

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of: or

(2) The entrustment by any **"insured"** to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

an **"aircraft"** or **"hovercraft"**.

h. Caused directly or indirectly by **"war"** including any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. Arising out of the transmission of a communicable disease by any **"insured"** through sexual contact.

j. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k. Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

l. Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

m. Arising out of any actual, alleged or threatened:

(1) Sexual misconduct; or

(2) Sexual harassment; or

(3) Sexual molestation.

n. Arising out of any actual, alleged or threatened physical or mental abuse. For purposes of this policy abuse means an act that is committed with the intent to cause harm.

Exclusions d., e., f., and g. do not apply to **"bodily injury"** to a **"residence employee"** arising out of and in the course of the **"residence employee's"** employment by any **"insured"**.

2. **Coverage E - Personal Liability** does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II – ADDITIONAL COVERAGES, Loss Assessment.

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of any **"insured location"**; or

(b) Where the liability of others is assumed by any **"insured"** prior to an **"occurrence"**.

unless excluded in (1) above or elsewhere in this policy;

b. **"Property damage"** to property owned by the **"insured"**.

0901119c9008fad1                USAA Confidential

UTLC000116

c. **"Property damage"** to property rented to, occupied or used by or in the care of any **"insured"**. This exclusion does not apply to **"property damage"** caused by fire, smoke or explosion.

d. **"Bodily injury"** to any person eligible to receive any benefits:

   (1) Voluntarily provided; or

   (2) Required to be provided, whether or not actually provided;

   by any **"insured"** under any:

   (1) Workers' compensation law;

   (2) Non-occupational disability law; or

   (3) Occupational disease law.

e. **"Bodily injury"** or **"property damage"** for which any **"insured"** under this policy.

   (1) Is also an **"insured"** under a nuclear energy liability policy; or

   (2) Would be an **"insured"** under that policy but for the exhaustion of its limit of liability.

   A nuclear energy liability policy is one issued by:

   (1) Nuclear Energy Liability Insurance Association;

   (2) Mutual Atomic Energy Liability Underwriters;

   (3) Nuclear Insurance Association of Canada; or any of their successors'.

f. **"Bodily injury"** to you or any **"insured"** within the meaning of part a., b., or c. of **"insured"** as defined.

g. **"Property damage"** arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of **"pollutants"** however caused and whenever occurring unless resulting from the peril of fire. Any loss cost or expense arising out of any:

(1) Request, demand or order that any **"insured"** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of **"pollutants"**; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assess the effects of **"pollutants"**.

3. **Coverage F - Medical Payments to Others** does not apply to **"bodily injury"**:

   a. To a **"residence employee"** if the **"bodily injury"**:

      (1) Occurs off the **"insured location"**; and

      (2) Does not arise out of or in the course of the **"residence employee's"** employment by an **"insured"**.

   b. To any person eligible to receive benefits:

      (1) Voluntarily provided; or

      (2) Required to be provided;

      under any:

      (1) Workers' compensation law; or

      (2) Non-occupational disability law; or

      (3) Occupational disease law.

   c. From any:

      (1) Nuclear reaction; or

      (2) Nuclear radiation; or

      (3) Radioactive contamination;

      all whether controlled or uncontrolled or however caused; or

      (4) Any consequence of any of these.

0901119c9008fad1                    USAA Confidential

UTLC000117

d. To any person, other than a "**residence employee**" of any "**insured**", regularly residing on any part of the "**insured location**" or residing on any part of the "**insured location**" for a period in excess of thirty consecutive days prior to the date of loss, unless other permanent residency is established or claimed elsewhere.

# SECTION II - ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against any "**insured**" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by any "**insured**" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. Prejudgment interest awarded against the "**insured**" on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any "**insured**" for "**bodily injury**" covered under this policy. We will not pay for first aid to you or any other "**insured**".

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per "**occurrence**" for "**property damage**" to property of others caused by any "**insured**".

   We will not pay for "**property damage**":

   a. To the extent of any amount recoverable under SECTION I of this policy;

   b. Caused intentionally by any "**insured**" who is 13 years of age or older.

      However, this exclusion does not apply to an "**insured**" who did not cooperate in or contribute to the creation of the loss if that "**insured**" has:

      (1) Filed a police report; and

      (2) Cooperated with law enforcement investigation or prosecution relating to any other "**insured**" causing the intentional loss.

   c. To property owned by any "**insured**";

   d. To property owned by or rented to a tenant of any "**insured**" or a resident in your household; or

   e. Arising out of:

0901119c9008fad1                                    USAA Confidential

UTLC000118

(1) A **"business"** engaged in by any **"insured"**;

(2) Any act or omission in connection with a premises owned, rented or controlled by any **"insured"**, other than the **"insured location"**; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of **"aircraft"**, **"hovercraft"**, **"watercraft"**, **"personal watercraft"** or **"motor vehicle"**. This exclusion e.(3) does not apply to a **"motor vehicle"** that:

    (a) Is designed for recreational use off public roads,

    (b) Is not owned by any **"insured"**; and

    (c) At the time and place of the **"occurrence"**, is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

4. **Loss Assessment**. We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners, when the assessment is made as a result of:

    a. **"Bodily injury"** or **"property damage"** caused by an **"occurrence"** not excluded under SECTION II of this policy; or

    b. Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

a. One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E – Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

This coverage is not limited by the expiration of this policy.

## SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage E limit is shown in the Declarations. This is our limit for all damages from each **"occurrence"** regardless of the number of **"insureds"**, claims made or persons injured. All **"bodily injury"** and **"property damage"** resulting from any one accident or from continuous or repeated exposure to substantially the

same general harmful conditions shall be considered to be the result of one **"occurrence"**.

The Coverage F limit is shown in the Declarations. This is our limit for all medical expenses payable for **"bodily injury"** to one person as the result of one accident.

HO-3RTX (07-08)

0901119c9008fad1

USAA Confidential

UTLC000119

2. **Severability of Insurance.** This insurance applies separately to each **"insured"**. This condition does not increase our limit of liability for any one **"occurrence"**.

3. **Concealment, Misrepresentation or Fraud.** If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

   a. Concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements which if known by us, would have caused us not to:

      (1) Issue the policy;

      (2) Issue the policy in as large an amount;

      (3) Provide coverage for the hazard resulting in the loss; or

      (4) Issue the policy for the same amount of premium or at the same rate

   relating to the issuance of this policy or in the presentation of a claim we may deny coverage as to the interest of all **"insureds"**.

   We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

4. **Duties After Loss.** In case of an accident or **"occurrence"**, the **"insured"** will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and **"insured"**;

      (2) Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

      (3) Names and addresses of any claimants and witnesses.

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   c. Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence"**.

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

      (3) With the conduct of suits and attend hearings and trials;

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. Under Damage to Property of Others, if we request, submit to us within 60 days after notice of the loss, a sworn statement of loss and show the damaged property, if in the **"insured's"** control.

   f. The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

5. **Duties of an Injured Person - Coverage F - Medical Payments to Others.** The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

0901119c9008fad1                 USAA Confidential

UTLC000120

6. **Payment of Claim - Coverage F - Medical Payment to Others.** Payment under this coverage is not an admission of liability by any **"insured"** or us.

7. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against any **"insured"**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **"insured"** has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured.** Bankruptcy or insolvency of any **"insured"** will not relieve us of our obligations under this policy.

9. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

10. **Notice of Settlement of Liability Claim.** We will notify the **"insured"** in writing of any initial offer to compromise or settle a claim against the **"insured"** under the liability section of this policy. We will give the **"insured"** notice within 10 days after the date the offer is made.

    We will notify the **"insured"** in writing of any settlement of a claim against the **"insured"** under the liability section of this policy. We will give the **"insured"** notice within 30 days after the date of the settlement.

## SECTIONS I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in SECTION I or **"bodily injury"** or **"property damage"** in SECTION II, which occurs during the policy period.

2. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a. A subsequent edition of this policy; or

   b. An amendatory endorsement.

3. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

   b. If this policy has been in effect for less than 60 days and is not a renewal policy we may cancel this policy if:

      (1) We identify a condition that:

         (a) Creates an increased risk of hazard;

         (b) Was not disclosed in the application for insurance coverage and

         (c) Is not the subject of a prior claim; or

0901119c9008fad1                          USAA Confidential

UTLC000121

(2) Before the effective date of the policy, we have not accepted a copy of a required inspection report that:

    (a) Was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and

    (b) Is dated not earlier than the 90th day before the effective date of the policy.

An inspection report is deemed accepted, unless we reject it before the 11th day after the date we receive it.

c. We may also cancel this policy at any time for any of the following reasons

    (1) You do not pay the premium or any portion of the premium when due.

    (2) The Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.

    (3) You submit a fraudulent claim.

    (4) There is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium rate of this policy.

d. The effective date of cancellation cannot be before the 10th day after we mail the notice if we cancel for any of the reasons in c. or the 30th day after we mail notice if we cancel for any other reason. Our notice of cancellation must state the reason for cancellation.

This cancellation notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

e. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

f. We may not cancel this policy solely because you are an elected official.

5. **Nonrenewal**. We may elect not to renew this policy. We may do so by letting you and any mortgagee named on the Declarations page, know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, or mailed to you by postal mail at your last known address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

If we fail to give you proper notice of our decision not to renew, you may require us to renew this policy.

a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

b. We may not refuse to renew this policy because you are an elected official.

0901119c9008fad1                    USAA Confidential

UTLC000122

c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided above. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

6. **Subrogation.** Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights or recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a. Sign and deliver all related papers;

b. Cooperate with us in a reasonable manner; and

c. Do nothing after a loss to prejudice such rights.

7. **Spouse Access.** The **"member"** and we agree that the **"member"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"member"** and may conduct the same transactions as the **"member"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"member"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the resident spouse to access policy information or conduct transactions on this policy.

8. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. For the purpose of this condition **"insured"** includes:

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"residence premises"**; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material Insurance Services Office, with its permission.

0901119c9008fad1                              USAA Confidential

UTLC000123

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Amendment to Contract Provisions
### Texas
(Applies to HO-3RTX & HO-6RTX unless otherwise noted)

### DEFINITIONS

5. **"Collapse"** is deleted and replaced by the following:

5. **"Collapse"** means:

    a. A sudden falling or caving in; or

    b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

### SECTION I

### SECTION I – PROPERTY WE COVER

### COVERAGE C – Personal Property Protection

**Under Property We Do Not Cover:**

Item **1.** is deleted.

Item **3.** is deleted and replaced by the following:

3. **"Motor vehicle(s)".** This includes but is not limited to the following while in or upon a **"motor vehicle"**.

    a. Equipment, accessories, and parts; or

    b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wire, discs or other media, for use with any such device or instrument.

We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

    a. Used solely to service any residence; or

    b. Designed for assisting the handicapped.

Subject to the provisions under Special Amounts of Insurance we also cover:

    a. Motorized golf carts and their equipment and accessories; and

    b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads.

The following is added to **Property We Do Not Cover:**

Controlled substances included on Schedule I as defined by 21 United States Code Section 812, and as changed, updated, and republished by 21 Code of Federal Regulations Part 1308 at the time of loss. This exclusion applies whether or not state law allows use of the substance.

### Under COVERAGE D – Loss of Use Protection:

The lead-in paragraph is deleted and replaced by the following:

The SECTION I – LOSSES WE DO NOT COVER apply to the coverage provided under Loss of Use below. The amount of insurance for Loss of Use shown in the Declarations is the total limit for the coverages that follow.

Item **3. Prohibited Use** is deleted and replaced by the following:

0901119c9008fad1

USAA Confidential

UTLC000124

3. **Prohibited Use.** If a loss covered under SECTION I - LOSSES WE COVER results in an order from a civil authority prohibiting you from the use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under SECTION I - LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks.

## ADDITIONAL COVERAGES

The lead-in paragraph is deleted and replaced by the following:

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following. The SECTION I - LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated.

HO-3RTX only:

Under **12. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO-6RTX only:

Under **11. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

This coverage does not include loss on the **"residence premises"** if the building containing the **"residence premises"** has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO-3RTX only:

Under **17. War**, item b. is deleted and replaced by the following:

b. Abandonment as a consequence of **"war"**;

## SECTION I - LOSSES WE COVER

## COVERAGE C - PERSONAL PROPERTY PROTECTION

Under **9. Theft**, item a. is deleted and replaced by the following:

a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, even if other permanent residency is established or claimed elsewhere.

Under **14. Freezing** is deleted and replaced by the following:

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **"residence premises"** while the dwelling is unoccupied, if you have failed to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

## SECTION I - LOSSES WE DO NOT COVER

HO-3RTX

## LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION

Item 1.a. is deleted and replaced by the following:

0901119c9008fad1

USAA Confidential

UTLC000125

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed and then, only if you have failed to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain the system and appliance of water.

## SECTION I - CONDITIONS

Item **9. Other Insurance** is deleted and replaced by the following:

9. **Other insurance.** Other insurance includes the coverage and any deductible required by such other insurance.

   If a loss covered by this policy is also covered by other insurance, we will pay as follows:

   a. Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amounts to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance; or

   b. For a loss to personal property that is separately described and specifically insured by other insurance, whether or not that policy is primary or excess, we will be excess over that insurance for a loss that is also covered under this policy; or

c. For all other coverage we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss; or

d. This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

The following condition is added:

### Reducing The Risk Of Loss

We may occasionally provide you with products or services that assist you in preventing or reducing the risk of loss, and may provide an incentive for your use of these items.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others**, in item e.:

   This exclusion does not apply to the permissive use, loading or unloading of:

   is deleted and replaced by the following:

   This exclusion does not apply to the ownership, maintenance, permissive use, loading or unloading of:

## SECTION I and II - CONDITIONS

6. **Subrogation** is changed in the HO-3RTX only:

Under item **6. Subrogation**, the first paragraph is deleted and replaced by the following:

6. **Subrogation.** Any "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

HO-ACPTX (07-12)

Page 3 of 4

0901119c9008fad1

USAA Confidential

UTLC000126

Item **8. Assignment** is deleted and replaced by the following:

8. **Assignment.** Assignment of any claim or this policy will not be valid unless we give our written consent.

Copyright, USAA, 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

HO-ACPTX (07-12)

0901119c9008fad1

USAA Confidential

UTLC000127

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**
**SPECIAL LOSS SETTLEMENT**
**(HO-3RTX only)**

**Coverage D - Loss of Use Protection , 1. Additional Living Expense** is deleted and replaced by the following:

1. **Additional Living Expense.** If a loss covered under Section I – LOSSES WE COVER makes that part of the **"residence premises"** where you reside uninhabitable, we cover the reasonable and necessary increase in living expenses so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event, not to exceed 12 months.

   However, if a loss covered under Section I – LOSSES WE COVER results from an event which is assigned a Property Claims Service (PCS) catastrophe code, payment will be for the shortest time required to repair or replace the damage, or if you permanently relocate, the shortest time required for your household to settle elsewhere, in either event not to exceed 24 months. This extension does not increase the amount of insurance provided under Loss of Use Protection.

**TOTAL LOSS - LOSS SETTLEMENT**

**Coverage A - Dwelling Protection**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, for Coverage A – Dwelling Protection only, SECTION I – Conditions, 5. Loss Settlement, item b. is deleted and replaced by the following:

b Under Coverage A – Dwelling Protection: We will pay you the total amount of insurance for **Coverage A - Dwelling Protection** shown in the Declarations.

To receive any additional Coverage A – Dwelling Protection payments for loss to your dwelling under any endorsement or other provisions of this policy, you must complete the actual repair or replacement of the dwelling. The replacement or repair must be completed within two years of the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days. You must then notify us within 30 days after the work has been completed.

When repair or replacement is actually completed, we will pay the lesser of:

(1) The covered additional amount you actually and necessarily spend; or the amount it would cost us to repair or replace the dwelling,

(2) In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**Coverage C - Personal Property Protection**

In the event that your dwelling is completely destroyed solely by Fire or Windstorm to the extent that it has lost its identity and specific character as a building, and your personal property is destroyed to the extent the property cannot be repaired to its condition prior to the loss we will pay your claim under the following terms:

Items a., b. and c. of the LOSS SETTLEMENT provision of the REPLACEMENT COST COVERAGE – PERSONAL PROPERTY endorsement is deleted and replaced by the following:

0901119c9008fad1

USAA Confidential

UTLC000128

We will pay 75% of the amount of insurance for Coverage C – Personal Property Protection as shown in the Declarations, if this is your primary residence and all of your personal property is located in your dwelling located on the **"residence premises"** at the time of loss.

However, if part of your personal property covered by this endorsement is at another location, or in an undamaged structure on the **"residence premises"** at the time of the loss, payment will be 75% of the Coverage C – Personal Property Protection limit less the covered replacement cost of the personal property not destroyed.

To receive additional payment which exceeds 75% of Coverage C – Personal Property Protection limit, the provisions and terms of the REPLACEMENT COST COVERAGE – PERSONAL PROPERTY endorsement will apply. However, Item b. of the LOSS SETTLEMENT provision is deleted and replaced by:

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed.

In no event will we pay more than the applicable coverage limits stated in the policy or endorsements.

**Liberalization Clause.**

The provisions of this endorsement will automatically apply to your insurance as of the date we implement this change in your state.

Unless specifically modified by this endorsement all other provisions of the policy to which this endorsement is attached shall apply.

Copyright, USAA 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1                    USAA Confidential

UTLC000129

THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY

## TEXAS SPECIAL PROVISIONS

### SECTION I - LOSSES WE DO NOT COVER

In the HO-3RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION** item **1.m.** is deleted and replaced by the following:

**1.m.** Vermin meaning animals, other than l. above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

In the HO-3RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION** and in the HO-6RTX under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION**, item **1.i. Microbial Organisms** is deleted and replaced by the following:

**1.i. Microbial Organisms**, including but not limited to mold, mold spores, fungus, bacterium or parasitic microorganisms. However, we will repair or tear out and replace **"property damage"** resulting from a covered loss even if microbial organisms are present.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

Copyright, USAA, 2010. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

UTLC000130

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

HOME PROTECTOR
(HO-3RTX only)
Texas

For an additional premium, the following is added to Section I - Conditions, 5. Loss Settlement:

c. Home Protector Coverage

You agree:

(1) To insure your buildings, under Property We Cover - Dwelling Protection and Other Structures Protection, on the "residence premises" for the full replacement cost at the time this policy is issued; and

(2) To accept any increase in coverage that results from the application of the Adjustment to Building Cost provision, if it is deemed necessary by us. You must pay for any added premium; and

(3) To tell us within 90 days of the start of any additions or other physical changes to building on the "residence premises" which increases the value by the greater of:

(a) $25,000; or

(b) 5% of the current Dwelling Protection amount of insurance.

You must pay any resulting premium.

If you comply with these requirements and if as a result of a covered loss, you have exhausted the amount of insurance:

(1) applying to buildings covered under Property We Cover - Dwelling Protection or Other Structures Protection ; or

(2) provided under ADDITIONAL COVERAGES, Debris Removal: or

(3) provided under ADDITIONAL COVERAGES, Building Ordinance or Law;

then, we will pay up to an additional 25% of the amount of insurance applying to the damaged building. The most we will pay for (1), (2), or (3), either singly or in any combination is 25% or the amount actually and necessarily spent to repair or replace the damaged building, whichever is less.

Except as specifically modified in this endorsement, all provision of the policy to which this endorsement is attached also apply to this endorsement.

Term Premium
INCLUDED

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

UTLC000131

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WATER BACKUP OR SUMP PUMP OVERFLOW
Texas

### SECTION I

This endorsement applies to **PROPERTY WE COVER - Dwelling Protection, Other Structures Protection, Personal Property Protection** and **Loss of Use Protection**.

The following additional coverage is added:

We insure for direct, physical loss caused by:

1. Water or water-borne material which flows into the plumbing system of your dwelling or other structures through sewers or drains located off the **"residence premises"**; or

2. Water which overflows from a sump pump or sump well with a sump pump designed to drain subsurface water from the foundation area even if such overflow results from the mechanical breakdown of the sump pump or a disruption in power. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not apply to loss caused directly or indirectly by any of the following, regardless of whether any other causes or events act concurrently or in any sequence with the excluded event to produce the loss:

1. A general condition of flooding meaning a temporary condition of complete inundation of:

   a. two or more acres of normally dry land area; or

   b. two or more properties

   that includes the inundation of the part of the **"residence premises"** where the **"insured's"** dwelling is located. This applies even if there is a mechanical breakdown or a disruption of power; or

2. the negligence of any **"insured"**

### AMOUNT OF INSURANCE

$10,000 is the most we will pay for any one loss whether resulting from a single condition or series of related conditions.

### SECTION I - LOSSES WE DO NOT COVER

For loss covered by this endorsement, if your policy is the:

HO-3RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item **1.g.** is deleted and replaced by the following:

g. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

HO-6RTX:

If your policy includes the **Unit-Owners Coverage A - Special Dwelling Protection** endorsement, LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, item **1.g.** is deleted and replaced by the following:

g. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

If the policy includes the **Special Personal Property Coverage** endorsement, under LOSSES WE DO NOT COVER, item **r.** is deleted and replaced by the following:

r. latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

89653-0112__01
Page 1 of 2

0901119c9008fad1     USAA Confidential     UTLC000132

Except to the extent of additional coverage provided by the terms of this endorsement **Water Damage** is excluded as provided in HO-3RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage**.

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow

Except to the extent of additional coverage provided by this endorsement, **Water Damage** is excluded as provided in HO-6RTX:

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION **1.c. Water Damage**.

Exclusion **1.d. Power Failure** is deleted and replaced by the following:

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the residence premises except as provided in ADDITIONAL COVERAGES, Refrigerated Products and Water Backup or Sump Pump Overflow.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**     NO CHARGE

Copyright, USAA, 2012. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

0901119c9008fad1

USAA Confidential

UTLC000133

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REPLACEMENT COST COVERAGE - PERSONAL PROPERTY
Texas

We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

### REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article; and

b. Of like quality and usefulness.

### DEDUCTIBLE

The deductible shown on the Declarations Page applies.

### PROPERTY COVERED

a. Personal property covered in Property We Cover – Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

### PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the **"insured"** at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

### LOSS SETTLEMENT

SECTION I – CONDITIONS, Item 5.a **Loss Settlement** does not apply to property covered by this endorsement. Instead the following loss settlement applies:

a. For property that is eligible for replacement cost coverage it is our option to:

(1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

(2) Pay you the cost to repair or restore the property to the condition it was in just before the loss, or

(3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $5,000.

c. You may make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

0901119c9008fad1

USAA Confidential

UTLC000134

d. For property that is not eligible for replacement cost coverage, it is our option to:

   (1) pay you the **"actual cash value"**; or

   (2) replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition ; or

   (3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in the policy to which this endorsement is attached.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**     NO CHARGE

Copyright, USAA, 2012. All rights reserved.

HO-728TX (07-12)

0901119c9008fad1

USAA Confidential

UTLC000135

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REPLACEMENT COST COVERAGE - PERSONAL PROPERTY
Texas

We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

### REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article; and

b. Of like quality and usefulness.

### DEDUCTIBLE

The deductible shown on the Declarations Page applies.

### PROPERTY COVERED

a. Personal property covered in Property We Cover – Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

### PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors' items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the "insured" at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

### LOSS SETTLEMENT

SECTION I – CONDITIONS, Item 5.a. Loss Settlement does not apply to property covered by this endorsement. Instead the following loss settlement applies:

a. For property that is eligible for replacement cost coverage it is our option to:

(1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

(2) Pay you the cost to repair or restore the property to the condition it was in just before the loss, or

(3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than "actual cash value" until repair or replacement of the damaged property is completed, unless the entire loss is less than $5,000.

c. You may make a claim for loss on an "actual cash value" basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

0901119c9008fad1

USAA Confidential

UTLC000136

d. For property that is not eligible for replacement cost coverage, it is our option to:

  (1) pay you the **"actual cash value"**; or

  (2) replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition ; or

  (3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in the policy to which this endorsement is attached.

Except as specifically modified in this endorsement, all provisions of the policy to which this endorsement is attached also apply to this endorsement.

**Term Premium**      NO CHARGE

Copyright, USAA, 2012. All rights reserved.

HO-728TX (07–12)

0901119c9008fad1

USAA Confidential

UTLC000137





| Home | Submit Filing | Submit eService | My Filings | My eServices | Firm Management | Resources |

**« Back to All Filings**                                   🖨 Print Page

**Filed Date & Time**

| Date: | Time: |
|---|---|
| Saturday, June 06, 2015 | 7:53:39 AM |

| **Filing Status Definitions** | **Envelope Information** |
|---|---|

**Envelope Number:** 5573310
**Case Category:** Civil - Contract
**Cause Number:** 0127771
**Judge for the Case:** Not Available

**Court Assignment:** Jefferson County - County Clerk
**Case Type:** Insurance
**Case Title:** ANGELA BROOKS BROWN VS USAA TEXAS LLOYDS COMPANY

| Envelope Fee | Est.Amount |
|---|---|
| **ProDoc, Inc. or other provider fee:** | |
| eFiling/eService Fee | $3.00 |
| 8.25% Sales Tax | $0.25 |
| **Court Fees:** | |
| Total Court Case Fees | $222.00 |
| Total Court Filing Fees | $73.00 |
| Total Court Service Fees | $2.00 |
| **State eFiling System Processing Fees:** | |
| Convenience Fee | $8.68 |
| **Total Envelope Fees:** | **$308.93** |

**Payment Information**

**Account Name:** Chase MasterCard
**Payment Method:** Credit Card
**Credit Card Type:** MASTERCARD
**Card Number:** XXXX XXXX XXXX 8880
**Card Expiration Date:** 10/2018
**Transaction Amount:** $308.93
**Transaction Status:** Approved
**Transaction ID:** 9147967
**Transaction Order ID:** 005573310-0

**Personal Information**

**Filer:** Danny Scott
**Attorney of Record:** Danny Scott
**Firm or Organization:** Scott Law Offices
**Bar Number:** 24010920

**Service Recipients**

**Sean Patterson**
Email:                 sean@scottlawyers.com
Status:                Sent
Service Opened:        No
[View Log]

**Virginia Izaguirre**
Email:                 virginia@scottlawyers.com
Status:                Sent
Service Opened:        No
[View Log]

**Danny Scott**
Email:                 danny@scottlawyers.com
Status:                Sent
Service Opened:        No
[View Log]

**Adrienne Jackson**
Email:                 adrienne@scottlawyers.com
Status:                Sent
Service Opened:        No
[View Log]

**Jo Ann Haynes**
Email:                 joann@scottlawyers.com
Status:                Sent
Service Opened:        No
[View Log]

**Petition**

| **Filing Fees** | |
| --- | --- |
| Copies - Service ($1.00 x 4) | $4.00 |
| Issue Citation - Certified Mail | $4.00 |
| Service - Constable - All Other | $65.00 |
| **Total Filing Fees:** | $73.00 |

**Filing Information**

**Current Status:** ✓accepted

**Accepted Date/Time:** 6/8/2015 8:18:26 AM

**Filing Description:** Petition to Appoint Appraisal Umpire

**Reference Number:** Angela Brooks-Brown

**Comments for Clerk:**

**Document Information**

**Document(s) Filed:**

**Lead Document:**

Original - Angela Brooks-Brown Pet to Appoint Umpire.docx.pdf [**Exhibit - Contains sensitive data**]  **Document Description:** Angela Brooks-Brown Petition to Appoint Umpire.pdf

Transmitted - Angela Brooks-Brown Pet to Appoint Umpire.docx.pdf [**Exhibit - Contains sensitive data**]  **Document Description:** Angela Brooks-Brown Petition to Appoint Umpire.pdf

**Attachments:**

Angela Brooks-Brown Cover_sheet.pdf [**Exhibit - Contains sensitive data**]  **Document Description:** Angela Brooks-Brown Cover_sheet.pdf

Transmitted - Angela Brooks-Brown Cover_sheet.pdf [**Exhibit - Contains sensitive data**]  **Document Description:** Transmitted - Angela Brooks-Brown Cover_sheet.pdf

-

This site and all contents Copyright ©2003-2015 Thomson Reuters. All rights reserved.

**Loading...**

**FILED FOR RECORD**
**Carolyn L. Guidry**
**6/8/2015 12:00:00 AM**
**COUNTY CLERK**
**JEFFERSON COUNTY**
**0127771**

CAUSE NO. **0127771** _____

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| v. | § | AT LAW NO. 1 |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | JEFFERSON COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION FOR APPOINTMENT OF APPRAISAL UMPIRE**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ANGELA BROOKS-BROWN (herein after referred to as "Plaintiff"), complaining of Defendant, USAA TEXAS LLOYD'S COMPANY, (hereinafter referred to as "USAA") and hereby respectfully show unto the Court as follows:

**DISCOVERY CONTROL PLAN**

1.     Plaintiff intends for discovery to be conducted under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

**PARTIES**

2.     Plaintiff, ANGELA BROOKS-BROWN, is an individual and resident of Bell County and citizen of the state of Texas.

3.     Defendant, USAA TEXAS LLOYD'S COMPANY, hereinafter "USAA," is a domestic insurance carrier, incorporated and engaging in the business of insurance in the State of Texas, and may be served with process by serving its President, Laura M. Bishop, 9800 Fredericksburg Road, San Antonio, Texas 78288.

**VENUE**

4.     Venue is proper in Jefferson County, Texas, because the insurance contract

hi

drafted by the defendant grants the parties the right to petition a judge of a court of record in the state where the "residence premises" is located to appoint an appraisal umpire.

FACTS

5. Plaintiff is the owner of a homeowner insurance policy, policy number 0242343 40 74 90A, issued by the Defendant (hereinafter referred to as the "Policy").

6. Plaintiff owned the insured property that is specifically located at ███████████ ███████████ (hereinafter referred to as the "Property").

7. Defendant or its agent sold the Policy, insuring the property, to Plaintiff.

8. On or about April 4, 2014, Plaintiff's property sustained fire damage, specifically to the fence. Plaintiff filed a claim with her insurance company, USAA for the damages to her property caused by the fire.

9. On or about May 12, 2014, Plaintiff's property sustained windstorm and hail damage. Plaintiff's roof sustained extensive damage during the storm including damage to the shingles, roof jack, drip edge, chimney and other structural parts of the roof. Plaintiff's property also sustained exterior damage to the cornice and siding, dryer vent, windows, fence, garage door and a/c unit. After the storm, Plaintiff filed a claim with her insurance company, USAA, for the damages to her home caused by the storm.

10. Plaintiff submitted claims to USAA against the Policy for damage caused to the property as a result of the fire and the wind and hail. Plaintiff asked USAA to cover the cost of repairs to the Property pursuant to the Policy and any other available coverages under the Policy. USAA assigned claim number 024234074-3 to Plaintiff's fire claim and claim number 024234074-4 to Plaintiff's wind and hail claim.

11.     On March 5, 2015, plaintiff communicated to defendant that plaintiff disagreed with defendant's determination of the amount of loss with respect to plaintiff's insurance claim. Plaintiff also communicated to defendant that plaintiff wished to invoke the insurance policy's appraisal clause.

12.     The insurance policy's appraisal clause states the following: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss."

13.     The requisite period of time has expired and the appraisers have not agreed upon an umpire. Plaintiff therefore requests that this Court select an umpire in accordance with and as allowed by the policy's provisions.

**PRAYER**

14.     For these reasons, Plaintiff asks that this Court appoint an umpire for the insurance appraisal. Plaintiff also asks the Court to issue orders as necessary to validate any decision the umpire makes and to issue any orders necessary to conclude this matter at the appropriate time.

Respectfully Submitted,

SCOTT LAW OFFICES
350 Pine Street, Suite 300
Beaumont, Texas 77701
Telephone:  (409) 833-5400
Facsimile:  (409) 833-5405


     */s/Danny Ray Scott*
_____

Danny Ray Scott
State Bar No. 24010920
danny@scottlawyers.com
Virginia Izaguirre
State Bar No. 24083230
virginia@scottlawyers.com
Sean M. Patterson
State Bar No. 24073546
sean@scottlawyers.com

*Attorneys for Plaintiff*

CAUSE NO. 272,693-B

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | BELL COUNTY, TEXAS |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | |
| | § | |
| Defendant | § | 146TH JUDICIAL DISTRICT |

## ORDER

On this day came on to be heard USAA Texas Lloyd's Company's Motion for Appointment of Umpire for Insurance Appraisal Proceeding (the "Motion"). After reviewing the Motion, responses thereto and pleadings on file, and hearing the arguments of counsel, the Court is of the opinion that the Motion should be and is hereby **GRANTED** in its entirety.

It is further **ORDERED** that *Ron Bickel* _____ shall act as the

254/773-1662

254/760-6593

umpire for the insurance appraisal proceeding.

Signed ____*July 10*____, 2015.

Original signed by Judge Jack Jones
_____
**Judge Presiding**

FILED
2015 JUL 10 PM 12: 43
JOANNA STATON
DISTRICT COURT
BELL COUNTY, TX
BY _____ DEPUTY





Filed 7/15/2015 5:00:28 PM
Joanna Staton, District Clerk
District Court - Bell County, TX
/s/ Bonnie Sather

## CAUSE NO. 272,693-B

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | BELL COUNTY, TEXAS |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | |
| | § | |
| Defendant | § | 146TH JUDICIAL DISTRICT |

## ORDER GRANTING TEMPORARY INJUNCTION

On this day came on to be heard USAA Texas Lloyd's Company's Verified Application for Temporary Injunction (the "Application" or "Anti-Suit Injunction"). After reviewing the Application, responses thereto, pleadings and evidence on file, and hearing the arguments of counsel, the Court is of the opinion that the Application should be and is hereby **GRANTED** in its entirety.

The Court finds the following:

- After litigating this lawsuit since September of 2014, Plaintiff's counsel filed a notice of non-suit on June 8, 2015;

- Because no dismissal order has been signed, this Court retains plenary power;

- Simultaneous with the filing of the notice of non-suit in this lawsuit, Plaintiff's counsel filed a parallel lawsuit in Jefferson County against the same and only defendant in this lawsuit, USAA Texas Lloyd's Company;

7/16/2015

---

**ORDER GRANTING TEMPORARY INJUNCTION**

1

146TH DISTRICT COURT
BELL COUNTY, TEXAS

- The Jefferson County lawsuit is styled: *Angela Brooks-Brown v. USAA Texas Lloyd's Company*; Cause No. 0127771; Jefferson County, Texas, County Court at Law Number One;

- This lawsuit and the Jefferson County lawsuit are based on the same facts. They involve the same (1) property (located in Bell County); (2) Plaintiff (located in Bell County); (3) insurance policy (issued in Bell County); (4) appraisal proceeding (occurring in Bell County); (5) hail and windstorm (occurred in Bell County); and (6) evidence and witnesses (mostly all in Bell County).

- Under the Texas venue provisions (Chapter 15 of the Texas Civil Practice & Remedies Code), Jefferson County is not a proper venue. Further, in Plaintiff's Original Petition, First Amended Petition, and Second Amended Petition, Plaintiff admitted that "[v]enue is mandatory and proper in Bell County, Texas, because all or a substantial part of the events giving rise to the lawsuit occurred in [Bell County, Texas]";

- Additionally, the Jefferson County lawsuit seeks the appointment of an umpire for an insurance appraisal proceeding pursuant to the policy at issue in both lawsuits, despite the fact that Plaintiff's counsel, on behalf of his client, previously invoked the appraisal process in the course of this lawsuit on March 5, 2015;

- Moreover, before USAA Texas Lloyd's was made aware of or served with the Jefferson County lawsuit, it requested that an umpire be appointed by this Court; and

- This Court has appointed Ron Bickel to serve as an umpire with regard to the insurance claim at issue.

USAA Texas Lloyd's has not been served with the lawsuit in Jefferson County.

The Court further finds that the Anti-Suit Injunction is necessary to: (1) address a threat to this Court's jurisdiction by the Jefferson County Court at Law Number One; (2) prevent the evasion of important public policy; (3) prevent a multiplicity of lawsuits and appointment of umpires; and (4) protect USAA Texas Lloyd's from Plaintiff's vexatious and harassing litigation.

Plaintiff's actions present a threat to the jurisdiction of this trial court. Bell County properly has jurisdiction over the underlying insurance dispute and the appointment of an umpire for the insurance appraisal proceeding. As such, this Court is entitled to protect its jurisdiction from cases subsequently filed in other courts of this state requesting the appointment of an umpire.

Additionally, Plaintiff's efforts to move the appointment of an umpire to Jefferson County constituted an attempt to evade the important public policies embodied in the venue statutes of the State of Texas. The venue statutes are designed both to give a person who has been sued the right to defend such suit in the county of his residence, except under well-defined exceptions, and to reduce forum shopping by litigants. Plaintiff's efforts attempted to circumvent both of these goals.

Moreover, Jefferson County is an improper venue. Allowing the Jefferson County lawsuit to continue would have forced USAA Texas Lloyd's Company to defend itself in an improper venue. Furthermore, it has long been the policy of the courts and the legislature of this



state to avoid a multiplicity of lawsuits. Thus, clear equity justifies the issuance of the Anti-Suit Injunction.

It is further **ORDERED** as follows:

- Plaintiff is enjoined from pursuing the Jefferson County lawsuit or the appointment of an umpire from any court other than this Court;

- This Anti-Suit Injunction is limited to the appointment of an umpire which concerns (1) Plaintiff's April 2014 fire damage claim made with USAA Texas Lloyd's Company and (2) Plaintiff's May 2014 wind and hailstorm claim made with USAA Texas Lloyd's Company;

- The insurance appraisal proceeding shall be completed within 30 days;

- Counsel shall submit a **joint report** to this Court notifying it of when the insurance appraisal proceeding has been completed; and

- This Anti-Suit injunction will expire after the insurance appraisal proceeding at issue has been completed and this Court has received the joint report notifying it of such.

- USAA Texas Lloyd's is ordered to post a bond in the amount of $5,000.00.

Signed July 17, 2015 _____, 2015.

_____
Judge Jack Jones

Filed 7/27/2015 2:49:26 PM
Joanna Staton, District Clerk
District Court - Bell County, TX
/s/ Lacey Martindale

CAUSE NO. 272,693-B

| | | |
|---|---|---|
| ANGELA BROOKS-BROWN | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | 146TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| USAA TEXAS LLOYD'S COMPANY | § | BELL COUNTY, TEXAS |

**ORDER ON PLAINTIFF'S PLEA IN ABATEMENT TO DEFENDANT'S MOTION FOR APPOINTMENT OF UMPIRE FOR INSURANCE APPRAISAL PROCEEDING**

On July 10, 2015 came on to be heard Plaintiff's Plea in Abatement to Defendant's Motion for Appointment of Umpire for Insurance Appraisal Proceeding. The Court, having carefully considered the Plea in Abatement, any responses or replies of the parties, and the arguments of counsel herein, finds that it should be DENIED.

_____
JUDGE PRESIDING

169TH DISTRICT COURT
BELL COUNTY, TEXAS 7/28/2015

FWD TO CC 7/27/15